### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| KEY ENERGY SERVICES, INC., <u>et al.</u>[1] | Case No. 16-12306 (___) |
| Debtors. | (Joint Administration Requested) |

### DEBTORS' MOTION FOR INTERIM AND FINAL ORDERS
### (I) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL
### PURSUANT TO 11 U.S.C. § 363, (II) GRANTING ADEQUATE PROTECTION
### TO THE PREPETITION SECURED PARTIES PURSUANT TO 11 U.S.C. §§ 105,
### 361, 362, 363, 503, 507, AND 552, (III) SCHEDULING A FINAL HEARING PURSUANT
### TO BANKRUPTCY RULE 4001(b), AND (IV) GRANTING RELATED RELIEF

The above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>")

submit this motion (this "<u>Motion</u>"), pursuant to sections 105, 361, 362, 363, 503, 507, and 552 of

title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), Rules 2002, 4001, 6003, 6004 and

9014 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and Rules 2002-1,

4001-2 and 9013-1 of the Local Rules for the United States Bankruptcy Court for the District of

Delaware (the "<u>Local Rules</u>"), for entry of an interim order (the "<u>Interim Order</u>")[2] and a final

order (the "<u>Final Order</u>" and together with the Interim Order, the "<u>Orders</u>"), (i) authorizing the

Debtors to use "cash collateral" (as defined in section 363(a) of the Bankruptcy Code) ("<u>Cash</u>

<u>Collateral</u>"), (ii) granting adequate protection to the Prepetition Secured Parties (as defined

below) pursuant to sections 105(a), 361, 362, 363, 503, 507 and 552 of the Bankruptcy Code,

(iii) modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows:  Misr Key Energy Investments, LLC (4528), Key Energy Services, Inc. (8081), Key Energy Services, LLC (5567), and Misr Key Energy Services, LLC (7527).  The mailing address for each Debtor is 1301 McKinney Street, Suite 1800, Houston, Texas 77010.

[2] Capitalized terms not otherwise defined herein shall have the meaning set forth in the Interim Order or the Plan (as defined herein), as applicable.

necessary to implement and effectuate the terms of the Interim Order and the Final Order, and (iv) granting related relief, including scheduling a hearing to consider approval of the Motion on a final basis (the "Final Hearing").   The facts and circumstances supporting this Motion are set forth in the concurrently filed *Declaration of J. Marshall Dodson in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings* (the "First Day Declaration").   In further support of this Motion, the Debtors respectfully state as follows:

## JURISDICTION AND VENUE

1.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  The Debtors confirm their consent pursuant to Local Rule 9013-1(f) to the entry of a final order or judgment by the Court in connection with this Motion if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory and other bases for the relief requested in this Motion are sections 105, 361, 362, 363, 503, 507, and 552 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6003, 6004 and 9014, and Local Rules 2002-1, 4001-2 and 9013-1.

## BACKGROUND OF THE DEBTORS

4.      On the date hereof (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  Concurrently with the filing of this Motion, the Debtors have requested joint administration and procedural consolidation of these

chapter 11 cases (the "Chapter 11 Cases") pursuant to Bankruptcy Rule 1015(b). The Debtors have also filed their *Joint Prepackaged Plan of Reorganization of Key Energy Services, Inc. and its Debtor Affiliates pursuant to Chapter 11 of the Bankruptcy Code* (the "Plan") and corresponding Disclosure Statement, and have requested that the Court set a hearing to approve the Disclosure Statement and to confirm the Plan.

5.      The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No party has requested the appointment of a trustee or examiner in the Chapter 11 Cases, and no statutory committee has been appointed.

6.      On September 21, 2016, the Debtors began the solicitation of votes on the Plan. As of the Voting Deadline (as defined in the Disclosure Statement), a vast majority of the creditors in each of the two classes entitled to vote on the Plan voted to accept the Plan.[3]

7.      The events leading up to the Petition Date and additional facts and circumstances supporting the relief requested herein are set forth in the First Day Declaration.

## THE DEBTORS' PREPETITION SECURED DEBT

8.      As of the Petition Date, the Debtors have approximately $330 million in secured obligations, comprised of approximately (i) $288.8 million in outstanding loans under the Term Loan Facility (defined below) and (ii) $38.5 million under the ABL Credit Facility (defined below), consisting of issued and outstanding, undrawn letters of credit. The Debtors have granted security interests in and liens on all or substantially all of their assets to secure their obligations under the Term Loan Facility and ABL Credit Facility. As of the Petition Date, the

---

[3] 99.89% in amount and 93.88% in number of the Senior Notes Claims and 100% in amount and 100% in number of the Term Loan Lenders voted to accept the Plan.

Debtors have approximately $50 million in cash on hand (including restricted cash), all or substantially all of which constitutes Cash Collateral.

## I.  The Term Loan Credit Agreement

9.  On June 1, 2015, Key, as borrower, and Key Energy Services, LLC ("KES"), as guarantor (Key and KES in such capacities under the Term Loan Facility, the "Term Loan Obligors") entered into that certain Term Loan and Security Agreement (as amended, restated, supplemented or otherwise modified prior to the commencement of the Chapter 11 Cases and with all supplements and exhibits thereto, the "Term Loan Credit Agreement") with Cortland Capital Market Services LLC ("Cortland") in its capacity as Agent (the "Term Loan Agent"), the lender parties thereto (the "Term Loan Lenders" and, together with the Term Loan Agent, the "Term Loan Secured Parties"), and Bank of America, N.A. ("BoA") in its capacity as sole Lead Arranger and Bookrunner (in each case, as defined in the Term Loan Agreement).  The Term Loan Agreement provided Key with secured term loan proceeds, after the Original Issue Discount (as defined in the Term Loan Agreement), of $315 million (the "Term Loan Facility"). The term loan proceeds currently held by the Debtors are "unrestricted," meaning they can be used for operating purposes under the Term Loan Agreement.  Pursuant to the Term Loan Agreement, such proceeds have been, since the closing date of the Term Loan Agreement, segregated and held in a deposit account located at Merrill Lynch (as defined below), which account is subject to a perfected, first-priority lien in favor of the Term Loan Agent on behalf of the Term Loan Lenders.

10.  The obligations under the Term Loan Facility are secured by a first-priority lien (subject to certain permitted liens, certain exclusions, and the terms of the Intercreditor Agreement (defined below)) on substantially all of the assets of the Term Loan Obligors,

including, without limitation, the Term Loan Obligors' goods, intellectual property, real estate, commercial tort claims, and cash deposits in the TL Proceeds and Priority Collateral Account (as defined in the Term Loan Agreement), which cash is Cash Collateral, together with all proceeds of the foregoing.   The Term Loan Lenders have a first-priority lien on all of the Term Loan Obligors' assets other than (i) Prepetition ABL Priority Collateral (defined below) and (ii) certain excluded assets (<u>e.g.</u> assets owned by foreign subsidiaries) (such assets other than (i) and (ii), collectively, "<u>Prepetition Term Loan Priority Collateral</u>"), and a second-priority lien on present and future accounts receivable, inventory, deposit accounts and securities accounts (other than the TL Proceeds and Priority Collateral Account) and related assets and proceeds of the foregoing ("<u>Prepetition ABL Priority Collateral</u>," and together with the Prepetition Term Loan Priority Collateral, the "<u>Prepetition Collateral</u>").

## II.    The ABL Credit Agreement

11.    Also on June 1, 2015, Key and KES as borrowers (collectively, the "<u>ABL Borrowers</u>," and Key and KES in such capacity, the "<u>ABL Obligors</u>") entered into that certain Loan and Security Agreement (as amended, restated, supplemented or otherwise modified prior to the commencement of the Chapter 11 Cases and with all supplements and exhibits thereto, the "<u>ABL Credit Agreement</u>") with BoA, in its capacity as administrative agent (the "<u>ABL Admin Agent</u>") and co-collateral agent, and Wells Fargo Bank, National Association ("<u>Wells</u>"), as co-collateral agent (with BoA in its capacity as co-collateral agent, the "<u>ABL Collateral Agents</u>," and together with the ABL Admin Agent and the Term Loan Agent, the "<u>Agents</u>"), and each of the lenders party thereto (the "<u>ABL Lenders</u>" and, collectively with the ABL Admin Agent and the ABL Collateral Agents, the "<u>ABL Secured Parties</u>" and, together with the Term Loan Secured Parties, the "<u>Prepetition Secured Parties</u>"), and Merrill Lynch, Pierce, Fenner & Smith

Incorporated ("Merrill Lynch") and Wells as Joint Lead Arrangers and Joint Bookrunners, and Wells as sole Syndication Agent (in each case as defined in the ABL Credit Agreement). The ABL Credit Agreement provided the ABL Borrowers with secured asset-based revolving loans and letters of credit of up to a maximum aggregate principal amount of $100 million outstanding at any time (the "ABL Credit Facility"). As of the Petition Date, there were no amounts outstanding on the revolver, and there were issued and outstanding letters of credit with an undrawn balance of approximately $38.5 million. Due to the fixed charge coverage ratio covenant in the ABL Credit Agreement that may be triggered, there is no further availability under the ABL Credit Facility, as amended by the ABL Forbearance Agreement (as defined below), as of the Petition Date.

12.    The ABL Obligors' obligations arising under the ABL Credit Facility are secured by liens (subject to certain permitted liens, certain exclusions, and the terms of the Intercreditor Agreement) on substantially all of the assets of the ABL Obligors, including, without limitation, the ABL Obligors' accounts, cash, goods, intellectual property, real estate, and commercial tort claims, together with all of the proceeds of the foregoing. Specifically, the ABL Lenders have a first priority lien on Prepetition ABL Priority Collateral and a second priority lien on Prepetition Term Loan Priority Collateral.

### III.    The Intercreditor Agreement

13.    The relationship and relative lien priorities among the Prepetition Secured Parties are governed by that certain Intercreditor Agreement, dated as of June 1, 2015 (as amended, restated, supplemented or otherwise modified prior to the commencement of the Chapter 11 Cases and with all supplements and exhibits thereto, the "Intercreditor Agreement," and together with the Term Loan Credit Agreement, the ABL Credit Agreement, and the other security

agreements, deposit and pledged account control agreements, and other collateral documents and agreements implementing the terms of the foregoing, as amended, restated, supplemented or otherwise modified from time to time and with all supplements and exhibits thereto, the "Credit Documents"), by and among BoA as Initial ABL Agent and Cortland as Initial Term Agent (each as defined therein).  The Intercreditor Agreement, among other things, provides that (i) the liens and security interests of the Term Loan Secured Parties are subordinated to the liens and security interests of the ABL Secured Parties with respect to the Prepetition ABL Priority Collateral and (ii) the liens and security interests of the ABL Secured Parties are subordinate to the liens and security interests of the Term Loan Secured Parties with respect to the Prepetition Term Loan Priority Collateral.[4]

## THE PLAN SUPPORT AGREEMENT AND THE ABL FORBEARANCE AGREEMENT

14.     On August 24, 2016, after extensive, good faith and arm's-length negotiations, the Debtors and certain of the Term Loan Lenders holding over 87% in principal amount of the outstanding Term Loan Obligations (the "Supporting Term Lenders"), and holders of the Debtors' 6.75% Senior Notes due 2021 (the "Senior Notes") holding over 89% in principal amount of the Senior Notes (the "Supporting Noteholders," and together with the Supporting Term Lenders, the "Supporting Creditors"), entered into a plan support agreement regarding a consensual restructuring transaction (including all exhibits attached thereto and as may be amended, modified or supplemented from time to time, the "Plan Support Agreement").  The Plan Support Agreement—which is fully-described in the First Day Declaration—provides the roadmap for the Debtors' planned expedited restructuring, and commits the Supporting Creditors

---

[4] As used herein, the terms "Prepetition Term Loan Priority Collateral" and "Prepetition ABL Priority Collateral" are intended to have the same meaning ascribed to "Term Priority Collateral" and "ABL Priority Collateral," respectively, in the Intercreditor Agreement.

to support the Plan and the Plan process in these Chapter 11 Cases.

15.     Of particular importance with respect to this Motion, the Plan Support Agreement includes a binding term sheet setting forth the terms for the Debtors' consensual use of Cash Collateral (the "Cash Collateral Term Sheet") during the Chapter 11 Cases, which contains the material terms of the Interim Order attached as **Exhibit A** hereto.  Among the case milestones set forth in the Plan Support Agreement (which if not met could lead to the termination of the Plan Support Agreement by the Supporting Creditors) are the following milestones related to the entry of the Orders: (i) the Interim Order must be entered within five (5) business days of the Petition Date (on or before October 31, 2016); and the Final Order must be entered within forty (40) calendar days of the Petition Date (on or before December 3, 2016).  In other words, the Debtors' consensual use of Cash Collateral on the terms set forth in the Orders is a critical part of the Debtors' entire restructuring pursuant to the terms of the Plan Support Agreement and Plan, and the failure to obtain the relief requested herein could lead to the termination of the Plan Support Agreement and threaten the Debtors' ability to favorably restructure on an expedited basis as set forth therein.

16.     In addition to negotiating the terms of the Plan Support Agreement—including the Cash Collateral Term Sheet—with the Supporting Creditors prior to the filing of these Chapter 11 Cases, the Debtors also engaged in good faith, arm's length negotiations with the ABL Admin Agent on the terms of such term sheet, as well as a form of forbearance agreement.[5]

---

[5] The Plan Support Agreement also provides certain third-party beneficiary language for the benefit of the ABL Admin Agent and ABL Lenders, whereby, among other things, the Term Loan Agent and Supporting Term Loan Lenders have agreed to consent to the use of Cash Collateral on the terms set forth in the Cash Collateral Order Term Sheet and to use commercially reasonably efforts to cause the provisions of the Cash Collateral Term Sheet to be reflected in the Orders.

Concurrently with the execution of the Plan Support Agreement, the ABL Obligors entered into that certain Limited Consent and Second Amendment to Loan Agreement and Amendment No. 3 to Limited Consent to Loan Agreement and Forbearance Agreement (the "ABL Forbearance Agreement") with the ABL Admin Agent and certain ABL Lenders (collectively, the Supporting ABL Lenders"). Pursuant to the ABL Forbearance Agreement, the Supporting ABL Lenders agreed, among other things, to: (i) forbear from exercising remedies with respect to certain defaults expected to occur under the ABL Credit Facility prior to implementation of the Plan; (ii) consent to the use of Cash Collateral on the terms set forth in the Cash Collateral Term Sheet; and (iii) for so long as the ABL Forbearance Agreement is in effect, use commercially reasonable efforts to cause the provisions of the Cash Collateral Term Sheet to be reflected in any cash collateral orders entered by the Court in a manner reasonably satisfactory to the Supporting Term Lenders.

## THE DEBTORS' IMMEDIATE NEED TO USE CASH COLLATERAL

17.    The Debtors provide extensive and sophisticated services to oil and gas companies. To support these businesses during the Chapter 11 Cases, the Debtors must be able to use Cash Collateral in order to fund payroll and other employee-related expenses, pay vendors, and make such other payments as are essential for the continued management, operation, and preservation of the Debtors' businesses. Absent the use of Cash Collateral to satisfy these expenses, the Debtors would likely be unable to continue operating. If the Debtors had to shut down operations, their enterprise value would be destroyed and the usefulness and value of the Debtors' extensive assets would be endangered. Accordingly, the Debtors' immediate access to Cash Collateral is absolutely necessary to preserve the value of the estates and maximize value for the Debtors' stakeholders.

18.     As provided above and in the First Day Declaration, in connection with the Plan Support Agreement process and prior to the filing of the Chapter 11 Cases, the Debtors successfully engaged in good faith and arm's-length negotiations with the Supporting Term Lenders and the ABL Admin Agent and ABL Lenders for the consensual use of Cash Collateral during these Chapter 11 Cases.  As a condition of such consensual usage, the Orders will provide for adequate protection in the form of, among other things, additional and replacement liens, superpriority claims, the reimbursement of any drawn letters of credit under the ABL Credit Facility, the payment of interest at the non-default contract rate and certain other amounts payable under the Credit Documents, and the payment of postpetition professional fees, costs, and expenses of the Agents and certain other Prepetition Secured Parties to protect against any postpetition diminution in value of the Prepetition Collateral.  Agreement on the terms of adequate protection set forth in the Interim Order were required by the Supporting Term Lenders and the ABL Admin Agent and ABL Lenders as a condition of the Debtors' consensual use of Cash Collateral, which agreement was necessary to preserve the consensual restructuring process in these Chapter 11 Cases.

19.     Without access to Cash Collateral, the Debtors ability to restructure as contemplated under the Plan Support Agreement and the Plan will be jeopardized, and the Debtors could be forced to ultimately liquidate.  The Debtors thus have an immediate need to use Cash Collateral to ensure sufficient liquidity throughout the pendency of the Chapter 11 Cases and confirm and consummate the Plan that has been overwhelmingly accepted by the two impaired voting classes thereunder.

**RELIEF REQUESTED**

20.     By this Motion, the Debtors request entry of the Interim Order, substantially in

the forms attached hereto as **Exhibit A**:

> (a)     authorizing the Debtors to use Cash Collateral, subject to the terms and conditions set forth therein;
>
> (b)     authorizing the Debtors to provide adequate protection to the Prepetition Secured Parties to the extent of any postpetition diminution in value of the Prepetition Collateral (including the Cash Collateral);
>
> (c)     approving certain stipulations by the Debtors with respect to the Credit Documents and the obligations, liens and security interests arising therefrom, subject to certain limited challenge rights;
>
> (d)     subject only to the entry of the Final Order, and to the Carve-Out, waiving the Debtors' right to surcharge the Prepetition Collateral pursuant to section 506(c) of the Bankruptcy Code and any "equities of the case" exception pursuant to section 552(b) of the Bankruptcy Code;
>
> (e)     authorizing the Debtors to maintain the BoA Purchase Card Program (as further described and defined in the Interim Order);
>
> (f)     modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms of the Interim Order and the Final Order;
>
> (g)     waiving any applicable stay (including under Bankruptcy Rule 6004) and providing for immediate effectiveness of the Interim Order, and, as applicable, the Final Order; and
>
> (h)     granting related relief, including scheduling the Final Hearing to be held as soon as practicable and no later than 30 days after the Petition Date for this Court to consider entry of the Final Order.

**SUMMARY OF MATERIAL TERMS OF THE INTERIM ORDER**[6]

21.     The material terms and conditions of the Orders are summarized below (the

"Summary of Material Terms") in accordance with Bankruptcy Rule 4001(b).

---

[6] This summary of the material terms of the Orders is qualified in its entirety by reference to the applicable provisions of the Interim Order.  In the event of any conflict or inconsistency between this Motion and the Interim Order, the Interim Order shall control.

| Material Term | Summary |
|---|---|
| Parties with Interest in Cash Collateral<br>*Bankruptcy Rule 4001(b)(1)(B)(i)*<br><br>Interim Order ¶¶ D(i)-D(x) | Cortland Capital Market Services, LLC, as successor administrative and collateral agent under the Term Loan Credit Agreement (in such capacity, the "<u>Term Loan Agent</u>"), and each of the lenders party thereto (the "<u>Term Loan Lenders</u>" and, together with the Term Loan Agent, the "<u>Term Loan Secured Parties</u>").<br><br>Bank of America, National Association ("<u>BoA</u>"), as administrative under the ABL Credit Agreement (the "<u>ABL Admin Agent</u>") and co-collateral agent, and Wells Fargo Bank, National Association, as co-collateral agent under the ABL Credit Agreement (with BoA in its capacity as co-collateral agent, the "<u>ABL Collateral Agents</u>,") and each of the lenders party thereto (the "<u>ABL Lenders</u>," and, collectively with the ABL Admin Agent, the ABL Collateral Agents, the Issuing Banks (as such term is defined in the ABL Credit Agreement) and the Secured Bank Product Providers (as such term is defined in the ABL Credit Agreement and, in any event, including the BoA Secured Bank Product Provider (the "<u>ABL Secured Parties</u>"). |
| **Purposes for Use of Cash Collateral**<br>*Bankruptcy Rule 4001(b)(1)(B)(ii)*<br><br>Interim Order ¶ G | An immediate and critical need exists for the Debtors to use the Cash Collateral, in accordance with the Interim Order, for (i) working capital purposes; (ii) other general corporate purposes of the Debtors; and (iii) the satisfaction of the costs and expenses of administering the Chapter 11 Cases. |
| **Budget, Reporting and Other Covenants**<br>*Bankruptcy Rule 4001(b)(1)(B)(iv)*<br><br>Interim Order ¶¶ 3, 5 | **Approved Budget.**   The initial projected liquidity needs of the Debtors during the first 13 weeks of the Chapter 11 Cases are set forth in the Initial Approved Budget, which is attached as <u>Exhibit 1</u> to the Interim Order.<br><br>The Debtors shall comply with the Approved Budget, the initial version of which is the Initial Approved Budget, subject to the variance provisions set forth in this paragraph.  On the third business day of the fourth full week after the Petition Date and the third business day of each week thereafter, the Debtors shall deliver a proposed updated budget for the following 13-week period (beginning with the week ending on the first Sunday following the required date of delivery) substantially in the form of the Initial Approval Budget (each a "<u>Proposed Budget</u>") to the professional advisors to the Supporting Noteholders and any Supporting Noteholders that are under a currently effective nondisclosure agreement with Key Energy, and to the Term Loan Agent and its professional advisors and the ABL Admin Agent and its professional advisors.<br><br><u>Budget Variance:</u> On the third business day of the first full week after the Petition Date and the third business day of each week thereafter, the Debtors shall deliver to the professional advisors to the Supporting Noteholders and any Supporting Noteholders that are under a currently effective nondisclosure agreement with Key Energy, and to the Term Loan Agent and its professional advisors and the ABL Admin Agent and its professional advisors, a weekly variance report, in form and detail reasonably satisfactory to the Term Loan Agent and the ABL Admin Agent, that sets forth and compares (i) for the previous week through Sunday, the actual cash receipts and disbursements of the Debtors for such week with the budgeted receipts |

| Material Term | Summary |
|---|---|
|  | and disbursements in the Approved Budget for such week and (ii) for the cumulative prior four (4) week period (or any applicable shorter period for any report delivered prior to the fifth week after the Petition Date), the actual cash receipts and disbursements of the Debtors for such cumulative four (4) week period (or any applicable shorter period for the reports delivered prior to the fifth week after the Petition Date) with the budgeted receipts and disbursements in the Approved Budget(s) for such cumulative four (4) week period (or any applicable shorter period for the reports delivered prior to the fifth week after the Petition Date) (the "Budget Variance Report"). Each week, commencing with the fifth week after the Petition Date, the Debtors shall ensure that at no time shall any of the following occur: (x) the cumulative total actual cash receipts of the Debtors for the immediately preceding four weeks through and including the immediately preceding week ending on Sunday are less than 80% of the cumulative budgeted total cash receipts of the Debtors for such four week period as set forth in the Approved Budget, and (y) the cumulative total actual cash disbursements of the Debtors for the immediately preceding four weeks through and including the immediately preceding week ending on Sunday exceed 120% of the cumulative budgeted total cash disbursements of the Debtors for such four week period as set forth in the Approved Budget, provided, that, cash disbursements of the Debtors shall include any disbursements made by the Debtors (including, but not limited to, any payments, expenditures or advances) other than (a) professional fees and expenses related to adequate protection and (b) professional fees and expenses relating to administration of these Chapter 11 Cases.<br><br>The Initial Approved Budget will be the first Approved Budget for reporting and permitted variance purposes. Each Proposed Budget provided to the Term Loan Agent and the ABL Admin Agent shall be of no force and effect unless and until it is approved by, in their respective sole discretion, the Term Loan Agent and the ABL Admin Agent (including by email) delivered to the address specified in paragraph 24 of the Interim Order and until such determination is made, the prior Approved Budget shall remain in effect. The Term Loan Agent and the ABL Admin Agent shall approve or reject each Proposed Budget by the third business day of the week immediately following the week in which the Debtors delivered such Proposed Budget to such parties, and such parties shall be deemed to have approved the Proposed Budget on the day immediately following such third business day if no objection is delivered in writing (including by email) by either such party on or prior to such third business day to the address specified in paragraph 24 of the Interim Order. Any such Proposed Budget, upon the approval (or deemed approval) of the Term Loan Agent and the ABL Admin Agent, shall become the "Approved Budget," effective as of the day immediately following the third business day of the week immediately following the week in which the Debtors delivered the Proposed Budget to such parties and for the period of time covered thereby, and shall prospectively replace any prior Approved Budget.<br><br>**Reporting; Access to Records**. The Debtors shall comply with the reporting requirements set forth in the Credit Documents (as amended, in the |

| Material Term | Summary |
|---|---|
| | case of the ABL Credit Agreement, by this paragraph), including, with respect to the ABL Documents, providing a Borrowing Base Report (as defined in the ABL Documents) by Wednesday of each week in the case of gross receivables and every other Wednesday in the case of the full Borrowing Base, calculated as of the close of business of the previous week in a manner reasonably satisfactory to the ABL Admin Agent, and all back-up and supporting calculations as provided in the ABL Documents; provided that all information provided in this paragraph shall also be provided to the advisors to the Supporting Noteholders.  In addition to, and without limiting, whatever rights to access the Prepetition Secured Parties have under the Term Loan Documents and the ABL Documents, as applicable, upon reasonable notice, at reasonable times during normal business hours, the Debtors shall permit representatives, agents and employees of the Prepetition Secured Parties (i) to have access to and inspect the Debtors' properties, (ii) to examine the Debtors' books and records, and (iii) to discuss the Debtors' affairs, finances and condition with the Debtors' officers and financial advisors. |
| **Termination Date** <br> *Bankruptcy Rule 4001(b)(1)(B)(iii)* <br><br> Interim Order ¶ 6 | **Termination Date**.  Unless otherwise ordered by the Court or agreed to in writing by Requisite ABL Lenders and Required Consenting Term Lenders, and it being understood that the termination of consensual use of Cash Collateral by the ABL Secured Parties will terminate the consent of the Term Loan Secured Parties to use of Cash Collateral, and vice versa, the Debtors' right to use Cash Collateral under the terms of the Interim Order shall terminate without further order of the Court upon the occurrence of the "Termination Date" (notice of which shall promptly be provided to the Debtors, counsel to the Supporting Noteholders, and the U.S. Trustee), which shall occur upon one (1) business day's prior written notice from the Term Loan Agent or the ABL Admin Agent to the Debtors and counsel to the Supporting Noteholders of the occurrence of any of the following events (excluding sections (a), (g), (i), (k), (l), (m) and (n) below, upon which the Termination Date shall occur immediately, and it being understood and agreed that if notice of termination is given under the Plan Support Agreement by the Supporting Term Lenders, such notice shall be sufficient notice of the occurrence of the event set forth in subsection (b) below): <br> a) the date that is the earliest of (i) the Plan Effective Date, (ii) the date a sale of substantially all of the Debtors' assets is consummated, and (iii) (x) with respect to the consent of the Term Loan Agent and Consenting Term Lenders to the proposed use of Cash Collateral, the Outside Date (as defined in the Plan Support Agreement), and (y) with respect to the consent of the ABL Admin Agent and Requisite ABL Lenders to the proposed use of Cash Collateral, the earlier of seventy-five (75) days after the Petition Date and January 15, 2017 (if the Confirmation Order has been entered in the Chapter 11 Cases on or prior to the earlier of the 75th day after the Petition Date or January 15, 2017, however, the applicable deadline shall be extended by fifteen (15) days); <br> b) the Plan Support Agreement shall have terminated in accordance with its terms; <br> c) any of the Debtors shall support or take any steps in furtherance of any |

| Material Term | Summary |
|---|---|
| | plan of reorganization other than that contemplated by the Plan Support Agreement or any Alternative Transaction (as defined in the Plan Support Agreement) other than as expressly permitted under the Plan Support Agreement; |
| | d) any Debtor's failure to comply with any of the material terms or conditions of the Interim Order, including, but not limited to, failure to comply with the Approved Budget (subject to the variance provisions described in paragraph 3 of the Interim Order), failure to deliver any Budget Variance Report as and when provided in paragraph 3 of the Interim Order or any Borrowing Base Report as and when provided in paragraph 5 of the Interim Order, any Reimbursement Default shall have occurred that has not been cured pursuant and in accordance with paragraph 4(h) of the Interim Order or any Minimum Borrowing Base Amount Default shall have occurred (all of which failures and defaults shall be deemed to be failures to comply with the material terms or conditions of the Interim Order); |
| | e) any Debtor shall grant, create, incur or suffer to exist any postpetition liens or security interests other than (i) those granted pursuant to the Interim Order, (ii) carriers' mechanics', operator's, warehousemen's, repairmen's or other similar liens arising in the ordinary course of business, (iii) pledges or deposits in connection with workers' compensation, unemployment insurance and other social security legislation arising in the ordinary course of business, and (iv) deposits to secure the performance of any postpetition statutory obligations and other obligations of a like nature incurred in the ordinary course of business, provided that the Debtor(s) shall have ten (10) business days to cure any of the foregoing which were involuntarily imposed or created; |
| | f) any Debtor shall create, incur or suffer to exist any other claim that is *pari passu* with or senior to the Adequate Protection Superpriority Claims; |
| | g) the failure of the Debtors to make any payment provided for under the Interim Order to the Prepetition Secured Parties within five (5) business days of the date such payment is due (other than a Letter of Credit Reimbursement Obligation, which shall be governed by paragraph 4(h) of the Interim Order and payment of professional fees and expenses, which shall be governed by paragraph 4(j) of the Interim Order) |
| | h) the Interim Order or the Final Order (if entered) ceases, for any reason (other than by reason of the express written agreement by the Requisite ABL Lenders and the Required Consenting Term Lenders in their sole discretion), to be in full force and effect in any material respect, or any Debtor so asserts in writing, or the Adequate Protection Liens or Adequate Protection Superpriority Claims created by the Interim Order or the Final Order (if entered) cease in any material respect to be enforceable and of the same effect and priority purported to be created hereby or any Debtor so asserts in writing; |
| | i) the Court shall have entered an order amending, supplementing or otherwise modifying the Interim Order (other than non-substantive amendments, supplementations or modifications) without the consent of each affected Prepetition Secured Party; |

| Material Term | Summary |
|---|---|
| | j) any Debtor supports or takes any steps in furtherance of an action commenced by any other person against the Prepetition Secured Parties, with respect to any of the Credit Documents, including, without limitation, any action to avoid or subordinate any obligations under any of the Credit Documents; <br><br> k) the Court shall have entered an order appointing a chapter 11 trustee, responsible officer or any examiner with enlarged powers relating to the operation of the businesses in these Chapter 11 Cases; <br><br> l) the Court shall have entered an order granting relief from the Automatic Stay to the holder or holders of any security interest to permit foreclosure (or the granting of a deed in lieu of foreclosure or the like) on any of the Debtors' assets which have an aggregate value in excess of $5,000,000; <br><br> m) the Court shall have entered an order avoiding, disallowing, subordinating or recharacterizing any claim, lien, or interest held by any Prepetition Secured Party; and <br><br> n) an order shall have been entered dismissing any of the Chapter 11 Cases or converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code. |
| **Proposed Adequate Protection** <br> *Bankruptcy Rule 4001(b)(1)(B)(iv)* <br><br> Interim Order ¶ 4 | **Adequate Protection.** The Debtors propose to provide the following forms of adequate protection, solely to the extent of any diminution in value of their interests in the Prepetition Collateral (including the Cash Collateral) from and after the Petition Date in favor of the Prepetition Secured Parties: <br><br> <u>Adequate Protection Liens</u>. Subject to the Carve-Out and the Permitted Liens in all respects, pursuant to sections 361 and 363(e) of the Bankruptcy Code, and as a condition of the consensual use of Cash Collateral set forth in the Interim Order, as adequate protection against actual diminution in value of their interests in the Prepetition Collateral, including the Cash Collateral, valid, binding, continuing, enforceable, fully perfected, senior security interests in and liens (the "<u>Adequate Protection Liens</u>") on any and all tangible and intangible pre- and postpetition property of the Debtors, whether existing before, on or after the Petition Date, together with any proceeds thereof (collectively, and as further described in the Interim Order, the "<u>Adequate Protection Collateral</u>"). Notwithstanding anything to the contrary in the Intercreditor Agreement, the Term Loan Adequate Protection Liens shall extend to the ABL Exclusive Priority Cash Collateral, junior in priority to the ABL Adequate Protection Liens. The ABL Adequate Protection Liens shall not extend or attach to any leaseholds or real property. <br><br> The Adequate Protection Collateral shall not include any claims or causes of action of the Debtors arising under sections 502(d), 544, 545, 547, 548, 549 and 550 of the Bankruptcy Code (collectively, the "<u>Avoidance Actions</u>") of the Debtors; <u>provided</u>, <u>however</u>, the Adequate Protection Collateral shall include, subject to and effective upon entry of the Final Order, the proceeds of Avoidance Actions (the "<u>Avoidance Actions Proceeds</u>"). <br><br> <u>Adequate Protection Superpriority Claims</u>. The Secured Party Adequate |

16

| Material Term | Summary |
|---|---|
|  | Protection Obligations due to the Prepetition Secured Parties, respectively, shall constitute allowed superpriority administrative expense claims pursuant to sections 503(b), 507(a) and 507(b) of the Bankruptcy Code of each of the Prepetition Secured Parties (such claims, the "Adequate Protection Superpriority Claims"). The Adequate Protection Superpriority Claims shall be subject only to the Carve-Out, and shall be allowed claims against each of the Debtors (jointly and severally) with priority over any and all administrative expenses and all other claims against the Debtors now existing or hereafter arising, of any kind whatsoever, including, without limitation, all other administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all other administrative expenses or other claims arising under any other provision of the Bankruptcy Code, including, without limitation, sections 105, 326, 327, 328, 330, 331, 503(b), 507(a), 507(b), or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment. The Adequate Protection Superpriority Claims shall be payable from and have recourse to all pre- and post-petition property of the Debtors including, subject to entry of the Final Order to the extent provided therein, the proceeds of any Avoidance Actions.<br><br>Priority of Adequate Protection Liens and Superpriority Claims.  The relative priority of the Term Loan Adequate Protection Liens and ABL Adequate Protection Liens in the Prepetition Collateral shall be subject to and governed by the Intercreditor Agreement.  With respect to all other assets, (x) the Term Loan Adequate Protection Liens and Term Loan Adequate Protection Superpriority Claims shall be senior to the ABL Adequate Protection Liens and the ABL Superpriority Claims, respectively, with respect to any claims for diminution in value of the Term Loan Priority Collateral from and after the Petition Date and junior to the ABL Adequate Protection Liens and the ABL Superpriority Claims with respect to any claims for diminution in value of the ABL Priority Collateral from and after the Petition Date and (y) the ABL Adequate Protection Liens and the ABL Adequate Protection Superpriority Claims shall be senior the Term Loan Adequate Protection Liens and the Term Loan Adequate Protection Superpriority Claims, respectively, with respect to any claims for diminution in value of the ABL Priority Collateral from and after the Petition Date and junior to the Term Loan Adequate Protection Liens and the Term Loan Superpriority Claims with respect to any claims for diminution in value of the Term Loan Priority Collateral from and after the Petition Date.  The Adequate Protection Liens shall be junior only to (i) the Carve-Out and (ii) the Permitted Liens on the Prepetition Collateral (including the Cash Collateral and the Adequate Protection Collateral) existing on the Petition Date with priority over the Prepetition Secured Parties' liens on the Prepetition Collateral (including the Cash Collateral).  Other than the Carve-Out, and subject to the entry of the Final Order, no cost or expense of administration under sections 105, 503 or 507 of the Bankruptcy Code or otherwise, including any such cost or expense resulting from or arising after the conversion of any of the Chapter 11 Cases under section 1112 of the Bankruptcy Code, shall be senior to, or *pari passu* |

| Material Term | Summary |
|---|---|
| | with, the Adequate Protection Superpriority Claims.<br><br>Term Loan Adequate Protection Payments.  The Term Loan Agent shall receive for its own benefit and for the benefit of the Term Loan Secured Parties from the Debtors (i) within five (5) business days following entry of the Interim Order, cash payment of all accrued but unpaid pre-petition fees, interest at the non-default contract rate and other amounts payable under the Term Loan Documents (excluding any Make Whole Amount (as defined in the Term Loan Documents)); and (ii) current cash payment as and when due of interest at the non-default contract rate and all other amounts that become payable under the Term Loan Documents from the Petition Date through the Plan Effective Date (as defined in the Plan) (excluding any Make Whole Amount (as defined in the Term Loan Documents)) (such payments, the "Term Loan Adequate Protection Payments").   The Term Loan Secured Parties' rights are reserved to assert claims for default rate interest without further order of the Court if the Plan Support Agreement is terminated (but such claim for default rate interest shall be deemed waived if the Plan is consummated in accordance with the Plan Support Agreement).<br><br>ABL Adequate Protection Payments.  The ABL Admin Agent shall receive for its own benefit and on behalf of the ABL Secured Parties from the Debtors (i) within five (5) business days following entry of the Interim Order, cash payment of all accrued but unpaid pre-petition fees, interest at the non-default contract rate (or in the case of payment obligations in respect of honored Letters of Credit (as defined in the ABL Documents), the Honored Letter of Credit Interest Rate, any other amounts payable under the ABL Documents, including, but not limited to, any accrued but unpaid line fee (accrued prior to August 24, 2016) and per diem fee (from and after August 24, 2016) pursuant to section 3.2.1 of the ABL Credit Agreement; and (ii) current cash payment in an amount equal to current payment of letter of credit fees, fronting fees, interest at the non-default contract rate (or in the case of the payment obligations in respect of honored Letters of Credit, the Honored Letter of Credit Interest Rate), and all other amounts payable under the ABL Documents (through the Plan Effective Date) (such payments, the "ABL Adequate Protection Payments").   Notwithstanding anything to the contrary in the Interim Order, no commitments shall be continuing under the ABL Credit Agreement from and after the Petition Date and the ABL Lenders' only obligations under the ABL Documents from and after the Petition Date shall be solely with respect to draws under Letters of Credit in existence prior to the Petition Date.  The ABL Secured Parties' rights are reserved to assert claims for default rate interest without further order of the Court if the Plan Support Agreement is terminated (but such claim for default rate interest shall be deemed waived if the Plan is consummated in accordance with the Plan Support Agreement).<br><br>Letter of Credit Reimbursement Obligations.  If the Issuing Banks (as defined in the ABL Documents) make payment on any Letter of Credit (as defined in the ABL Documents), the Debtors shall reimburse the Issuing Banks on a current basis for such payment, together with any interest, at the |

| Material Term | Summary |
| --- | --- |
|  | base rate plus 5.50% per annum (the "<u>Honored Letter of Credit Interest Rate</u>") in accordance with the terms of the ABL Documents on the Reimbursement Date (as defined in the ABL Documents) (such obligations, the "<u>Letter of Credit Reimbursement Obligations</u>").  Any unreimbursed Letter of Credit Reimbursement Obligations shall constitute the ABL Adequate Protection Superpriority Claims.  The Debtors shall satisfy the Letter of Credit Reimbursement Obligations (i) first, from the Segregated Cash (as defined below), (ii) second, from any other Cash Collateral on which the ABL Secured Parties have a first priority lien and (iii) third, from any other available cash, other than Cash Collateral on which the Term Loan Lenders have a first priority lien.  For the avoidance of doubt, the Debtors shall not use any Cash Collateral on which the Term Loan Secured Parties have a first priority lien to satisfy any of the Letter of Credit Reimbursement Obligations.   If the Debtors fail to satisfy their Letter of Credit Reimbursement Obligations for any reason, the Debtors shall be in default of the Cash Collateral Order (such default, a "<u>Reimbursement Default</u>"), and the Debtors' right to use any Cash Collateral shall be automatically terminated without further notice, application, hearing or order of the Court; provided, however, that if Letter of Credit Reimbursement Obligations are repaid in full in cash by 11:00 a.m. Central time on the next business day with respect to draws as to which the Debtors receive notice after 3:00 p.m. Central time on the day on which the applicable Letter of Credit was honored, then the Debtors' right to use Cash Collateral on which the ABL Secured Parties have a first priority lien shall be reinstated as of the time of such repayment.<br><br><u>Segregated Cash for ABL Secured Parties</u>.  As additional adequate protection for the ABL Secured Parties, the Debtors shall maintain an amount equal to (a)(i) the $18,605,000 pledged to the ABL Admin Agent (such amount, together with any additional amounts deposited after August 24, 2016 in the segregated cash collateral accounts pledged to the ABL Admin Agent, the "Segregated Cash") plus (ii) the sum of the Accounts Formula Amount (as defined in the ABL Credit Agreement (but with Dilution Percent (as defined therein) determined as of the close of business of each week for the four-week period then ended)), minus (b) the Availability Reserve (as defined in the ABL Credit Agreement, but including an additional Availability Reserve equal to the Carve-Out), which amount shall not at any time be less than the Minimum Borrowing Base Amount (as defined below) (any breach of paragraph 4(i) of the Interim Order is referred to herein as "<u>Minimum Borrowing Base Amount Default</u>").   As used herein, the "Minimum Borrowing Base Amount" shall mean an amount equal to 105% of the aggregate amount of outstanding LC Obligations (as such term is defined in the ABL Documents and, in any event, including Letter of Credit Reimbursement Obligations).<br><br><u>Professional Fees and Expenses</u>.   As additional adequate protection, the Prepetition Secured Parties shall receive from the Debtors, as applicable, current payment of all outstanding prepetition and all postpetition reasonable and documented fees and expenses incurred by (a) the Term Loan Agent, |

| Material Term | Summary |
|---|---|
| | including the reasonable and documented fees and expenses incurred by Davis Polk & Wardwell LLP, as counsel to the Term Loan Agent, Evercore Partners LLC, as financial advisors to the Term Loan Agent, and Richards, Layton & Finger, P.A., as local counsel to the Term Loan Agent; (b) the ad hoc group of Term Loan Lenders, including the reasonable and documented fees and expenses of Cleary Gottlieb Steen & Hamilton LLP, as counsel to the ad hoc group of Term Loan Lenders; (c) the ABL Admin Agent, including the reasonable and documented fees and expenses incurred by Latham & Watkins LLP, as counsel to the ABL Admin Agent, and Reed Smith, LLP, local counsel to the ABL Admin Agent; and (d) Wells Fargo Bank, National Association, in its capacity as an ABL Collateral Agent, Lender, and Issuing Bank under the ABL Credit Agreement (in such capacities, "Wells Fargo"), including the reasonable and documented fees and expenses incurred by Greenberg Traurig, LLP, as counsel to Wells Fargo. If an objection is not filed with the Court pursuant to this paragraph, the Debtors shall pay the fees, expenses and disbursements set forth in paragraph 4(j) of the Interim Order within 10 (ten) days (which time period may be extended by the applicable professional in its discretion) after delivery of an invoice therefor to the Debtors, any counsel to the Creditors' Committee (if any), and the U.S. Trustee. None of such invoices shall be required to comply with the U.S. Trustee fee guidelines or to be filed with any fee applications with the Court, but shall provide reasonably detailed statements (redacted if necessary for privileged, confidential or otherwise sensitive information). The Debtors, any Creditors' Committee and the U.S. Trustee shall have ten (10) days following their receipt of such invoices to file objections with the Court with respect to the reasonableness of the fees and expenses included therein. If any such objection is not resolved within ten (10) days after such objection is interposed, a hearing with respect thereto shall be conducted at a regularly scheduled omnibus hearing in the Chapter 11 Cases, provided, however that if any party files any such objection, the Debtors shall pay (i) any undisputed portion of such fees, costs and expenses within fifteen (15) days of their receipt of such invoice and (ii) the disputed portion of such fees, costs and expenses promptly following the resolution of such dispute as described in this paragraph. |
| **Carve-Out**<br>*Bankruptcy Rule 4001(b)(1)(B)(iii)*<br><br>Interim Order ¶ 8 | **Carve-Out.**  The Carve-Out means an amount equal to the sum of (i) all fees required to be paid to the clerk of the Court and to the Office of the U.S. Trustee under section 1930(a) of title 28 of the United States Code, <u>plus</u> interest at the statutory rate (without regard to the notice set forth in clause (iii) below); (ii) all reasonable fees and expenses of up to $50,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in clause (iii) below); and (iii) all allowed unpaid fees, costs, and expenses (the "<u>Professional Fees</u>") incurred by persons or firms retained by the Debtors and by an official committee of unsecured creditors appointed by the U.S. Trustee (a "<u>Creditors' Committee</u>"), if any, pursuant to sections 327, 328, 363 or 1103 of the Bankruptcy Code, as well as the reasonable, allowed, unpaid expenses of any such Creditors' Committee, in each case whose retention is approved by a final order of the Court (which order has not been reversed, vacated, stayed or appealed) that are incurred |

| Material Term | Summary |
|---|---|
|  | (A) at any time before delivery by either of the Term Loan Agent or the ABL Admin Agent of a Carve-Out Trigger Notice (as defined below), whether allowed by the Court prior to or after delivery of a Carve-Out Trigger Notice, in an aggregate amount in accordance with and solely to the extent set forth in the Approved Budget in effect prior to the date of delivery of a Carve-Out Trigger Notice (and subject to any further limits imposed by the Interim Order or the Final Order or otherwise on Professional Fees permitted to be incurred in connection with any permitted investigations of Claims and Defenses against any Prepetition Secured Parties), and (B) after the occurrence of the Termination Date and delivery of written notice (the "Carve-Out Trigger Notice") thereof (which may be by email) to the Debtors, the Debtors' advisors and the Creditors' Committee, if any, in an aggregate amount not to exceed $3,500,000, to the extent such Professional Fees are allowed at any time (the amount set forth in this clause (iii)(B) being the "Post-EoD Carve-Out Amount"); provided that the Post-EoD Carve-Out Amount shall be reduced on a dollar-for-dollar basis by any payments made on or after the date of delivery of a Carve-Out Trigger Notice of Professional Fees incurred on or after such date; provided, further that nothing in the Interim Order shall be construed to impair the ability of any party to object to the fees, expenses, reimbursement or compensation described in clauses (i), (ii), or (iii) above, on any grounds.  Of the Carve-Out, 11.74% shall be funded from collateral on which the ABL Agents have a priority lien and 88.26% shall be funded from collateral on which the Term Loan Agent has a priority lien.<br><br>Notwithstanding the foregoing, the Carve-Out shall not include, apply to or be available for any fees or expenses incurred by any party in connection with (a) the investigation, initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation (i) against any of the Prepetition Secured Parties or (ii) challenging the amount, validity, perfection, priority or enforceability of or asserting any defense, counterclaim or offset to, the obligations and the liens and security interests granted under, as applicable, the Credit Documents, including, without limitation, for lender liability or, other than as set forth in paragraphs 10 and 11 of the Interim Order or similar provisions of the Final Order, as applicable, pursuant to section 105, 510, 544, 547, 548, 549, 550, or 552 of the Bankruptcy Code, applicable non-bankruptcy law or otherwise; (b) attempts to modify any of the rights granted to any of the Prepetition Secured Parties hereunder; or (c) paying any amount on account of any claims arising before the commencement of these Chapter 11 Cases unless such payments are approved by an order of the Court; provided, however, that nothing herein shall preclude the Debtors from seeking, in good faith, reimbursement for their reasonable fees and expenses incurred in responding to formal discovery requests brought by third parties in connection with any of the foregoing; provided, further, however, that nothing herein shall preclude the Debtors from (x) seeking, in good faith, a determination regarding whether the Termination Date occurred, (y) seeking, in good faith, an order authorizing the Debtors' non-consensual use of Cash Collateral by showing that the Prepetition Secured Parties are adequately protected, or (z) |

| Material Term | Summary |
|---|---|
| | contesting, in good faith, whether the Plan Support Agreement is breached or otherwise terminated.<br><br>Notwithstanding anything to the contrary in the Interim Order, the Carve-Out shall be senior to all liens and claims granted under the Interim Order, including, without limitation, the Adequate Protection Liens, the Adequate Protection Superpriority Claims and any and all other liens or claims securing any of the Secured Obligations. |
| **Debtors' Stipulations & Releases**<br><br>*Bankruptcy Rule 4001(b)(1)(B)(iii)*<br><br>Interim Order ¶¶ D(i)-D(x); E | The Debtors stipulate to the Secured Obligations under the Credit Documents, the Prepetition Liens securing the Prepetition Collateral, the validity of the Secured Obligations, the validity, perfection and priority of the Prepetition Liens, and the extent of the Cash Collateral of the Prepetition Secured Parties.<br><br>Subject to the challenge provisions in paragraph 10 of the Interim Order, and as further described in the Interim Order, each of the Debtors and their estates (as further defined in the Interim Order, the "Releasors") release each of the Releasees from all claims and causes of action, existing as of the Petition Date, relating to any of the Term Loan Documents or ABL Documents, documents evidencing or governing the Secured Bank Product Obligations, as applicable, or the transactions contemplated under such documents. |
| **Challenge Period**<br><br>*Bankruptcy Rule 4001(b)(1)(B)(iii)*<br><br>Interim Order ¶ 10 | <u>Effect of Stipulations on Third Parties</u>. The releases, stipulations and admissions contained in the Interim Order, including, without limitation, in paragraphs D and E of the Interim Order, shall be binding upon the Debtors and their affiliates and any of their respective successors (including, without limitation, any chapter 7 or chapter 11 trustee appointed or elected for the Debtor) in all circumstances.<br><br>The releases, stipulations and admissions contained in the Interim Order, including, without limitation, in paragraphs D and E of the Interim Order, shall be binding upon all other parties in interest, including, without limitation, any statutory or non-statutory committees appointed or formed in these Chapter 11 Cases (including a Creditors' Committee, if any) and any other person or entity acting on behalf of the Debtors' estate, or otherwise, unless and except to the extent that, with respect to any particular party in interest, (a) such party in interest has filed an adversary proceeding or contested matter (subject to the limitations contained in the Interim Order) by (x) no later than the date that is (i) in the case of a party other than a Creditors' Committee, if appointed, the earlier of (A) 75 days from the Petition Date and (B) the date on which objections to confirmation of the Plan are due; (ii) in the case of a Creditors' Committee, if appointed, the earlier of (A) 60 days after the filing of notice of appointment of the Creditors' Committee and (B) the date on which objections to confirmation of the Plan are due; or (iii) in the case of a Supporting Noteholder, only if the Plan Support Agreement is terminated in accordance with its terms, 20 days following termination of the Plan Support Agreement, or (y) or such later date as has been agreed to, in writing, by the Term Loan Agent and the ABL Admin Agent or as has been ordered by the Court (the "Investigation |

| Material Term | Summary |
|---|---|
| | Termination Date"), objecting to or challenging the amount, validity, perfection, enforceability, priority or extent of the Secured Obligations or otherwise asserting or prosecuting any action for preferences, fraudulent transfers or conveyances, other avoidance power claims or any other claims, counterclaims or causes of action, objections, contests or defenses, including, to the extent released by the Debtors under paragraphs D and E of the Interim Order against any of the Prepetition Secured Parties or their affiliates, representatives, attorneys or advisors in connection with matters related to the Credit Documents or the Prepetition Collateral (including the Cash Collateral) (collectively, "Claims and Defenses") (each such adversary proceeding or contested matter filed on or before the applicable Investigation Termination Date, a "Challenge Proceeding"), and (b) there is a final order in favor of the plaintiff sustaining any such challenge or claim in any Challenge Proceeding; provided that any challenge or claim shall set forth with specificity the basis for such challenge or claim, any and all challenges or claims not so specified in a Challenge Proceeding prior to the expiration of the applicable Investigation Termination Date shall be forever deemed waived, released and barred.<br><br>If no such Challenge Proceeding is filed, (1) the Secured Obligations shall constitute allowed claims, not subject to counterclaim, setoff, recoupment, reduction, subordination, recharacterization, defense or avoidance, for all purposes in the Chapter 11 Cases and any subsequent chapter 7 case(s), (2) the liens and security interests securing the Secured Obligations shall be deemed to have been, as of the Petition Date, legal, valid, binding and perfected, not subject to recharacterization, subordination or avoidance, and (3) the Secured Obligations, the liens and security interests securing the Secured Obligations, and the Prepetition Secured Parties shall not be subject to any other or further challenge by any Creditors' Committee, any non-statutory committees appointed or formed in the Chapter 11 Cases, or any party in interest seeking to exercise the rights of any Debtor's estate, including, without limitation any successor thereto (including, without limitation, any chapter 7 or 11 trustee appointed or elected for any Debtor). If a Challenge Proceeding is filed, the releases, stipulations and admissions contained in paragraphs D and E of the Interim Order shall nonetheless remain binding and preclusive on any person or entity, except to the extent that such findings and admissions were expressly challenged and set forth with specificity in a Challenge Proceeding by such person or entity. Nothing in the Interim Order vests or confers on any Entity (as defined in the Bankruptcy Code), including any Creditors' Committee or any non-statutory committees appointed or formed in the Chapter 11 Cases, standing or authority to pursue any cause of action belonging to the Debtors or their estates, including, without limitation, any Claims and Defenses with respect to the Credit Documents or the Secured Obligations, and an order of the Court conferring such standing on a party-in-interest shall be a prerequisite for the prosecution of a Challenge Proceeding by a party-in-interest. |
| **Modification of** | **Modification of Automatic Stay.** The Debtors are authorized and directed |

| Material Term | Summary |
|---|---|
| **Automatic Stay and 506(c) / 522(b) Waivers** *Bankruptcy Rule 4001(b)(1)(B)(iii)* <br><br> Interim Order ¶¶ 14, 16, 18 | to perform all acts and to make, execute and deliver any and all instruments as may be reasonably necessary to implement the terms and conditions of the Interim Order and the transactions contemplated hereby.  The Automatic Stay is hereby modified to permit the Debtors and each of the Prepetition Secured Parties to accomplish each of the transactions contemplated by the Interim Order. |
| | **Section 506(c) Waiver**. Subject to the entry of the Final Order and the Carve-Out, all rights to surcharge any Prepetition Secured Party, any of the Secured Obligations, any of their respective claims, or the Prepetition Collateral (including Cash Collateral) pursuant to sections 506(c) or 105(a) of the Bankruptcy Code, or any other applicable principal in equity or law shall be and are hereby finally and irrevocably waived, and such waiver shall be binding upon the Debtors and all parties in interest in the Chapter 11 Cases, and no costs or expenses of administration which have been or may be incurred in any of the Chapter 11 Cases at any time shall be charged against any of the foregoing without the prior written consent of the Agents, the Required Consenting Term Lenders and the Requisite ABL Lenders and no such consent shall be implied from any other action, inaction, or acquiescence by any of the Prepetition Secured Parties or their respective representatives or from the Prepetition Secured Parties' consent to the budget or any provision of the Interim Order or the Final Order. |
| | **Section 552(b) Exception**. The Prepetition Secured Parties shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and, subject to the entry of a Final Order and the Carve-Out, the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Prepetition Secured Parties with respect to proceeds, products, offspring or profits of any of the Prepetition Collateral, subject to paragraph 10 of the Interim Order. |

## **CONCISE STATEMENTS UNDER LOCAL RULE 4001-2(a)**

22.    Local Rule 4001-2(a)(i) requires a debtor to:  (a) recite whether the proposed form of the cash collateral order contains certain provisions of the type enumerated therein; (b) identify the location of such provisions in the proposed cash collateral order; and (c) justify the inclusion of such provisions in the cash collateral order.  As further set out in the provisions discussed *supra* in the Summary of Material Terms, the Debtors hereby disclose the below concise statements in accordance with Local Rule 4001-2(a)(i):

a.    Local Rule 4001-2(a)(i)(A): *Cross-Collateralization*.  The Interim Order does not provide for cross-collateralization.

24

b.        Local Rule 4001-2(a)(i)(B): *Stipulation and Challenge Provisions*.  As set forth in paragraph D of the Interim Order, the Debtors have admitted, stipulated and agreed to various matters and shall have no right to file a complaint pursuant to Bankruptcy Rule 7001 or otherwise, or any other pleading asserting a claim or cause of action arising out of or related to the Credit Documents or any transactions or course of conduct related thereto.  The stipulations set forth in paragraph D of the Interim Order are binding on the Debtors and their estates, subject to the limitations contained in the Interim Order, including, without limitation, the challenge provisions contained therein.  See Interim Order ¶¶ D, 10.

c.        Local Rule 4001-2(a)(i)(C): *Section 506(c) Waiver*.  Pursuant to paragraph 16 of the Interim Order, subject to the entry of a Final Order and the Carve-Out, all rights to surcharge any Prepetition Secured Party, any of the Secured Obligations, any of their respective claims, or the Prepetition Collateral (including Cash Collateral) pursuant to sections 506(c) or 105(a) of the Bankruptcy Code, or any other applicable principal in equity or law shall be and are thereby finally and irrevocably waived, and such waiver shall be binding upon the Debtors and all parties in interest in the Chapter 11 Cases, and no costs or expenses of administration which have been or may be incurred in any of the Chapter 11 Cases at any time shall be charged against any of the foregoing without the prior written consent of the Agents, the Required Consenting Term Lenders and the Requisite ABL Lenders and no such consent shall be implied from any other action, inaction, or acquiescence by any of the Prepetition Secured Parties or their respective representatives or from the Prepetition Secured Parties' consent to the budget or any provision of this Interim Order or the Final Order.

d.        Local Rule 4001-2(a)(i)(D): *Liens on Avoidance Actions*.  The Adequate Protection Collateral shall not include any claims or causes of action of the Debtors arising under

sections 502(d), 544, 545, 547, 548, 549 and 550 of the Bankruptcy Code (collectively, the "Avoidance Actions") of the Debtors; provided, however, the Adequate Protection Collateral shall include, subject to and effective upon entry of the Final Order, the proceeds of Avoidance Actions.  See Interim Order ¶ 4(c).

        e.      Local Rule 4001-2(a)(i)(E): *Use of Postpetition Loans to Pay Prepetition Debt*.  The Interim Order does not deem prepetition secured debt to be postpetition debt or use postpetition loans from a prepetition secured creditor to pay part or all of that secured creditor's prepetition debt.

        f.      Local Rule 4001-2(a)(i)(F): *Carve-Out*.  Paragraph 8 of the Interim Order provides for a Carve-Out for the fees and expenses of the United States Trustee, the Debtors' professionals and professionals retained by any Creditors' Committee.  The Interim Order does not provide for disparate treatment of such professionals.

        g.      Local Rule 4001-2(a)(i)(G): *Non-Consensual Priming Liens*.  The Interim Order does not provide for non-consensual priming of any existing secured liens.  See Interim Order ¶ 4(e).

        h.      Local Rule 4001-2(a)(i)(H): *Waiver of Section 552(b) "Equities of the Case" Exception*.  Pursuant to Paragraph 18 of the Interim Order, each of the Prepetition Secured Parties shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and, subject to the entry of a Final Order and the Carve-Out, the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Prepetition Secured Parties with respect to proceeds, products, offspring or profits of any of the Prepetition Collateral, subject to paragraph 10 of the Interim Order.

23.     The provisions of the Interim Order as to which disclosure was required pursuant to Local Rule 4001-2 are all justified under the circumstances of the Chapter 11 Cases because the Prepetition Secured Parties would not have consented to the use of Cash Collateral without the inclusion of such terms, as well as for all of the other reasons discussed herein.

## BASIS FOR RELIEF REQUESTED

I.      **The Court Should Authorize the Debtors to Use Cash Collateral and Provide Adequate Protection**

A.      **Proposed Use of Cash Collateral is Appropriate**

24.     A debtor's use of property of the estate, including cash collateral, is governed by Bankruptcy Code section 363.  Pursuant to Bankruptcy Code section 363(c)(2), a debtor may use cash collateral if "(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of [section 363]."  11 U.S.C. § 363(c)(2).

25.     As discussed above, the Debtors obtained the consent of the Prepetition Secured Parties to use Cash Collateral in connection with a global settlement and on the terms of a restructuring as set forth in the Plan Support Agreement.  In the absence of such consensus, and if the Debtors were unable to use Cash Collateral, the Debtors would not have sufficient working capital to (a) make payments to employees, vendors, or suppliers, (b) satisfy ordinary operating costs, or (c) fund the administrative costs of the Chapter 11 Cases.  Moreover, if unable to use Cash Collateral pursuant to the terms of the Plan Support Agreement, their carefully-negotiated Plan, which has been overwhelmingly accepted by the holders of claims in the only impaired voting classes under the Plan, would be imperiled, and the Debtors could face a long, uncertain road towards a more costly reorganization, or a potential liquidation.  In either alternative scenario, the value available for distribution to stakeholders in these Chapter 11 Cases would be

significantly reduced.  Considering the fundamental need to operate, and the overarching goal of furthering the Plan process, the Debtors submit that their use of Cash Collateral pursuant to the terms set forth in the Interim Order should be granted immediately, and that the Final Order should be entered after the Final Hearing.

### B.    The Proposed Adequate Protection is Appropriate

26.    Bankruptcy Code section 363(e) further provides that "on request of an entity that has an interest in property . . . to be used, sold or leased, by the trustee, the court . . . shall prohibit or condition such use, sale or lease as is necessary to provide adequate protection of such interest."  11 U.S.C. § 363(e).  Although the Bankruptcy Code does not expressly define "adequate protection," Bankruptcy Code section 361 provides a non-exhaustive list of examples of adequate protection including: (i) a lump sum or periodic cash payments; (ii) replacement liens; and (iii) administrative priority claims.  See 11 U.S.C. § 361.  Generally, courts decide what constitutes adequate protection on a case-by-case basis.  See Resolution Trust Corp. v. Swedeland Dev. Group, Inc. (In re Swedeland Dev. Group, Inc.), 16 F.3d 552, 564 (3d Cir. 1994) ("[A] determination of whether there is adequate protection is made on a case by case basis." (citing In re O'Connor, 808, F.2d 1393, 1397 (10th Cir. 1987))); see also In re Satcon Tech Corp., Case No. 12-12869, 2012 WL 6091160, at *6 (Bankr. D. Del. Dec. 7, 2012); In re Columbia Gas Sys., Inc., Nos. 91-803, 91-804, 1992 WL 79323, at *2 (Bankr. D. Del. Feb. 18, 1992).

27.    In Swedeland, the Third Circuit pointedly noted that the purpose of adequate protection "is to insure that the creditor receives the value for which he bargained prebankruptcy."  In re Swedeland, 16 F.3d at 564; see also Shaw Indus., Inc. v. First Nat'l Bank of Penn. (In re Shaw Indus., Inc.), 300 B.R. 861, 865 (Bankr. W.D. Pa. 2003) ("The purpose of

28

providing 'adequate protection' is to insure that a secured creditor receives in value essentially what he bargained for."); <u>In re Beker Indus. Corp.</u>, 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986) (noting that the application of adequate protection "is left to the vagaries of each case, but its focus is protection of the secured creditor from diminution in the value of its collateral during the reorganization process") (citation omitted), <u>rev'd on other grounds</u>, 89 B.R. 336 (S.D.N.Y. 1988).

28.     The adequate protection proposed in the Interim Order consists primarily of typical protections, including the Adequate Protection Liens, the Adequate Protection Claims, and the payment of outstanding and current interest and fees pursuant to the Credit Documents and advisors' fees to the Agents and certain other Prepetition Secured Parties.  In addition, the ABL Admin Agent negotiated for the immediate reimbursement of any letters of credit (currently outstanding and undrawn) that are drawn during the Chapter 11 Cases.  Any reimbursements will be made from existing Cash Collateral, pursuant to the terms of the Interim Order, and have been agreed to by the Term Loan Agent.  This additional protection, along with the setting aside of the Segregated Cash, in each case for the benefit of the ABL Secured Parties, were heavily negotiated requirements of the ABL Secured Parties.  Without these additional protections, the Debtors would not have been able to achieve consensus on the relief requested herein, and would face potential litigation regarding collateral usage and/or the need to obtain debtor-in-possession financing, in either case imperiling their businesses and consensual restructuring process.

29.     The terms and conditions on which the Debtors may use Cash Collateral have been carefully designed to meet the dual goals of Bankruptcy Code sections 361 and 363 and the proposed adequate protection package in the Interim Order is reasonable and appropriate given

29

the circumstances of the Chapter 11 Cases.  The provisions are intended to protect the Prepetition

Secured Parties from any diminution in value of their interests in the Prepetition Collateral

during the pendency of the Chapter 11 Cases only, and the Prepetition Secured Parties have

consented to the proposed use of Cash Collateral conditioned upon the proposed protections.

The Debtors further submit that the terms of the Interim Order were negotiated at arm's length

and in good faith by the Debtors and the Prepetition Secured Parties, and are fair and reasonable

and consistent with the Debtors' fiduciary duties.

30.    Accordingly, the adequate protection provided for in the Interim Order is fair and

reasonable under the circumstances, satisfies the requirements of sections 363(c)(2) and 363(e)

of the Bankruptcy Code, and should be approved.  Courts in this District have approved similar

adequate protection packages in chapter 11 cases.  See, e.g., In re Triangle USA Petroleum

Corp., Case No. 16-11566 (MFW) (Bankr. D. Del. June 30, 2016) [D.I. 44]; In re UCI Int'l,

LLC, Case No. 16-11354 (MFW) (Bankr. D. Del. June 3, 2016) [D.I. 79]; In re Hercules

Offshore, Inc., Case No. 16-11385 (KJC) (Bankr. D. Del. June 7, 2016) [D.I. 65]; In re Paragon

Offshore PLC, No. 16-10386 (CSS) (Bankr. D. Del. Feb. 17, 2016) [D.I. 79]; In re Trump

Entm't Resorts, Inc., No. 14-12103 (KG) (Bankr. D. Del. Sept. 10, 2014) [D.I. 52]; In re Entegra

Power Group LLC, No. 14-11859 (PJW) (Bankr. D. Del. Aug. 6, 2014) [D.I. 42]; In re Windsor

Petroleum Transp. Corp., No. 14-11708 (LSS) (Bankr. D. Del. Jul. 17, 2014) [D.I. 19]; In re

Haights Cross Commc'ns, Inc., No. 10-10062 (BLS) (Bankr. D. Del. Jan. 12, 2010) [D.I. 37].[7]

---

[7] Final orders were entered in each of these cases.  See In re Triangle USA Petroleum Corp., Case No. 16-11566
(MFW) (Bankr. D. Del. Sept. 12, 2016) [D.I. 295]; In re UCI Int'l, LLC, Case No. 16-11354 (MFW) (Bankr. D. Del.
Aug. 16, 2016) [D.I. 436]; In re Hercules Offshore, Inc., Case No. 16-11385 (KJC) (Bankr. D. Del. July 15, 2016)
[D.I. 220]; In re Paragon Offshore PLC, No. 16-10386 (CSS) (Bankr. D. Del. Mar. 9, 2016) [D.I. 140]; In re Trump
Entm't Resorts, Inc., No. 14-12103 (KG) (Bankr. D. Del. Oct. 23, 2014) [D.I. 342]; In re Entegra Power Group
LLC, No. 14-11859 (PJW) (Bankr. D. Del. Sept. 3, 2014) [D.I. 106]; In re Windsor Petroleum Transp. Corp., No.
14-11708 (LSS) (Bankr. D. Del. Aug. 12, 2014) [D.I. 52]; In re Haights Cross Commc'ns, Inc., No. 10-10062 (BLS)
(Bankr. D. Del. Feb. 8, 2010) [D.I. 102].

### C.      The Scope of the Carve-Out is Appropriate

31.      The Secured Party Adequate Protection Obligations are subject to the Carve-Out. Without the Carve-Out, the Debtors and other parties in interest may be deprived of certain rights and powers because the services for which professionals may be paid in the Chapter 11 Cases would be restricted.  See In re Ames Dep't Stores, Inc., 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) (observing that courts insist on carve-outs for professionals representing parties in interest because "[a]bsent such protection, the collective rights and expectations of all parties-in-interest are sorely prejudiced").  The Carve-Out does not directly or indirectly deprive the Debtors' estates or other parties in interest of possible rights and powers.  Additionally, the Carve-Out protects against administrative insolvency during the course of the Chapter 11 Cases by ensuring that assets remain for the payment of the Clerk of the Court and United States Trustee fees and the professional fees of the Debtors and any Creditors' Committee.

### II.      The Automatic Stay Should Be Modified on a Limited Basis

32.      Section 362(a) of the Bankruptcy Code operates to stay:

> the commencement or continuation, including the issuance or employment of process of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title . . . .

11 U.S.C. § 362(a)(1).  Section 362(d)(1) of the Bankruptcy Code, however, permits a debtor or other parties in interest to request modification or termination of the automatic stay for "cause." 11 U.S.C. § 362(d)(1).

33.      Here, certain provisions in the Interim Order contemplate a modification of the automatic stay in order to (a) permit the Debtors to grant the Adequate Protection Liens described above with respect to the Prepetition Secured Parties, and to perform such acts as may

be reasonably requested to assure the perfection and priority of such liens, (b) allow the Prepetition Secured Parties to exercise certain remedies upon the occurrence of the Termination Date after a five business day period, and (c) implement the terms of the Interim Order. Stay modifications of this type are standard features for orders governing the use of cash collateral[8] and, in the Debtors' business judgment, are reasonable under the circumstances. Further, modification of the automatic stay is a necessary component of the overall adequate protection package the Debtors have agreed to provide the Prepetition Secured Parties as a condition of the Prepetition Secured Parties' consent to the Debtors' use of Cash Collateral. Accordingly, the Debtors request that the Court authorize the modification of the automatic stay as set forth in the Interim Order.

## **RESERVATION OF RIGHTS**

34.     Except as otherwise set forth herein or in the Interim Order, nothing contained herein is intended or should be construed as: (i) an admission as to the validity of any claim against the Debtors; (ii) a waiver of the Debtors' rights to dispute any claim; (iii) an approval or assumption of any agreement, contract, or lease under section 365 of the Bankruptcy Code; (iv) a promise or requirement to pay any prepetition claim; (v) an implication or admission that any particular claim is of a type specified or defined in this Motion; (vi) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; or (vii) a waiver of the Debtors' rights under the Bankruptcy Code or any other applicable law. Likewise, if the Court grants the relief sought herein, any payment made pursuant to an

---

[8] Courts in this District have approved standard modifications to the automatic stay in connection with the use of cash collateral.  See, e.g In re UCI Int'l, LLC, Case No. 16-11354 (MFW) (Bankr. D. Del. June 3, 2016) [D.I. 79]; In re Hercules Offshore, Inc., Case No. 16-11385 (KJC) (Bankr. D. Del. June 7, 2016) [D.I. 65]; In re Paragon Offshore PLC, No. 16-10386 (CSS) (Bankr. D. Del. Feb. 17, 2016) [D.I. 79]; In re Quicksilver Res. Inc., Case No. 15-10585 (LSS) (Bankr. D. Del. Mar. 19, 2015) [D.I. 97]; In re Haights Cross Commc'ns, Inc., No. 10-10062 (BLS) (Bankr. D. Del. Jan. 12, 2010) [D.I. 37].

order of the Court is not intended to be nor should it be construed as an admission as to the validity of any claim or a waiver of the Debtors' rights to subsequently dispute such claim.

## IMMEDIATE RELIEF IS WARRANTED UNDER BANKRUPTCY RULES 4001 AND 6003

35.      Bankruptcy Rule 4001(b) provides that a final hearing on a motion for authorization to use cash collateral may not be commenced earlier than fourteen (14) days after the service of such motion.  If the motion so requests, however, a bankruptcy court is empowered to conduct a preliminary expedited hearing on the motion and authorize the use of cash collateral to the extent necessary to avoid immediate and irreparable harm to the Debtors' estates.  See Fed. R. Bankr. P. 4001(c)(2); see also Local Rule 4001-2(b) (permitting a Court to grant interim cash collateral relief when necessary to avoid immediate and irreparable harm pending a final hearing).  Bankruptcy Rule 6003 similarly empowers a court to grant relief within the first twenty-one (21) days after the petition date "to the extent that relief is necessary to avoid immediate or irreparable harm."  Fed. R. Bankr. P. 6003.

36.      For the reasons discussed above, entry of the Interim Order authorizing the Debtors to immediately use Cash Collateral (subject to the amounts set forth in the Initial Approved Budget with the Permitted Variances) and granting the other relief requested herein is necessary to (i) avoid a severe disruption in the Debtors' operations at this critical juncture, (ii) preserve the Debtors' carefully-negotiated consensual restructuring, and (iii) maximize the value of the Debtors' estates for the benefit of all stakeholders.  Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rules 4001 and 6003 and Local Rule 4001-2(b) to support granting the relief requested herein.

33

## WAIVER OF STAY AND RELATED REQUIREMENTS UNDER BANKRUPTCY RULES 4001(a)(3), 6004(a) AND 6004(h)

37.     In addition, by this Motion, the Debtors seek a waiver of any stay of the effectiveness of the order approving this Motion under Bankruptcy Rules 4001(a)(3) and 6004(h).  Bankruptcy Rule 4001(a)(3) provides, "[a]n order granting a motion for relief from an automatic stay made in accordance with Rule 4001(a)(1) is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  Additionally, pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  As described above, the immediate use of Cash Collateral is essential to support continuing business operations and prevent irreparable damage to the Debtors' estates.  Accordingly, ample cause exists to justify the waiver of the fourteen-day stay imposed by Bankruptcy Rule 4001(a)(3) or Bankruptcy Rule 6004(h), to the extent either such stay applies.

38.     Similarly, for the reasons stated above, the Debtors respectfully request a waiver of the notice requirements under Bankruptcy Rule 6004(a) to the extent they are deemed applicable.

## NOTICE

39.     Notice of this Motion will be provided to: (i) the Office of the United States Trustee for the District of Delaware; (ii) the holders of the thirty (30) largest unsecured claims against the Debtors on a consolidated basis; (iii) the Banks (as defined in the First Day Declaration); (iv) Latham & Watkins LLP, as counsel to the ABL Agent; (v) Davis Polk & Wardwell LLP, as counsel to Cortland Capital Market Services LLC, as the Term Loan Agent; (vi) the Indenture Trustee; (vii) Sullivan & Cromwell LLP, as counsel to the Supporting Noteholders; (viii) Cleary Gottlieb Steen & Hamilton LLP, as counsel to the Supporting

Noteholders and the Supporting Term Lenders; and (ix) all parties who, as of the filing of this Motion, have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002.  Notice of this Motion and any order entered hereon will be served in accordance with Local Rule 9013-1(m).  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

## **NO PRIOR REQUEST**

40.     The Debtors have not previously sought the relief requested herein from this or any other court.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

WHEREFORE, the Debtors respectfully request that the Court (a) enter the Interim

Order, substantially in the form attached hereto as Exhibit A, (b) following the Final Hearing (if

necessary), enter the Final Order and (c) grant such other and further relief as is just and proper.

Dated: October 24, 2016
Wilmington, Delaware

SIDLEY AUSTIN LLP
James F. Conlan
Larry J. Nyhan
Andrew F. O'Neill
One South Dearborn Street
Chicago, Illinois 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

Jeffrey E. Bjork
Christina M. Craige
555 West Fifth Street, Suite 4000
Los Angeles, California 90013
Telephone: (213) 896-6000
Facsimile: (213) 896-6600

John G. Hutchinson
787 Seventh Avenue
New York, NY 10019
Telephone: (212) 839-5300
Facsimile: (212) 839-5599

    -and-

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Robert S. Brady*
Robert S. Brady (No. 2847)
Edwin J. Harron (No. 3396)
Ryan M. Bartley (No. 4985)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

PROPOSED ATTORNEYS FOR THE DEBTORS AND
DEBTORS IN POSSESSION

**<u>Exhibit A</u>**

**Interim Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| KEY ENERGY SERVICES, INC., *et al.*,[1] | Case No. 16-12306 (___) |
| Debtors. | (Jointly Administered) |
| | Ref. Docket No. ____ |

## INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363, (II) GRANTING ADEQUATE PROTECTION TO THE PREPETITION SECURED PARTIES PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 503, 507, AND 552, (III) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001(b), AND (IV) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of the debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (collectively, the "Chapter 11 Cases") for entry of an interim order (this "Interim Order") and a final order (the "Final Order") under sections 105, 361, 362, 363, 503, 507 and 552 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 4001, 6003, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2002-1, 4001-2 and 9013-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), *inter alia*:

      i.    authorizing the Debtors' use of Cash Collateral (as defined below), subject to and pursuant to the terms and conditions set forth in this Interim Order;

---

[1]  The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows:  Misr Key Energy Investments, LLC (4528), Key Energy Services, Inc. (8081), Key Energy Services, LLC (5567), and Misr Key Energy Services, LLC (7527).  The mailing address for each Debtor is 1301 McKinney Street, Suite 1800, Houston, Texas 77010.

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Motion or the Plan (as defined in the Motion), as applicable.

ii.    authorizing the Debtors to provide adequate protection to the Prepetition Secured Parties (as defined below) solely to the extent of any diminution in value of the Prepetition Collateral (as defined below) (including the Cash Collateral) from and after the Petition Date under or in connection with (i) that certain Term Loan and Security Agreement, dated as of June 1, 2015 (as amended, restated, supplemented or otherwise modified prior to the commencement of these Chapter 11 Cases and with all supplements and exhibits thereto, the "<u>Term Loan Credit Agreement</u>" and, together with all related agreements and documents executed by any of the Debtors in connection with the Term Loan Credit Agreement, the "<u>Term Loan Documents</u>"), by and among Key Energy Services, Inc. ("<u>Key Energy</u>") as borrower, Key Energy Services, LLC ("<u>KES</u>"), as guarantor (Key Energy and KES in such capacities, the "<u>Term Loan Obligors</u>"), Cortland Capital Market Services, LLC, as successor administrative and collateral agent (in such capacities, the "<u>Term Loan Agent</u>"), and each of the lenders party thereto (the "<u>Term Loan Lenders</u>" and, together with the Term Loan Agent, the "<u>Term Loan Secured Parties</u>"); and (ii) that certain Loan and Security Agreement dated as of June 1, 2015 (as amended, restated, supplemented or otherwise modified prior to the commencement of these Chapter 11 Cases and with all supplements and exhibits thereto, the "<u>ABL Credit Agreement</u>" and, together with all related agreements and documents executed by any of the Debtors in connection with the ABL Credit Agreement, the "<u>ABL Documents</u>", and the Term Loan Documents and the ABL Documents, collectively, the "<u>Credit Documents</u>") among Key Energy and KES, as borrowers (Key Energy and KES in such capacity, the "<u>ABL Obligors</u>") and Bank of America, N.A. ("<u>BoA</u>"), as administrative agent (the "<u>ABL Admin Agent</u>") and co-collateral agent, and Wells Fargo Bank, National Association, as co-collateral agent (with BoA in its capacity as co-collateral agent, the "<u>ABL Collateral Agents</u>," and together with the ABL Admin Agent, the "<u>ABL Agents</u>," and together with the Term Loan Agent, the "<u>Agents</u>")), and each of the lenders party thereto (the "<u>ABL Lenders</u>" and, collectively with the ABL Admin Agent, the ABL Collateral Agents, the Issuing Banks (as such term is defined in the ABL Credit Agreement) and the Secured Bank Product Providers (as such term is defined in the ABL Credit Agreement and, in any event, including the BoA Secured Bank Product Provider (as defined below) (the "<u>ABL Secured Parties</u>"; the ABL Lenders and the Term Loan Lenders, collectively, the "<u>Prepetition Lenders</u>"; the ABL Secured Parties and the Term Loan Secured Parties, collectively, the "<u>Prepetition Secured Parties</u>");

iii.    subject to certain limited challenge rights, approving certain stipulations by the Debtors with respect to the Credit Documents and the liens and security interests arising therefrom;

iv.    subject only to the Final Order and the Carve-Out, and effective upon the entry of the Final Order, and to the extent set forth herein, waiving the Debtors' right to surcharge the Prepetition Collateral pursuant to section 506(c) of the Bankruptcy Code and any "equities of the case" exception pursuant to section 552(b) of the Bankruptcy Code;

v.    authorizing the Debtors to maintain the BoA Purchase Card Program (as defined below);

vi.    vacating and modifying the Automatic Stay (as defined herein) to the extent set forth herein;

vii.    waiving any applicable stay (including under Bankruptcy Rule 6004) and providing for immediate effectiveness of this Interim Order and as later applicable, the Final Order; and

viii.    scheduling a final hearing (the "Final Hearing") on the Motion no later than 30 days after the Petition Date to consider entry of a Final Order granting the relief requested in the Motion on a final basis.

Upon consideration of the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012; and this matter being a core proceeding within the meaning of 28 U.S.C. § 157(b)(2); and the Court being able to issue a final order consistent with Article III of the United States Constitution; and venue of this proceeding and the Motion in this district being proper pursuant to 28 U.S.C. §§ 1408 and 1409; and appropriate notice of the Motion and the interim hearing on the Motion (the "Interim Hearing") having been provided by the Debtors; and the Interim Hearing having been held on [•], 2016; and upon the record made by the Debtors at the Interim Hearing; and the Court having found and determined that the relief sought in the Motion is in the best interest of the Debtors, the Debtors' estates, their creditors and all other parties in interest;

and the Court having determined that the legal and factual bases set forth in the Motion establish

just cause for the relief granted herein; and after due deliberation and consideration and good and

sufficient cause appearing therefor,

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

A.     Petition Date.  On October 24, 2016 (the "Petition Date"), each of the Debtors

filed a voluntary petition under chapter 11 of the Bankruptcy Code in the United States

Bankruptcy Court for the District of Delaware (the "Court").  On _____, 2016, this

Court entered an order approving the joint administration of the Chapter 11 Cases.

B.     Debtors in Possession.  The Debtors are continuing in the management and

operation of their business and properties as debtors in possession pursuant to sections 1107(a)

and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these

Chapter 11 Cases.  A statutory committee of unsecured creditors or equity security holders, as

applicable, has not been appointed in the Chapter 11 Cases.

C.     Jurisdiction and Venue.  This Court has jurisdiction, pursuant to 28 U.S.C.

§§ 157(b) and 1334, over these proceedings and over the persons and property affected hereby.

Venue for the Chapter 11 Cases is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

This is a core proceeding pursuant to 28 U.S.C. § 157(b).

D.     Debtors' Stipulations.  Subject to the limitations set forth in paragraphs 10 and 11

below, the Debtors acknowledge, admit, agree, represent and stipulate to the following

(paragraphs D(i) through D(x) below are collectively referred to herein as the "Debtors'

Stipulations"):

     i.     Term Loan Obligations.  As of the Petition Date, the Term Loan
Obligors were truly and justly indebted and liable to the Term Loan Secured
Parties, without defense, counterclaim, recoupment or offset of any kind, in the

aggregate principal amount of not less than (i) $288,875,998 outstanding pursuant to and in accordance with the terms of the Term Loan Documents, plus (ii) (a) accrued and unpaid interest thereon, (b) any additional fees, costs and expenses (including, but not limited to, any attorneys', financial advisors', and other professionals fees and expenses that are chargeable or reimbursable under the Term Loan Documents) and (c) all other charges, indemnities and other costs and obligations incurred therewith, whether arising before or after the Petition Date, including any Obligations (as defined in the Term Loan Documents) of any kind or nature, whether or not evidenced by any note, agreement or other instrument, whether or not contingent, whenever arising, accrued, accruing, due, owing or chargeable in respect of any of the Debtors' obligations under the Term Loan Documents (collectively, the "Term Loan Obligations").

ii.    ABL Obligations.  As of the Petition Date, the ABL Obligors were truly and justly indebted and liable to the ABL Secured Parties, without defense, counterclaim, recoupment or offset of any kind, in the aggregate principal amount of not less than (i) $38,526,688 in an aggregate undrawn amount of outstanding letters of credit issued pursuant to and in accordance with the terms of the ABL Documents, plus (ii) (a) accrued and unpaid interest and fees with respect thereto, (b) any additional fees, costs and expenses (including, but not limited to, any attorneys', financial advisors', and other professionals fees and expenses that are chargeable or reimbursable under the ABL Documents), (c) all outstanding Secured Bank Product Obligations (as defined in the ABL Documents and including obligations owing pursuant to the BoA Purchase Card Program) and (d) all other charges, indemnities and other costs and obligations incurred therewith, whether arising before or after the Petition Date, including any Obligations (as defined in the ABL Documents) of any kind or nature, whether or not evidenced by any note, agreement or other instrument, whether or not contingent, whenever arising, accrued, accruing, due, owing or chargeable in respect of any of the Debtors' obligations under the ABL Documents (collectively, the "ABL Obligations" and together with the Term Loan Obligations, the "Secured Obligations").

iii.    Prepetition Term Loan Liens and Prepetition Collateral.  The Term Loan Obligations are secured by (i) first priority security interests in and liens on (the "Prepetition Term Loan First Priority Liens") the Term Loan Priority Collateral (as defined in the Intercreditor Agreement (as defined below)) including cash deposits in the TL Proceeds and Collateral Account (as defined in the Term Loan Documents) which cash is cash collateral as defined in section 363 of the Bankruptcy Code (the "Term Loan Priority Cash Collateral" and together with the Term Loan Priority Collateral, the "Prepetition Term Loan Priority Collateral"), as more particularly described in and on the terms set forth in the Term Loan Documents, and (ii) second priority security interests in and liens on (the "Prepetition Term Loan Second Priority Liens," and together with the Prepetition Term Loan First Priority Liens, the "Prepetition Term Loan Liens") the ABL Priority Collateral (as defined in the ABL Documents) including collections from the Debtors' accounts receivable and other ABL Priority Cash

Collateral (as defined below) other than the ABL Priority Cash Collateral held from time to time in Account Number ending in 8583 with BoA (as defined below), which secures certain reimbursement obligations in respect of letters of credit issued pursuant to the ABL Documents (such ABL Priority Cash Collateral, the "<u>ABL Exclusive Priority Cash Collateral</u>") and which account holds $3,914,000 as of the Petition Date.

     iv.      <u>Prepetition ABL Liens and Prepetition Collateral</u>.    The ABL Obligations are secured by (i) first priority security interests in and liens on (the "<u>Prepetition ABL First Priority Liens</u>") the ABL Priority Collateral (as defined in the Intercreditor Agreement (as defined below)) including cash collections from the Debtors' accounts receivable and the Segregated Cash (as defined below), which cash is cash collateral as defined in section 363 of the Bankruptcy Code (the "<u>ABL Priority Cash Collateral</u>," and together with the Term Loan Priority Cash Collateral, the "<u>Cash Collateral</u>"), as more particularly described in and on the terms set forth in the ABL Documents (the "<u>Prepetition ABL Priority Collateral</u>," and together with the Prepetition Term Loan Priority Collateral, the "<u>Prepetition Collateral</u>"), and (ii) second priority security interests in and liens on (the "<u>Prepetition ABL Second Priority Liens</u>," and together with the Prepetition ABL First Priority Liens, the "<u>Prepetition ABL Liens</u>," and together with the Prepetition Term Loan Liens, the "<u>Prepetition Liens</u>") the Prepetition Term Loan Priority Collateral, including the Term Loan Priority Cash Collateral.

     v.      <u>Intercreditor Agreement</u>.    Pursuant to that certain Intercreditor Agreement, dated as of June 1, 2015, by and among Bank of America, N.A,. as Initial ABL Agent and Cortland Capital Market Services LLC, as Initial Term Agent (as amended, restated, supplemented or otherwise modified prior to the commencement of these Chapter 11 Cases and with all supplements and exhibits thereto, the "<u>Intercreditor Agreement</u>") and as more particularly stated therein, the Prepetition Term Loan First Priority Liens have priority over and are senior in all respects to the Prepetition ABL Second Priority Liens with respect to the Prepetition Term Loan Priority Collateral, and the Prepetition ABL First Priority Liens have priority over and are senior in all respects to the Prepetition Term Loan Second Priority Liens with respect to the Prepetition ABL Priority Collateral.

     vi.      <u>Validity of Term Loan Obligations</u>.    The Term Loan Obligations constitute legal, valid and binding obligations of the Term Loan Obligors.    No offsets, defenses, or counterclaims to the Term Loan Obligations exist.    No portion of the Term Loan Obligations or any payments made to the Term Loan Secured Parties or applied to or paid on account of the obligations owing under the Term Loan Documents prior to the Petition Date is subject to any contest, avoidance, disallowance, reduction, recharacterization, recovery, subordination (whether equitable, contractual or otherwise), attachment, offset, counterclaim, crossclaim, defense, "claim" (as defined in the Bankruptcy Code) of any kind, cause of action, impairment or any other challenge of any kind.    The Term Loan

Documents are valid and enforceable by each of the Term Loan Secured Parties and the Term Loan Agent, as applicable, for the benefit of the Term Loan Secured Parties against each of the applicable Debtors. The Term Loan Obligations constitute allowed claims against the applicable Debtors' estates. No claim of or cause of action held by the Debtors or their estates exists against any of the Term Loan Secured Parties or their agents (in such capacity), whether arising under applicable state or federal law (including, without limitation, any recharacterization, subordination, avoidance, or other claims arising under or pursuant to sections 105, 510, or 542 through 553 of the Bankruptcy Code), or whether arising under or in connection with any of the Term Loan Documents (or the transactions contemplated thereunder), Term Loan Obligations, or Prepetition Term Loan Liens, including without limitation, any right to assert any disgorgement or recovery.

vii.    <u>Validity of ABL Obligations</u>. The ABL Obligations constitute legal, valid and binding obligations of the ABL Obligors. No offsets, defenses, or counterclaims to the ABL Obligations exist. No portion of the ABL Obligations or any payments made to the ABL Secured Parties or applied to or paid on account of the obligations owing under the ABL Documents prior to the Petition Date is subject to any contest, avoidance, disallowance, reduction, recharacterization, recovery, subordination (whether equitable, contractual or otherwise), attachment, offset, counterclaim, crossclaim, defense, "claim" (as defined in the Bankruptcy Code) of any kind, cause of action, impairment or any other challenge of any kind. The ABL Documents are valid and enforceable by each of the ABL Secured Parties and the ABL Admin Agent, as applicable, for the benefit of the ABL Secured Parties against each of the applicable Debtors. The ABL Obligations constitute allowed claims against the applicable Debtors' estates. No claim of or cause of action held by the Debtors or their estates exists against any of the ABL Secured Parties or their agents (in such capacity), whether arising under applicable state or federal law (including, without limitation, any recharacterization, subordination, avoidance, or other claims arising under or pursuant to sections 105, 510, or 542 through 553 of the Bankruptcy Code), or whether arising under or in connection with any of the ABL Documents (or the transactions contemplated thereunder), ABL Obligations, or Prepetition ABL Liens, including without limitation, any right to assert any disgorgement or recovery.

viii.    <u>Validity and Perfection of Prepetition Term Loan Liens</u>. The Prepetition Term Loan Liens (a) secure the Term Loan Obligations; (b) are valid, binding, perfected and enforceable liens on and security interests in the Prepetition Collateral (including the Cash Collateral); (c) are not subject, pursuant to the Bankruptcy Code or other applicable law, to any contest, avoidance, disallowance, reduction, recharacterization, recovery, subordination (whether equitable, contractual or otherwise), attachment, offset, counterclaim, crossclaim, defense, "claim" (as defined in the Bankruptcy Code) of any kind, cause of action, impairment or any other challenge of any kind; and (d) are subject and

subordinate only to (1) the Carve-Out (as defined below), (2) the Permitted Liens (as defined below) and (3) solely with respect to the Prepetition ABL Priority Collateral, the Prepetition ABL First Priority Liens, and the Debtors each irrevocably waive, for themselves and their subsidiaries and affiliates, any right to challenge or contest in any way the perfection, validation and enforceability of the Prepetition Term Loan Liens or the validity or enforceability of the Term Loan Obligations and the Term Loan Documents.

        ix.      <u>Validity and Perfection of Prepetition ABL Liens</u>.  The Prepetition ABL Liens (a) secure the ABL Obligations, (b) are valid, binding, perfected and enforceable liens on and security interests in the Prepetition Collateral (including the Cash Collateral); (c) are not subject, pursuant to the Bankruptcy Code or other applicable law, to any contest, avoidance, disallowance, reduction, recharacterization, recovery, subordination (whether equitable, contractual or otherwise), attachment, offset, counterclaim, crossclaim, defense, "claim" (as defined in the Bankruptcy Code) of any kind, cause of action, impairment or any other challenge of any kind; and (d) are subject and subordinate only to (1) the Carve-Out, (2) the Permitted Liens, and (3) solely with respect to the Prepetition Term Loan Priority Collateral, the Prepetition Term Loan First Priority Liens, and the Debtors each irrevocably waive, for themselves and their subsidiaries and affiliates, any right to challenge or contest in any way the perfection, validation and enforceability of the Prepetition ABL Liens or the validity or enforceability of the ABL Obligations and the ABL Documents.

        x.      <u>Cash Collateral</u>.  All cash proceeds of the Prepetition Collateral, including all such cash proceeds of such Prepetition Collateral held in any of the Debtors' banking, checking or other deposit accounts or securities accounts with financial institutions (in each case, other than trust, escrow and custodial funds held as of the Petition Date in properly established trust, escrow or custodial accounts), are Cash Collateral of the Secured Parties within the meaning of section 363(a) of the Bankruptcy Code, whether received before, on  or after the Petition Date; <u>provided</u>, for the avoidance of doubt, that no cash held pursuant to the terms of the Backstop Escrow Agreement (as defined in the Debtors' Joint Prepackaged Plan of Reorganization of Key Energy Services, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code (the "<u>Plan</u>")) and the Rights Offering Escrow Agreement (as defined in the Plan) shall constitute Cash Collateral or property of the Debtors' estates.

        E.      <u>Releases by the Debtors</u>.  Subject to the challenge provisions described in paragraph 10 herein, each of the Debtors and the Debtors' estates, on its own behalf and on behalf of its past, present and future predecessors, successors, heirs, subsidiaries, and assigns (collectively, the "<u>Releasors</u>") to the maximum extent permitted by applicable law,

unconditionally, irrevocably and fully forever release, remise, acquit, relinquish, irrevocably

waive and discharge each of the Prepetition Secured Parties and each of their respective former,

current, or future officers, employees, directors, agents, representatives, owners, members,

partners, financial advisors, legal advisors, shareholders, managers, consultants, accountants,

attorneys, affiliates, and predecessors in interest (collectively, the "Releasees") of and from any

and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action,

indebtedness and obligations, rights, assertions, allegations, actions, suits, controversies,

proceedings, losses, damages, injuries, attorneys' fees, costs, expenses, or judgments of every

type, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued,

unaccrued, fixed, contingent, pending, or threatened including, without limitation, all legal and

equitable theories of recovery, arising under common law, statute or regulation or by contract, of

every nature and description that exist on the date hereof relating to any of the Term Loan

Documents or ABL Documents or documents evidencing or governing Secured Bank Product

Obligations, as applicable, or the transactions contemplated under such documents, including,

without limitation, (i) any so-called "lender liability" or equitable subordination claims or

defenses, (ii) any and all claims and causes of action arising under title 11 of the United States

Code, (iii) any and all claims and causes of action regarding the validity, priority, perfection or

avoidability of the liens or claims of the Prepetition Secured Parties and (iv) any reappraisal of

assets under the Term Loan Documents prior to the date hereto, any actions taken in connection

with alleged defaults under the Term Loan Documents prior to the date hereof and/or the

negotiation or consummation of forbearance agreements related thereto and/or the negotiation or

consummation of forbearance agreements related to the ABL Documents, provided, however,

that nothing herein shall operate as a release or waiver of any claims or causes of action against

the Releasees solely on account of any act taken after the Petition Date. The Debtors'
acknowledgments, stipulations and releases set forth in this paragraph E shall be binding on the
Debtors and their respective representatives, successors and assigns, and on each of the Debtors'
estates, and, subject to entry of the Final Order and the challenge provisions contained in
paragraph 10 herein, all creditors thereof and each of their respective representatives, successors
and assigns, including, without limitation, any trustee or other representative appointed in these
Chapter 11 Cases, whether such trustee or representative is appointed in chapter 11 or chapter 7.

     F.     <u>Approved Budget</u>. Attached hereto as <u>Exhibit 1</u> is a 13-week cash flow forecast
setting forth all projected cash receipts and cash disbursements on a weekly basis (the "<u>Initial
Approved Budget</u>"). The Initial Approved Budget is an integral part of this Interim Order and
has been relied upon by the Prepetition Secured Parties in consenting to this Interim Order and
the Debtors' use of the Cash Collateral. The Debtors represent and warrant to the Prepetition
Secured Parties and this Court that the Initial Approved Budget includes and contains the
Debtors' best estimate of all operational receipts and all operational disbursements, fees, costs,
and other expenses that will be payable, incurred and/or accrued by any of the Debtors during the
period covered by the Initial Approved Budget and that such operational disbursements, fees,
costs, and other expenses, other than (i) professional fees and expenses related to adequate
protection and (ii) professional fees and expenses related to administration of these Chapter 11
Cases, will be timely paid in the ordinary course of business pursuant to and in accordance with
the Initial Approved Budget unless such operational disbursements, fees, costs, and other
expenses are not incurred or otherwise payable. The Debtors further represent that the Initial
Approved Budget is achievable and will allow the Debtors to operate in the Chapter 11 Cases
and pay postpetition administrative expenses as they come due. The Debtors shall be required to

10

provide to the ABL Admin Agent and its professional advisors, the Term Loan Agent and its professional advisors and the advisors to the Supporting Noteholders a Budget Variance Report (as defined below) in accordance with the provisions of paragraph 3 of this Interim Order.

G.    Use of Cash Collateral.  An immediate and critical need exists for the Debtors to use the Cash Collateral, in accordance with this Interim Order, for (i) working capital purposes; (ii) other general corporate purposes of the Debtors; and (iii) the satisfaction of the costs and expenses of administering the Chapter 11 Cases.

H.    Consent by Prepetition Secured Parties.  The Term Loan Agent, the Supporting Term Lenders (as defined in the Plan Support Agreement), the ABL Admin Agent, the ABL Collateral Agents, and the Required Lenders (as defined in the ABL Credit Agreement and herein referred to as the "Requisite ABL Lenders") have consented, conditioned on the entry of this Interim Order, to the Debtors' proposed use of Cash Collateral, solely on the terms and conditions set forth in this Interim Order, and such consent is binding on all Prepetition Secured Parties.

I.    Adequate Protection.  The adequate protection provided to the Prepetition Secured Parties, as set forth more fully in paragraph 4 of this Interim Order, for any diminution in the value of the Prepetition Secured Parties' interest in the Prepetition Collateral (including the Cash Collateral) from and after the Petition Date resulting from the imposition of the automatic stay under § 362 of the Bankruptcy Code (the "Automatic Stay"), or the use, sale, or lease of the Prepetition Collateral (including the Cash Collateral) under section 363 of the Bankruptcy Code is consistent with and authorized by the Bankruptcy Code and is offered by the Debtors to protect such parties' interests in the Prepetition Collateral (including the Cash Collateral) in accordance with sections 361, 362, 363 and 364 of the Bankruptcy Code.  The adequate

protection provided herein and other benefits and privileges contained herein are necessary in order to (i) protect the Prepetition Secured Parties from diminution in the value of their respective interests of their Prepetition Collateral (including the Cash Collateral) and (ii) obtain the consents and agreements contemplated herein.

J.     <u>Good Cause Shown; Best Interest</u>.   The Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(b)(2) and the Local Rules.  Absent entry of this Interim Order, the Debtors' businesses, properties, and estates will be immediately and irreparably harmed.  This Court concludes that good cause has been shown and entry of this Interim Order is in the best interest of the Debtors' respective estates and creditors as its implementation will, among other things, allow for the continued operation of the Debtors' existing businesses and enhance the Debtors' prospects for a successful reorganization.

K.     <u>No Liability to Third Parties</u>.   The Debtors stipulate and the Court finds that in permitting the Debtors to use the Cash Collateral, or in taking any other actions permitted by this Interim Order, none of the Prepetition Secured Parties shall (i) have liability to any third party or be deemed to be in control of the operation of any of the Debtors or to be acting as a "controlling person," "responsible person," or "owner or operator" with respect to the operation or management of any of the Debtors (as such term, or any similar terms, are used in the Internal Revenue Code, the United States Comprehensive Environmental Response, Compensation and Liability Act, as amended, or any other Federal or state statute) or (ii) owe any fiduciary duty to any of the Debtors, their creditors or estates, or shall constitute or be deemed to constitute a joint venture or partnership with any of the Debtors.

L.     <u>Section 552(b)</u>.   Subject to entry of the Final Order and the Carve-Out, (i) each of the Prepetition Secured Parties shall be entitled to all of the rights and benefits of section 552(b)

of the Bankruptcy Code and (ii) the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Prepetition Secured Parties with respect to proceeds, product, offspring, or profits with respect to any of the Prepetition Collateral.

M.     Notice.   Under the circumstances of these Chapter 11 Cases, proper, timely, adequate and sufficient notice of the Motion and Interim Hearing has been provided in accordance with the Bankruptcy Code, Bankruptcy Rules, and the Local Rules, and no further notice of the Motion, Interim Hearing, or the Final Hearing shall be required.

Based upon the foregoing, and upon the record made before this Court at the Interim Hearing, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT**:

1.     Approval of Interim Order.   The Motion is approved on the terms and conditions set forth in this Interim Order.   Any objections that have not previously been withdrawn, waived or resolved at or prior to the Interim Hearing are hereby overruled, and (except as set forth herein) all reservations of rights included therein with respect to the Motion are hereby denied and overruled.

2.     Authorization to Use Cash Collateral.   Subject to the terms and conditions of this Interim Order, the Debtors are hereby authorized to use Cash Collateral on an interim basis during the period beginning with the Petition Date and ending on the Termination Date (as defined below) for (a) working capital purposes; (b) other general corporate purposes of the Debtors; and (c) the satisfaction of the costs and expenses of administering the Chapter 11 Cases; provided, that (x) the Debtors' use of Cash Collateral (other than Cash Collateral consisting of the Segregated Cash) shall be in accordance with the Approved Budget (as defined below), subject to the variance provisions set forth in paragraph 3 herein, or as otherwise set forth in this

Interim Order and (y) Cash Collateral consisting of the Segregated Cash shall only be used as set forth in paragraph 4(h) or paragraph 7(c) of this Interim Order; <u>provided</u> further that (x) the Prepetition Secured Parties are granted the adequate protection as set forth herein and (y) except on the terms and conditions of this Interim Order, the Debtors shall be prohibited from at any time using the Cash Collateral absent consent of the Prepetition Secured Parties or further order of the Court.

3.    <u>Approved Budget; Budget Variance</u>.  The Debtors shall comply with the Approved Budget, the initial version of which is the Initial Approved Budget, subject to the variance provisions set forth in this paragraph.  On the third business day of the fourth full week after the Petition Date and the third business day of each week thereafter, the Debtors shall deliver a proposed updated budget for the following 13-week period (beginning with the week ending on the first Sunday following the required date of delivery) substantially in the form of the Initial Approval Budget (each a "<u>Proposed Budget</u>") to the professional advisors to the Supporting Noteholders and any Supporting Noteholders that are under a currently effective nondisclosure agreement with Key Energy, and to the Term Loan Agent and its professional advisors and the ABL Admin Agent and its professional advisors.  On the third business day of the first full week after the Petition Date and the third business day of each week thereafter, the Debtors shall deliver to the professional advisors to the Supporting Noteholders and any Supporting Noteholders that are under a currently effective nondisclosure agreement with Key Energy, and to the Term Loan Agent and its professional advisors and the ABL Admin Agent and its professional advisors, a weekly variance report, in form and detail reasonably satisfactory to the Term Loan Agent and the ABL Admin Agent, that sets forth and compares (i) for the previous week through Sunday, the actual cash receipts and disbursements of the Debtors for

such week with the budgeted receipts and disbursements in the Approved Budget for such week and (ii) for the cumulative prior four (4) week period (or any applicable shorter period for any report delivered prior to the fifth week after the Petition Date), the actual cash receipts and disbursements of the Debtors for such cumulative four (4) week period (or any applicable shorter period for the reports delivered prior to the fifth week after the Petition Date) with the budgeted receipts and disbursements in the Approved Budget(s) for such cumulative four (4) week period (or any applicable shorter period for the reports delivered prior to the fifth week after the Petition Date)  (the "Budget Variance Report").  Each week, commencing with the fifth week after the Petition Date, the Debtors shall ensure that at no time shall any of the following occur: (x) the cumulative total actual cash receipts of the Debtors for the immediately preceding four weeks through and including the immediately preceding week ending on Sunday are less than 80% of the cumulative budgeted total cash receipts of the Debtors for such four week period as set forth in the Approved Budget, and (y) the cumulative total actual cash disbursements of the Debtors for the immediately preceding four weeks through and including the immediately preceding week ending on Sunday exceed 120% of the cumulative budgeted total cash disbursements of the Debtors for such four week period as set forth in the Approved Budget, provided, that, cash disbursements of the Debtors shall include any disbursements made by the Debtors (including, but not limited to, any payments, expenditures or advances) other than (a) professional fees and expenses related to adequate protection and (b) professional fees and expenses relating to administration of these Chapter 11 Cases.  The Initial Approved Budget will be the first Approved Budget for reporting and permitted variance purposes.  Each Proposed Budget provided to the Term Loan Agent and the ABL Admin Agent shall be of no force and effect unless and until it is approved by, in their respective sole discretion, the Term Loan Agent and

the ABL Admin Agent (including by email) delivered to the address specified in paragraph 24 of this Interim Order and until such determination is made, the prior Approved Budget shall remain in effect. The Term Loan Agent and the ABL Admin Agent shall approve or reject each Proposed Budget by the third business day of the week immediately following the week in which the Debtors delivered such Proposed Budget to such parties, and such parties shall be deemed to have approved the Proposed Budget on the day immediately following such third business day if no objection is delivered in writing (including by email) by either such party on or prior to such third business day to the address specified in paragraph 24 of this Interim Order. Any such Proposed Budget, upon the approval (or deemed approval) of the Term Loan Agent and the ABL Admin Agent, shall become the "Approved Budget," effective as of the day immediately following the third business day of the week immediately following the week in which the Debtors delivered the Proposed Budget to such parties and for the period of time covered thereby, and shall prospectively replace any prior Approved Budget.

4.      <u>Prepetition Secured Parties' Adequate Protection</u>.  Pursuant to sections 361, 363(c) and 364 of the Bankruptcy Code, the Debtors shall provide adequate protection for the interests of the Prepetition Secured Parties in the Prepetition Collateral (including the Cash Collateral) to the extent of any diminution in the value of the Prepetition Secured Parties' interest in the Prepetition Collateral (including the Cash Collateral) from and after the Petition Date in any way resulting from the imposition of the Automatic Stay, or the use, sale, or lease of the Cash Collateral under section 363 of the Bankruptcy Code. The Agents, on behalf of themselves and for the benefit of each of the Prepetition Secured Parties, are hereby granted, solely to the extent of any diminution in value of their interests in the Prepetition Collateral (including the

Cash Collateral) from and after the Petition Date, the following (collectively, the "Secured Party

Adequate Protection Obligations"):

(a)    Term Loan Adequate Protection Liens.  Subject to the Carve-Out and the Permitted Liens in all respects, pursuant to section 361 and 363(e) of the Bankruptcy Code, and as a condition of the consensual use of Cash Collateral set forth herein, as adequate protection against actual diminution in value of their interests in the Prepetition Collateral, including the Cash Collateral, effective as of the Petition Date and perfected without the need for execution by the Debtors or recordation or filing of security agreements, control agreements, pledge agreements, financing statements, mortgages or other similar documents, or the possession or control by the Term Loan Agent of any of the Adequate Protection Collateral (as defined below), the Term Loan Agent is hereby granted, for the ratable benefit of the Term Loan Secured Parties, valid, binding, continuing, enforceable, fully perfected, senior security interests in and liens (the "Term Loan Adequate Protection Liens") on any and all tangible and intangible pre- and postpetition property of the Debtors, whether existing before, on or after the Petition Date, together with any proceeds thereof, including, without limitation, any and all cash and any investment of such cash, inventory, accounts receivable, other rights to payment whether arising before or after the Petition Date, contracts, properties, plants, fixtures, machinery, equipment, general intangibles, documents, instruments, securities, chattel paper, interests in leaseholds (provided, however, that to the extent that any lease prohibits the granting of a lien thereon, or otherwise prohibits hypothecation of the leasehold interest, then in such event there shall only be a lien on the economic value of, proceeds of sale or other disposition of, and any other proceeds and products of such leasehold interests unless the applicable provision is rendered ineffective by applicable non-bankruptcy law or the Bankruptcy Code), real property, deposit accounts, securities accounts, patents, copyrights, trademarks, trade names, rights under license agreements and other intellectual property, capital stock of subsidiaries, wherever located, and the proceeds, products, rents, accession and profits of the foregoing (collectively, the "Adequate Protection Collateral").  Notwithstanding anything to the contrary in the Intercreditor Agreement, the Term Loan Adequate Protection Liens shall extend to the ABL Exclusive Priority Cash Collateral, junior in priority to the ABL Adequate Protection Liens.

(b)    ABL Adequate Protection Liens.  Subject to the Carve-Out and the Permitted Liens in all respects, pursuant to section 361 and 363(e) of the Bankruptcy Code, and as a condition of the consensual use of Cash Collateral set forth herein, as adequate protection against actual diminution in value of their interests in the Prepetition Collateral, including the Cash Collateral, effective as of the Petition Date and perfected without the need for execution by the Debtors or recordation or filings of security agreements, control agreements, pledge agreements, financing statements, mortgages or other similar documents, or the possession or control by the ABL Admin Agent of any of the Adequate Protection

17

Collateral, the ABL Admin Agent is hereby granted, for the ratable benefit of the ABL Secured Parties, valid, binding, continuing, enforceable, fully perfected, senior security interests in and liens (the "ABL Adequate Protection Liens" and together with the Term Loan Adequate Protection Liens, the "Adequate Protection Liens") on the Adequate Protection Collateral (other than interests in leaseholds and real property).  The ABL Adequate Protection Liens shall not extend or attach to any leaseholds or real property.

(c)     Avoidance Actions and Avoidance Action Proceeds.     The Adequate Protection Collateral shall not include any claims or causes of action of the Debtors arising under sections 502(d), 544, 545, 547, 548, 549 and 550 of the Bankruptcy Code (collectively, the "Avoidance Actions") of the Debtors; provided, however, the Adequate Protection Collateral shall include, subject to and effective upon entry of the Final Order, the proceeds of Avoidance Actions (the "Avoidance Actions Proceeds").

(d)     Adequate Protection Superpriority Claims.     The Secured Party Adequate Protection Obligations due to the Term Loan Secured Parties shall constitute allowed superpriority administrative expense claims pursuant to sections 503(b), 507(a) and 507(b) of the Bankruptcy Code of each of the Term Loan Secured Parties (such claims, the "Term Loan Adequate Protection Superpriority Claims").  The Secured Party Adequate Protection Obligations due to the ABL Secured Parties shall constitute allowed superpriority administrative expense claims pursuant to sections 503(b), 507(a) and 507(b) of the Bankruptcy Code by each of the ABL Secured Parties (such claims, the "ABL Adequate Protection Superpriority Claims" and together with the Term Loan Adequate Protection Superpriority Claim, the "Adequate Protection Superpriority Claims").  The Adequate Protection Superpriority Claims shall be subject only to the Carve-Out, and shall be allowed claims against each of the Debtors (jointly and severally) with priority over any and all administrative expenses and all other claims against the Debtors now existing or hereafter arising, of any kind whatsoever, including, without limitation, all other administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all other administrative expenses or other claims arising under any other provision of the Bankruptcy Code, including, without limitation, sections 105, 326, 327, 328, 330, 331, 503(b), 507(a), 507(b), or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment. The Adequate Protection Superpriority Claims shall be payable from and have recourse to all pre- and post-petition property of the Debtors including, subject to entry of the Final Order to the extent provided therein, the proceeds of any Avoidance Actions.

(e)     Priority of Adequate Protection Liens and Superpriority Claims.  The relative priority of the Term Loan Adequate Protection Liens and ABL Adequate Protection Liens in the Prepetition Collateral shall be subject to and governed by the Intercreditor Agreement.  With respect to all other assets, (x) the

Term Loan Adequate Protection Liens and Term Loan Adequate Protection Superpriority Claims shall be senior to the ABL Adequate Protection Liens and the ABL Superpriority Claims, respectively, with respect to any claims for diminution in value of the Term Loan Priority Collateral from and after the Petition Date and junior to the ABL Adequate Protection Liens and the ABL Superpriority Claims with respect to any claims for diminution in value of the ABL Priority Collateral from and after the Petition Date and (y) the ABL Adequate Protection Liens and the ABL Adequate Protection Superpriority Claims shall be senior to the Term Loan Adequate Protection Liens and the Term Loan Adequate Protection Superpriority Claims, respectively, with respect to any claims for diminution in value of the ABL Priority Collateral from and after the Petition Date and junior to the Term Loan Adequate Protection Liens and the Term Loan Superpriority Claims with respect to any claims for diminution in value of the Term Loan Priority Collateral from and after the Petition Date.  The Adequate Protection Liens shall be junior only to (i) the Carve-Out and (ii) any other valid, enforceable, unavoidable and properly perfected liens (the "Permitted Liens") on the Prepetition Collateral (including the Cash Collateral and the Adequate Protection Collateral) existing on the Petition Date with priority over the Prepetition Secured Parties' liens on the Prepetition Collateral (including the Cash Collateral).  Other than the Carve-Out, and subject to the entry of the Final Order, no cost or expense of administration under sections 105, 503 or 507 of the Bankruptcy Code or otherwise, including any such cost or expense resulting from or arising after the conversion of any of the Chapter 11 Cases under section 1112 of the Bankruptcy Code, shall be senior to, or *pari passu* with, the Adequate Protection Superpriority Claims.

(f)    Term Loan Adequate Protection Payments.  The Term Loan Agent shall receive for its own benefit and for the benefit of the Term Loan Secured Parties from the Debtors (i) within five (5) business days following entry of this Interim Order, cash payment of all accrued but unpaid pre-petition fees, interest at the non-default contract rate and other amounts payable under the Term Loan Documents (excluding any Make Whole Amount (as defined in the Term Loan Documents)); and (ii) current cash payment as and when due of interest at the non-default contract rate and all other amounts that become payable under the Term Loan Documents from the Petition Date through the Plan Effective Date (as defined in the Plan) (excluding any Make Whole Amount (as defined in the Term Loan Documents)) (such payments, the "Term Loan Adequate Protection Payments").  The Term Loan Secured Parties' rights are reserved to assert claims for default rate interest without further order of the Court if the Plan Support Agreement is terminated (but such claim for default rate interest shall be deemed waived if the Plan is consummated in accordance with the Plan Support Agreement).

(g)    ABL Adequate Protection Payments.  The ABL Admin Agent shall receive for its own benefit and on behalf of the ABL Secured Parties from the Debtors (i) within five (5) business days following entry of this Interim Order,

cash payment of all accrued but unpaid pre-petition fees, interest at the non-default contract rate (or in the case of payment obligations in respect of honored Letters of Credit (as defined in the ABL Documents), the Honored Letter of Credit Interest Rate (as defined below), any other amounts payable under the ABL Documents, including, but not limited to, any accrued but unpaid line fee (accrued prior to August 24, 2016) and per diem fee (from and after August 24, 2016) pursuant to section 3.2.1 of the ABL Credit Agreement; and (ii) current cash payment in an amount equal to current payment of letter of credit fees, fronting fees, interest at the non-default contract rate (or in the case of the payment obligations in respect of honored Letters of Credit, the Honored Letter of Credit Interest Rate), and all other amounts payable under the ABL Documents (through the Plan Effective Date) (such payments, the "<u>ABL Adequate Protection Payments</u>").  Notwithstanding anything to the contrary herein, no commitments shall be continuing under the ABL Credit Agreement from and after the Petition Date and the ABL Lenders' only obligations under the ABL Documents from and after the Petition Date shall be solely with respect to draws under Letters of Credit in existence prior to the Petition Date.  The ABL Secured Parties' rights are reserved to assert claims for default rate interest without further order of the Court if the Plan Support Agreement is terminated (but such claim for default rate interest shall be deemed waived if the Plan is consummated in accordance with the Plan Support Agreement).

(h)    <u>Letter of Credit Reimbursement Obligations</u>.  If the Issuing Banks (as defined in the ABL Documents) make payment on any Letter of Credit (as defined in the ABL Documents), the Debtors shall reimburse the Issuing Banks on a current basis for such payment, together with any interest, at the base rate plus 5.50% per annum (the "<u>Honored Letter of Credit Interest Rate</u>") in accordance with the terms of the ABL Documents on the Reimbursement Date (as defined in the ABL Documents) (such obligations, the "<u>Letter of Credit Reimbursement Obligations</u>").    Any unreimbursed Letter of Credit Reimbursement Obligations shall constitute the ABL Adequate Protection Superpriority Claims.    The Debtors shall satisfy the Letter of Credit Reimbursement Obligations (i) first, from the Segregated Cash (as defined below), (ii) second, from any other Cash Collateral on which the ABL Secured Parties have a first priority lien and (iii) third, from any other available cash, other than Cash Collateral on which the Term Loan Lenders have a first priority lien. For the avoidance of doubt, the Debtors shall not use any Cash Collateral on which the Term Loan Secured Parties have a first priority lien to satisfy any of the Letter of Credit Reimbursement Obligations.  If the Debtors fail to satisfy their Letter of Credit Reimbursement Obligations for any reason, the Debtors shall be in default of the Cash Collateral Order (such default, a "<u>Reimbursement Default</u>"), and the Debtors' right to use any Cash Collateral shall be automatically terminated without further notice, application, hearing or order of the Court; <u>provided</u>, <u>however</u>, that if Letter of Credit Reimbursement Obligations are repaid in full in cash by 11:00 a.m. Central time on the next business day with respect to draws as to which the Debtors receive notice after 3:00 p.m. Central time on the

day on which the applicable Letter of Credit was honored, then the Debtors' right to use Cash Collateral on which the ABL Secured Parties have a first priority lien shall be reinstated as of the time of such repayment.

(i)     Segregated Cash for ABL Secured Parties.  As additional adequate protection for the ABL Secured Parties, the Debtors shall maintain an amount equal to (a)(i) the $18,605,000 pledged to the ABL Admin Agent (such amount, together with any additional amounts deposited after August 24, 2016 in the segregated cash collateral accounts pledged to the ABL Admin Agent, the "Segregated Cash") plus (ii) the sum of the Accounts Formula Amount (as defined in the ABL Credit Agreement (but with Dilution Percent (as defined therein) determined as of the close of business of each week for the four-week period then ended)), minus (b) the Availability Reserve (as defined in the ABL Credit Agreement, but including an additional Availability Reserve equal to the Carve-Out), which amount shall not at any time be less than the Minimum Borrowing Base Amount (as defined below) (any breach of this paragraph 4(i) is referred to herein as "Minimum Borrowing Base Amount Default").  As used herein, the "Minimum Borrowing Base Amount" shall mean an amount equal to 105% of the aggregate amount of outstanding LC Obligations (as such term is defined in the ABL Documents and, in any event, including Letter of Credit Reimbursement Obligations).

(j)     Professional Fees and Expenses.   As additional adequate protection, the Prepetition Secured Parties shall receive from the Debtors, as applicable, current payment of all outstanding prepetition and all postpetition reasonable and documented fees and expenses incurred by (a) the Term Loan Agent, including the reasonable and documented fees and expenses incurred by Davis Polk & Wardwell LLP, as counsel to the Term Loan Agent, Evercore Partners LLC, as financial advisors to the Term Loan Agent, and Richards, Layton & Finger, P.A., as local counsel to the Term Loan Agent; (b) the ad hoc group of Term Loan Lenders, including the reasonable and documented fees and expenses of Cleary Gottlieb Steen & Hamilton LLP, as counsel to the ad hoc group of Term Loan Lenders; (c) the ABL Admin Agent, including the reasonable and documented fees and expenses incurred by Latham & Watkins LLP, as counsel to the ABL Admin Agent, and Reed Smith, LLP, local counsel to the ABL Admin Agent; and (d) Wells Fargo Bank, National Association, in its capacity as an ABL Collateral Agent, Lender, and Issuing Bank under the ABL Credit Agreement (in such capacities, "Wells Fargo"), including the reasonable and documented fees and expenses incurred by Greenberg Traurig, LLP, as counsel to Wells Fargo.  If an objection is not filed with the Court pursuant to this paragraph, the Debtors shall pay the fees, expenses and disbursements set forth in this paragraph 4(j) within 10 (ten) days (which time period may be extended by the applicable professional in its discretion) after delivery of an invoice therefor to the Debtors, any counsel to the Creditors' Committee (if any), and the U.S. Trustee.  None of such invoices shall be required to comply with the U.S. Trustee fee guidelines or to be filed with any fee applications with the Court, but shall

provide reasonably detailed statements (redacted if necessary for privileged, confidential or otherwise sensitive information).  The Debtors, any Creditors' Committee and the U.S. Trustee shall have ten (10) days following their receipt of such invoices to file objections with the Court with respect to the reasonableness of the fees and expenses included therein.  If any such objection is not resolved within ten (10) days after such objection is interposed, a hearing with respect thereto shall be conducted at a regularly scheduled omnibus hearing in the Chapter 11 Cases, <u>provided</u>, <u>however</u> that if any party files any such objection, the Debtors shall pay (i) any undisputed portion of such fees, costs and expenses within fifteen (15) days of their receipt of such invoice and (ii) the disputed portion of such fees, costs and expenses promptly following the resolution of such dispute as described in this paragraph.

5.    <u>Reporting; Access to Records</u>.    The Debtors shall comply with the reporting requirements set forth in the Credit Documents (as amended, in the case of the ABL Credit Agreement, by this paragraph), including, with respect to the ABL Documents, providing a Borrowing Base Report (as defined in the ABL Documents) by Wednesday of each week in the case of gross receivables and every other Wednesday in the case of the full Borrowing Base, calculated as of the close of business of the previous week in a manner reasonably satisfactory to the ABL Admin Agent, and all back-up and supporting calculations as provided in the ABL Documents; <u>provided</u> that all information provided in this paragraph 5 shall also be provided to the advisors to the Supporting Noteholders.  In addition to, and without limiting, whatever rights to access the Prepetition Secured Parties have under the Term Loan Documents and the ABL Documents, as applicable, upon reasonable notice, at reasonable times during normal business hours, the Debtors shall permit representatives, agents and employees of the Prepetition Secured Parties (i) to have access to and inspect the Debtors' properties, (ii) to examine the Debtors' books and records, and (iii) to discuss the Debtors' affairs, finances and condition with the Debtors' officers and financial advisors.

6.    <u>Termination of Cash Collateral Authorization</u>.    Unless otherwise ordered by the Court or agreed to in writing by Requisite ABL Lenders and Required Consenting Term

Lenders, and it being understood that the termination of consensual use of Cash Collateral by the ABL Secured Parties will terminate the consent of the Term Loan Secured Parties to use of Cash Collateral, and vice versa, the Debtors' right to use Cash Collateral under the terms of this Interim Order shall terminate without further order of the Court upon the occurrence of the "Termination Date" (notice of which shall promptly be provided to the Debtors, counsel to the Supporting Noteholders, and the U.S. Trustee), which shall occur upon one (1) business day's prior written notice from the Term Loan Agent or the ABL Admin Agent to the Debtors and counsel to the Supporting Noteholders of the occurrence of any of the following events (excluding subsections 6(a), 6(g), 6(i), 6(k), 6(l), 6(m) and 6(n) below, upon which the Termination Date shall occur immediately, and it being understood and agreed that if notice of termination is given under the Plan Support Agreement by the Supporting Term Lenders, such notice shall be sufficient notice of the occurrence of the event set forth in subsection 6(b) hereof):

     (a)    the date that is the earliest of (i) the Plan Effective Date, (ii) the date a sale of substantially all of the Debtors' assets is consummated, and (iii) (x) with respect to the consent of the Term Loan Agent and Consenting Term Lenders to the proposed use of Cash Collateral, the Outside Date (as defined in the Plan Support Agreement), and (y) with respect to the consent of the ABL Admin Agent and Requisite ABL Lenders to the proposed use of Cash Collateral, the earlier of seventy-five (75) days after the Petition Date and January 15, 2017 (if the Confirmation Order has been entered in the Chapter 11 Cases on or prior to the earlier of the 75th day after the Petition Date or January 15, 2017, however, the applicable deadline shall be extended by fifteen (15) days);

     (b)    the Plan Support Agreement shall have terminated in accordance with its terms;

     (c)    any of the Debtors shall support or take any steps in furtherance of any plan of reorganization other than that contemplated by the Plan Support Agreement or any Alternative Transaction (as defined in the Plan Support Agreement), in either case other than as expressly permitted under the Plan Support Agreement;

(d)     any Debtor's failure to comply with any of the material terms or conditions of this Interim Order, including, but not limited to, failure to comply with the Approved Budget (subject to the variance provisions described in paragraph 3), failure to deliver any Budget Variance Report as and when provided in paragraph 3 of this Interim Order or any Borrowing Base Report as and when provided in paragraph 5 of this Interim Order, any Reimbursement Default shall have occurred that has not been cured pursuant and in accordance with paragraph 4(h) of this Interim Order or any Minimum Borrowing Base Amount Default shall have occurred (all of which failures and defaults shall be deemed to be failures to comply with the material terms or conditions of this Interim Order);

(e)     any Debtor shall grant, create, incur or suffer to exist any postpetition liens or security interests other than (i) those granted pursuant to this Interim Order, (ii) carriers' mechanics', operator's, warehousemen's, repairmen's or other similar liens arising in the ordinary course of business, (iii) pledges or deposits in connection with workers' compensation, unemployment insurance and other social security legislation arising in the ordinary course of business, and (iv) deposits to secure the performance of any postpetition statutory obligations and other obligations of a like nature incurred in the ordinary course of business, provided that the Debtor(s) shall have ten (10) business days to cure any of the foregoing which were involuntarily imposed or created;

(f)     any Debtor shall create, incur or suffer to exist any other claim that is *pari passu* with or senior to the Adequate Protection Superpriority Claims;

(g)     the failure of the Debtors to make any payment provided for under this Interim Order to the Prepetition Secured Parties within five (5) business days of the date such payment is due (other than a Letter of Credit Reimbursement Obligation, which shall be governed by paragraph 4(h) of this Interim Order and payment of professional fees and expenses, which shall be governed by paragraph 4(j) of this Interim Order);

(h)     this Interim Order or the Final Order (if entered) ceases, for any reason (other than by reason of the express written agreement by the Requisite ABL Lenders and the Required Consenting Term Lenders in their sole discretion), to be in full force and effect in any material respect, or any Debtor so asserts in writing, or the Adequate Protection Liens or Adequate Protection Superpriority Claims created by this Interim Order or the Final Order (if entered) cease in any material respect to be enforceable and of the same effect and priority purported to be created hereby or any Debtor so asserts in writing;

(i)     the Court shall have entered an order amending, supplementing or otherwise modifying this Interim Order (other than non-substantive amendments, supplementations or modifications) without the consent of each affected Prepetition Secured Party;

(j)    any Debtor supports or takes any steps in furtherance of an action commenced by any other person against the Prepetition Secured Parties, with respect to any of the Credit Documents, including, without limitation, any action to avoid or subordinate any obligations under any of the Credit Documents;

(k)    the Court shall have entered an order appointing a chapter 11 trustee, responsible officer or any examiner with enlarged powers relating to the operation of the businesses in these Chapter 11 Cases;

(l)    the Court shall have entered an order granting relief from the Automatic Stay to the holder or holders of any security interest to permit foreclosure (or the granting of a deed in lieu of foreclosure or the like) on any of the Debtors' assets which have an aggregate value in excess of $5,000,000;

(m)    the Court shall have entered an order avoiding, disallowing, subordinating or recharacterizing any claim, lien, or interest held by any Prepetition Secured Party; and

(n)    an order shall have been entered dismissing any of the Chapter 11 Cases or converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code.

7.    <u>Remedies upon the Occurrence of the Termination Date</u>.  Upon the occurrence of the Termination Date, (a) consensual use of Cash Collateral shall terminate immediately; (b) the Secured Party Adequate Protection Obligations, if any, shall become due and payable; (c) upon the occurrence of the Termination Date under paragraph 6(a), cash in an amount of the Minimum Borrowing Base Amount shall be transferred to an account in the name of the ABL Admin Agent to cash collateralize all Letters of Credit that are not concurrently terminated or deemed reissued under an exit facility acceptable to the ABL Secured Parties (such obligation to be satisfied (x) first, from the Segregated Cash, (y) second, from any other Cash Collateral on which the ABL Secured Parties have a first priority lien, and (z) third, from any other available cash other than Cash Collateral on which the Term Loan Secured Parties have a first priority lien; <u>provided</u> that to the extent this cash collateralization obligation cannot be satisfied from the three sources enumerated in the foregoing clauses (x), (y) and (z), the Debtors

shall be deemed to have breached, and shall remain obligated, to comply with such cash collateralization obligation); (d) upon the occurrence of the Termination Date by reason of a Reimbursement Default, (i) the ABL Secured Parties shall be entitled, without further notice, application, hearing or order of the Court (and without any grace period), to exercise any and all rights and remedies, consistent with the ABL Credit Agreement, with respect to such Cash Collateral on which the ABL Secured Parties have a first priority lien, including, without limitation, the exercise of cash dominion rights under any deposit account control agreement and the sweeping of all Cash Collateral on which the ABL Secured Parties have a first priority lien for application to the Obligations (as defined in the ABL Credit Agreement), and (ii) the Debtors shall immediately turn over to the ABL Admin Agent for application to such Obligations all Cash Collateral in which the ABL Secured Parties have a first priority lien and (e) the Agents may, upon five (5) business days' written notice to counsel to the Debtors, counsel to the Supporting Noteholders, and the U.S. Trustee, (i) set off amounts in any account of the Debtors maintained with the Agents or with respect to which the Agents exercise control pursuant to a deposit account control agreement to the extent necessary for payment of the Secured Party Adequate Protection Obligations and/or (ii) exercise any other rights and remedies available under the Credit Documents, this Interim Order or applicable law.  Remedies shall be cumulative and non-exclusive.  The Automatic Stay is hereby deemed modified and vacated to the extent necessary to permit such actions upon the occurrence of the Termination Date and pursuant to the terms set forth herein.  Notwithstanding anything to the contrary herein or the occurrence of the Termination Date, all of the rights, remedies, benefits, and protections provided to the Agents under this Interim Order shall survive the occurrence of the Termination Date.  The Debtors and all parties in interest shall be entitled to seek an emergency hearing before this Court to contest

26

whether the Termination Date has occurred under paragraph 6 of this Interim Order and at which hearing the Debtors shall reserve the right to seek Court approval of a new order approving the use of Cash Collateral, <u>provided</u> that pending such hearing, the Debtors may only use Cash Collateral to make necessary ordinary course operating expenditures or to cure any alleged termination event, and in such a hearing, the Debtors may only (x) seek, in good faith, a determination regarding whether the Termination Date has occurred and/or (y) seek, in good faith, approval of a new order authorizing the Debtors' use of Cash Collateral on a non-consensual basis by showing that the Prepetition Secured Parties are adequately protected.

8.    <u>Carve-Out</u>.

(a)    For purposes of this Interim Order, the "<u>Carve-Out</u>" means an amount equal to the sum of (i) all fees required to be paid to the clerk of the Court and to the Office of the U.S. Trustee under section 1930(a) of title 28 of the United States Code, <u>plus</u> interest at the statutory rate (without regard to the notice set forth in clause (iii) below); (ii) all reasonable fees and expenses of up to $50,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in clause (iii) below); and (iii) all allowed unpaid fees, costs, and expenses (the "<u>Professional Fees</u>") incurred by persons or firms retained by the Debtors and by an official committee of unsecured creditors appointed by the U.S. Trustee (a "<u>Creditors' Committee</u>"), if any, pursuant to sections 327, 328, 363 or 1103 of the Bankruptcy Code, as well as the reasonable, allowed, unpaid expenses of any such Creditors' Committee, in each case whose retention is approved by a final order of the Court (which order has not been reversed, vacated, stayed or appealed) that are incurred (A) at any time before delivery by either of the Term Loan Agent or the ABL Admin Agent of a Carve-Out Trigger Notice (as defined below), whether allowed by the Court prior to or after delivery of a Carve-Out Trigger Notice, in an aggregate amount in accordance with and solely to the extent set forth in the Approved Budget in effect prior to the date of delivery of a Carve-Out Trigger Notice (and subject to any further limits imposed by this Interim Order or the Final Order or otherwise on Professional Fees permitted to be incurred in connection with any permitted investigations of Claims and Defenses against any Prepetition Secured Parties), and (B) after the occurrence of the Termination Date and delivery of written notice (the "<u>Carve-Out Trigger Notice</u>") thereof (which may be by email) to the Debtors, the Debtors' advisors and the Creditors' Committee, if any, in an aggregate amount not to exceed $3,500,000, to the extent such Professional Fees are allowed at any time (the amount set forth in this clause (iii)(B) being the "<u>Post-EoD Carve-Out Amount</u>"); <u>provided</u> that the Post-EoD Carve-Out Amount

shall be reduced on a dollar-for-dollar basis by any payments made on or after the date of delivery of a Carve-Out Trigger Notice of Professional Fees incurred on or after such date; provided, further that nothing herein shall be construed to impair the ability of any party to object to the fees, expenses, reimbursement or compensation described in clauses (i), (ii), or (iii) above, on any grounds.  Of the Carve-Out, 11.74% shall be funded from collateral on which the ABL Agents have a priority lien and 88.26% shall be funded from collateral on which the Term Loan Agent has a priority lien.

(b)      Notwithstanding the foregoing, the Carve-Out shall not include, apply to or be available for any fees or expenses incurred by any party in connection with (a) the investigation, initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation (i) against any of the Prepetition Secured Parties or (ii) challenging the amount, validity, perfection, priority or enforceability of or asserting any defense, counterclaim or offset to, the obligations and the liens and security interests granted under, as applicable, the Credit Documents, including, without limitation, for lender liability or, other than as set forth in paragraphs 10 and 11 of this Interim Order or similar provisions of the Final Order, as applicable, pursuant to section 105, 510, 544, 547, 548, 549, 550, or 552 of the Bankruptcy Code, applicable non-bankruptcy law or otherwise; (b) attempts to modify any of the rights granted to any of the Prepetition Secured Parties hereunder; or (c) paying any amount on account of any claims arising before the commencement of these Chapter 11 Cases unless such payments are approved by an order of the Court; provided, however, that nothing herein shall preclude the Debtors from seeking reimbursement for their reasonable fees and expenses incurred in responding to formal discovery requests brought by third parties in connection with any of the foregoing; provided, further, however, that nothing herein shall preclude the Debtors from (x) seeking, in good faith, a determination regarding whether the Termination Date occurred, (y) seeking, in good faith, an order authorizing the Debtors' non-consensual use of Cash Collateral by showing that the Prepetition Secured Parties are adequately protected, or (z) contesting, in good faith whether the Plan Support Agreement is breached or otherwise terminated.

(c)      Notwithstanding anything to the contrary herein, the Carve-Out shall be senior to all liens and claims granted under this Interim Order, including, without limitation, the Adequate Protection Liens, the Adequate Protection Superpriority Claims and any and all other liens or claims securing any of the Secured Obligations.

9.      Right to Seek Additional Adequate Protection.  This Interim Order is

without prejudice to, and does not constitute a waiver of, expressly or implicitly, the rights of the

Prepetition Secured Parties to request additional forms of adequate protection at any time or the rights of the Debtors or any other party to contest such request.

10.    <u>Effect of Stipulations on Third Parties</u>. The releases, stipulations and admissions contained in this Interim Order, including, without limitation, in paragraphs D and E of this Interim Order, shall be binding upon the Debtors and their affiliates and any of their respective successors (including, without limitation, any chapter 7 or chapter 11 trustee appointed or elected for the Debtor) in all circumstances.   The releases, stipulations and admissions contained in this Interim Order, including, without limitation, in paragraphs D and E of this Interim Order, shall be binding upon all other parties in interest, including, without limitation, any statutory or non-statutory committees appointed or formed in these Chapter 11 Cases (including a Creditors' Committee, if any) and any other person or entity acting on behalf of the Debtors' estate, or otherwise, unless and except to the extent that, with respect to any particular party in interest, (a) such party in interest has filed an adversary proceeding or contested matter (subject to the limitations contained in this Interim Order) by (x) no later than the date that is (i) in the case of a party other than a Creditors' Committee, if appointed, the earlier of (A) 75 days from the Petition Date and (B) the date on which objections to confirmation of the Plan are due; (ii) in the case of a Creditors' Committee, if appointed, the earlier of (A) 60 days after the filing of notice of appointment of the Creditors' Committee and (B) the date on which objections to confirmation of the Plan are due; or (iii) in the case of a Supporting Noteholder, only if the Plan Support Agreement is terminated in accordance with its terms, 20 days following termination of the Plan Support Agreement, or (y) or such later date as has been agreed to, in writing, by the Term Loan Agent and the ABL Admin Agent or as has been ordered by the Court (the "<u>Investigation Termination Date</u>"), objecting to or challenging the

29

amount, validity, perfection, enforceability, priority or extent of the Secured Obligations or otherwise asserting or prosecuting any action for preferences, fraudulent transfers or conveyances, other avoidance power claims or any other claims, counterclaims or causes of action, objections, contests or defenses, including, to the extent released by the Debtors under paragraphs D and E against any of the Prepetition Secured Parties or their affiliates, representatives, attorneys or advisors in connection with matters related to the Credit Documents or the Prepetition Collateral (including the Cash Collateral) (collectively, "<u>Claims and Defenses</u>") (each such adversary proceeding or contested matter filed on or before the applicable Investigation Termination Date, a "<u>Challenge Proceeding</u>"), and (b) there is a final order in favor of the plaintiff sustaining any such challenge or claim in any Challenge Proceeding; <u>provided</u> that any challenge or claim shall set forth with specificity the basis for such challenge or claim, any and all challenges or claims not so specified in a Challenge Proceeding prior to the expiration of the applicable Investigation Termination Date shall be forever deemed waived, released and barred.  If no such Challenge Proceeding is filed, (1) the Secured Obligations shall constitute allowed claims, not subject to counterclaim, setoff, recoupment, reduction, subordination, recharacterization, defense or avoidance, for all purposes in the Chapter 11 Cases and any subsequent chapter 7 case(s), (2) the liens and security interests securing the Secured Obligations shall be deemed to have been, as of the Petition Date, legal, valid, binding and perfected, not subject to recharacterization, subordination or avoidance, and (3) the Secured Obligations, the liens and security interests securing the Secured Obligations, and the Prepetition Secured Parties shall not be subject to any other or further challenge by any Creditors' Committee, any non-statutory committees appointed or formed in the Chapter 11 Cases, or any party in interest seeking to exercise the rights of any Debtor's estate, including, without

limitation any successor thereto (including, without limitation, any chapter 7 or 11 trustee appointed or elected for any Debtor).  If a Challenge Proceeding is filed, the releases, stipulations and admissions contained in paragraphs D and E of this Interim Order shall nonetheless remain binding and preclusive on any person or entity, except to the extent that such findings and admissions were expressly challenged and set forth with specificity in a Challenge Proceeding by such person or entity.  Nothing in this Interim Order vests or confers on any Entity (as defined in the Bankruptcy Code), including any Creditors' Committee or any non-statutory committees appointed or formed in the Chapter 11 Cases, standing or authority to pursue any cause of action belonging to the Debtors or their estates, including, without limitation, any Claims and Defenses with respect to the Credit Documents or the Secured Obligations, and an order of the Court conferring such standing on a party-in-interest shall be a prerequisite for the prosecution of a Challenge by a party-in-interest.

> 11.   <u>Limitation on Use of Collateral</u>.  Notwithstanding anything herein or in any other order by this Court to the contrary, no Cash Collateral, Prepetition Collateral, proceeds of any of the foregoing or the Carve-Out may be used for any of the following: (a) to pay professional fees, disbursements, costs or expenses incurred by any party in connection with any litigation or threatened litigation (whether by contested matter, adversary proceeding or otherwise, including any investigation in connection with litigation or threatened litigation) against any of the Prepetition Secured Parties or for the purpose of objecting to or challenging the validity, perfection, enforceability, extent or priority of any claim, lien or security interest held or asserted by any of the Prepetition Secured Parties or the validity or enforceability of this Interim Order or asserting any defense, claim, cause of action, counterclaim, or offset with respect to the Secured Obligations (including, without limitation, for lender liability or pursuant

to section 105, 510, 544, 547, 548, 549, 550 or 552 of the Bankruptcy Code, applicable non-bankruptcy law or otherwise) or the Prepetition Liens or against any of the Prepetition Secured Parties or their respective representatives; (b) to object to, contest, interfere with, prevent, hinder or otherwise delay any of the Prepetition Secured Parties' assertion, enforcement or realization on the Prepetition Collateral (including the Cash Collateral), including the exercise of rights or remedies with respect thereto after the Termination Date, in accordance with the Credit Documents or this Interim Order other than to seek a determination that the Termination Date has not occurred; (c) to seek to modify any of the rights granted to the Prepetition Secured Parties under this Interim Order or the Credit Documents; (d) to pay any amount on account of any claims arising prior to the Petition Date unless such payments are approved by an order of this Court that is in form and substance reasonably satisfactory to the Required Consenting Noteholders, the Term Loan Agent and the ABL Admin Agent; (e) to object to, contest, delay, prevent or interfere with in any way the exercise of rights or remedies by any Prepetition Secured Parties with respect to any Prepetition Collateral (including the Cash Collateral) after the occurrence of the Termination Date (other than to the extent expressly permitted by the final provisos contained in paragraph 7 and this paragraph 11 of this Interim Order); or (f) to pursue an Alternative Transaction other than as expressly permitted under the Plan Support Agreement; provided that, notwithstanding the foregoing or anything else to the contrary herein, advisors to the Creditors' Committee, if any, may investigate the claims and liens of the Prepetition Secured Parties prior to the Investigation Termination Date at an aggregate expense not to exceed $50,000; provided, further that nothing herein shall preclude the Debtors from seeking reimbursement for their reasonable fees and expenses incurred in responding to formal discovery requests brought by third parties in connection with any of the foregoing; provided, further that

nothing herein shall preclude the Debtors from (x) seeking, in good faith, a determination regarding whether the Termination Date has occurred (or curing or attempting to cure any alleged termination events hereunder), (y) seeking, in good faith, an order authorizing the Debtors' non-consensual use of Cash Collateral by showing that the Prepetition Secured Parties are adequately protected, or (z) contesting, in good faith, whether the Plan Support Agreement is breached or otherwise terminated.

        12.    <u>Letters of Credit under the ABL Documents</u>.  Subject to the provisions of this Interim Order, including, without limitation, the adequate protection granted to or for the benefit of the ABL Secured Parties and the remedies provisions in paragraph 7, following entry of this Interim Order, the Debtors shall be authorized, but not directed, to request that the Issuing Banks extend, renew or otherwise amend letters of credit issued under the ABL Credit Agreement, in accordance with the practices and procedures in the ABL Documents and subject to the terms and conditions of the ABL Credit Agreement, and to take all actions reasonably appropriate with respect thereto (including seeking that the applicable beneficiaries of such letters of credit approve the same), and the Issuing Banks in their discretion are each authorized to extend, renew or otherwise amend such letters of credit in accordance with the terms of the ABL Credit Agreement, <u>provided</u> that no Issuing Bank or any other ABL Secured Party shall have any obligation to extend, renew or otherwise amend any letters of credit and the obligations of the parties with respect to existing letters of credit shall not be modified by this Interim Order except as otherwise described in paragraph 4(h) of this Interim Order.  Notwithstanding anything herein to the contrary, the Debtors' right to request any such extension, renewal or amendment shall terminate on the Termination Date.

13.     <u>No Waiver of Secured Parties' Rights; Reservation of Rights</u>. Notwithstanding any provision in this Interim Order to the contrary, this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, any of the Prepetition Secured Parties' rights with respect to any person or entity other than the Debtors or with respect to any other collateral owned or held by any person or entity other than the Debtors.  The rights of the Prepetition Secured Parties are expressly reserved and entry of this Interim Order shall be without prejudice to, and does not constitute a waiver, expressly or implicitly, of the following, <u>provided</u>, for the avoidance of doubt, that the terms of the Plan Support Agreement shall continue to bind the parties thereto:

(a)     the Prepetition Secured Parties' rights under the Credit Documents;

(b)     the Prepetition Secured Parties' rights to seek any other or supplemental relief in respect of the Debtors;

(c)     the Prepetition Secured Parties' rights to seek modification of the grant of adequate protection provided under this Interim Order so as to provide different or additional adequate protection at any time;

(d)     any of the Prepetition Secured Parties' rights under the Bankruptcy Code or under non-bankruptcy law, including without limitation, the right to: (i) request modification of the Automatic Stay; (ii) request dismissal of the Chapter 11 Cases, conversion of any of the Chapter 11 Cases to cases under chapter 7, or appointment of a chapter 11 trustee or examiner with extended powers; or (iii) propose, subject to section 1121 of the Bankruptcy Code, a chapter 11 plan or plans;

(e)     any of the Prepetition Secured Parties' unqualified right to credit bid up to the full amount of any remaining Secured Obligation in the sale of any Prepetition Collateral, or pursuant to (i) section 363 of the Bankruptcy Code, (ii) a plan of reorganization or a plan of liquidation under section 1129 of the Bankruptcy Code, or (iii) a sale or disposition by a chapter 7 trustee for any Debtor under section 725 of the Bankruptcy Code; or

(f)     any other rights, claims, or privileges (whether legal, equitable or otherwise) of the Prepetition Secured Parties.

34

14. _Modification of Automatic Stay_.  The Debtors are authorized and directed to perform all acts and to make, execute and deliver any and all instruments as may be reasonably necessary to implement the terms and conditions of this Interim Order and the transactions contemplated hereby.  The Automatic Stay is hereby modified to permit the Debtors and each of the Prepetition Secured Parties to accomplish each of the transactions contemplated by this Interim Order.

15. _Further Assurances_.  The Debtors shall execute and deliver to the Agents and the Prepetition Lenders all such agreements, financing statements, instruments, and other documents as they may reasonably request to evidence, confirm, validate, or evidence the perfection of the Adequate Protection Liens granted pursuant hereto.  The Term Loan Agent and the ABL Admin Agent are hereby authorized to file or record such documents in their discretion without seeking modification of the Automatic Stay, in which event all such documents shall be deemed to have been filed or recorded at the time and on the date of entry of this Interim Order.

16. _506(c) Waiver_.  Subject to the entry of the Final Order and the Carve-Out, all rights to surcharge any Prepetition Secured Party, any of the Secured Obligations, any of their respective claims, or the Prepetition Collateral (including Cash Collateral) pursuant to sections 506(c) or 105(a) of the Bankruptcy Code, or any other applicable principal in equity or law shall be and are hereby finally and irrevocably waived, and such waiver shall be binding upon the Debtors and all parties in interest in the Cases, and no costs or expenses of administration which have been or may be incurred in any of the Chapter 11 Cases at any time shall be charged against any of the foregoing without the prior written consent of the Agents, the Required Consenting Term Lenders and the Requisite ABL Lenders and no such consent shall be implied from any other action, inaction, or acquiescence by any of the Prepetition Secured Parties or their

respective representatives or from the Prepetition Secured Parties' consent to the budget or any provision of this Interim Order or the Final Order.

17.     <u>Payments Free and Clear</u>.  Any and all payments or proceeds remitted to the Prepetition Secured Parties pursuant to the provisions of the Orders or any subsequent order of the Court shall be irrevocable (subject to paragraphs 10 and 13 of this Interim Order), received free and clear of any claim, charge, assessment or other liability, including without limitation, subject to entry of the Final Order, any such claim or charge arising out of or based on, directly or indirectly, sections 506(c) (whether asserted or assessed by, through or on behalf of the Debtors) or 552(b) of the Bankruptcy Code, and solely in the case of payments made or proceeds remitted after the delivery of a Carve-Out Trigger Notice, subject to the Carve-Out in all respects.

18.     <u>Bankruptcy Code Section 552(b)</u>.  The Prepetition Secured Parties shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and, subject to the entry of a Final Order and the Carve-Out, the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Prepetition Secured Parties with respect to proceeds, products, offspring or profits of any of the Prepetition Collateral, subject to paragraph 10 of this Interim Order.

19.     <u>No Marshaling/Application of Proceeds</u>.  The Agents shall be entitled to apply the payments or proceeds of the Prepetition Collateral (including the Cash Collateral) in accordance with the provisions of the Credit Documents, including the Intercreditor Agreement and any related intercreditor agreements, and, subject to the Carve-Out, in no event shall any of the Prepetition Secured Parties be subject to the equitable doctrine of "marshaling" or any other

similar doctrine with respect to any of the Prepetition Collateral (including the Cash Collateral) for the benefit of any non-Secured Party.

20.     BoA Purchase Card Program.  Notwithstanding anything to the contrary herein, the Debtors shall maintain, segregate, and not spend the $1.3 million in cash (the "BoA Pledged Cash") pledged to Bank of America, N.A. or its affiliate (collectively, "BoA Secured Bank Product Provider") to secure the Debtors' purchase card program established with the BoA Secured Bank Product Provider (the "BoA Purchase Card Program"), as such program is further described in the Cash Management Motion (defined below), and to provide assurance that the BoA Secured Bank Product Provider will be paid in full.  The BoA Secured Bank Product Provider shall be permitted to offset any balance due under the BoA Purchase Card Program, subject to the terms of the BoA Purchase Card Program, against the BoA Pledged Cash without relief from the Automatic Stay or further order of the Bankruptcy Court and to continue to utilize and maintain the BoA Purchase Card Program in the ordinary course of business and as described in the Cash Management Motion.   The BoA Secured Bank Product Provider shall have a first priority lien on the BoA Pledged Cash as security for the Debtors' obligations under the BoA Purchase Card Program.

21.     Restrictions on Granting Postpetition Claims and Liens.  Except as expressly provided in this Interim Order, no claim or lien that is *pari passu* with or senior to the claims and liens of any of the Prepetition Secured Parties shall be offered by any Debtor, or granted, to any other person, except in connection with any financing used to pay in full the claims of the Prepetition Secured Parties.

22.     Automatic Effectiveness of Liens.  The Adequate Protection Liens shall not be subject to challenge and shall attach and become valid, perfected, enforceable, non-

avoidable, and effective by operation of law as of the Petition Date, having the priority set forth in paragraph D of this Interim Order, without any further action by the Debtors or the Prepetition Secured Parties and without the necessity of execution by the Debtors, or the filing or recordation, of any financing statements, security agreements, vehicle lien applications, mortgages, filings with the U.S. Patent and Trademark Office, the U.S. Copyright Office, or the Library of Congress, or other documents or the taking of any other actions.  If any of the Agents hereafter requests that the Debtors execute and deliver to them financing statements, security agreements, collateral assignments, mortgages, or other instruments and documents considered by such agent to be reasonably necessary or desirable to further evidence the perfection of the Adequate Protection Liens, as applicable, the Debtors are hereby directed to execute and deliver such financing statements, security agreements, mortgages, collateral assignments, instruments, and documents, and the Term Loan Agent and the ABL Collateral Agents are hereby authorized to file or record such documents in their discretion without seeking modification of the Automatic Stay, in which event all such documents shall be deemed to have been filed or recorded at the time and on the date of entry of this Interim Order.

23.    <u>Binding Effect</u>.    Subject to paragraph 10 of this Interim Order, the provisions of this Interim Order shall be binding upon and inure to the benefit of the Prepetition Secured Parties to the extent and as set forth herein, the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereafter appointed or elected for the estate of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors).  To the extent permitted by applicable law, this Interim Order shall bind any trustee hereafter appointed or elected for the estate of any of the

Debtors, whether in these Chapter 11 Cases or in the event of the conversion of any of the Chapter 11 Cases to a liquidation under chapter 7 of the Bankruptcy Code.  Such binding effect is an integral part of this Interim Order.

          24.    <u>Notices and Documents and Communications pursuant to this Interim Order; Invoices.</u>  All notices, documents and other communications provided for herein (including the delivery of the Proposed Budgets, any objections or approvals thereof or Budget Variance Reports under paragraph 3 of this Interim Order) shall be in writing (including by email) and shall be delivered by hand or overnight courier service, mailed by certified or registered mail, or email as follows,

    a)  if to the Debtors,

> Katherine Hargis
> Vice President, Chief Legal Officer and Secretary
> Key Energy Services, Inc.
> 1301 McKinney Street, Suite 1800
> Houston, Texas 77010
> khargis@keyenergy.com
>
> *with a courtesy copy (that does not constitute notice) to:*
>
> Joshua A. Feltman
> Wachtell, Lipton, Rosen & Katz
> 51 West 52nd Street
> New York, New York 10019
> jafeltman@WLRK.com
>
> *and to:*
>
> Jeffrey E. Bjork
> Sidley Austin LLP
> 555 West Fifth Street, Suite 4000
> Los Angeles, California 90013
> jbjork@sidley.com

    b)  if to the Term Loan Agent,

> Joanna Anderson

225 West Washington Street, Suite 2100
Chicago, IL 60606
e-mail: joanna.anderson@cortlandglobal.com

*with a copy to:*

Eli J. Vonnegut
Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, NY 10017
e-mail: eli.vonnegut@davispolk.com

c) if to the ABL Admin Agent,

Brandon Watkins
Bank of America Merrill Lynch
Bank of America, N.A.
901 Main Street
Dallas, Texas 75202
e-mail: brandon.watkins@baml.com

*with a copy to:*

Richard Levy
Latham & Watkins LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
e-mail: richard.levy@lw.com

d) if to the advisors to the Term Loan Agent (for the purposes
of paragraph 3 herein),

Eli J. Vonnegut
Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, NY 10017
e-mail: eli.vonnegut@davispolk.com

e) if to the advisors to the Supporting Noteholders,

Michael H. Torkin
Sullivan & Cromwell LLP
125 Broad Street
New York, New York 10006
torkinm@sullcrom.com

40

*with a copy to:*

Sean A. O'Neal
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, NY 10006
soneal@cgsh.com

All invoices for the adequate protection payments under paragraph 4(j) of this Interim

Order shall be delivered by hand or overnight courier service, mailed by certified or registered

mail or sent by email to the Debtors as follows:

Katherine Hargis
Vice President, Chief Legal Officer and Secretary
Key Energy Services, Inc.
1301 McKinney Street, Suite 1800
Houston, Texas 77010
khargis@keyenergy.com

*with a courtesy copy (that does not constitute notice) to:*

Joshua A. Feltman
Wachtell, Lipton, Rosen & Katz
51 West 52nd Street
New York, New York 10019
jafeltman@WLRK.com

*and to:*

Jeffrey E. Bjork
Sidley Austin LLP
555 West Fifth Street, Suite 4000
Los Angeles, California 90013
jbjork@sidley.com

and each such invoice shall be paid by the Debtors pursuant to the terms of paragraph 4(j) of this

Interim Order.

25.     <u>ACE Reservation of Rights</u>.  For the avoidance of doubt, (i) to the extent

that ACE American Insurance Company and/or any of its affiliates (collectively with their

successors, "<u>ACE</u>") had valid, perfected, and unavoidable liens and/or security interests on

41

property (including Cash Collateral) of the Debtors in existence immediately prior to the Petition Date, the Debtors may not grant any other postpetition liens and/or security interests in such property that are senior to the liens or security interests held by ACE to any other party, (ii) no other party may have postpetition liens and/or security interests on any letter(s) of credit for which ACE is the beneficiary or on any proceeds thereof, except to the extent of, and solely with respect to, any interest of the Debtors in the letter(s) of credit or the proceeds thereof and (iii) this Interim Order does not grant or deprive the Debtors any right to use any property (or the proceeds thereof) held by ACE as collateral to secure obligations under insurance policies and related agreements.

26. <u>Survival</u>.  The provisions of this Interim Order, except as otherwise superseded by the provisions of the Final Order, and any actions taken pursuant hereto shall survive the entry of any order:  (i) confirming any plan of reorganization in any of the Chapter 11 Cases; (ii) converting any of the Chapter 11 Cases to a chapter 7 case, or (iii) dismissing any of the Chapter 11 Cases, and, with respect to the entry of any order as set forth in clause (ii) or (iii) of this paragraph 26, the terms and provisions of this Interim Order, except as otherwise superseded by the provisions of the Final Order, as well as the Adequate Protection Liens and the Adequate Protection Superpriority Claims shall continue in full force and effect notwithstanding the entry of any such order.

27. <u>Effect of Dismissal of Chapter 11 Cases</u>.  If any of the Chapter 11 Cases is dismissed, converted, or substantively consolidated, such dismissal, conversion, or substantive consolidation of these Chapter 11 Cases shall not affect the rights of the Prepetition Secured Parties under this Interim Order, and all of their rights and remedies thereunder shall remain in full force and effect as if the Chapter 11 Cases had not been dismissed, converted, or

42

substantively consolidated.  If an order dismissing any of the Chapter 11 Cases is at any time entered, such order shall provide or be deemed to provide (in accordance with Sections 105 and 349 of the Bankruptcy Code) that: (i) subject to paragraph 10 of this Interim Order, the Prepetition Liens, Adequate Protection Liens, and Adequate Protection Superpriority Claims granted to and conferred upon the Prepetition Secured Parties shall continue in full force and effect and shall maintain their priorities as provided in this Interim Order (and that such Adequate Protection Superpriority Claims shall, notwithstanding such dismissal, remain binding on all interested parties) and (ii) to the greatest extent permitted by applicable law, this Court shall retain jurisdiction, notwithstanding such dismissal, for the purpose of enforcing the Prepetition Liens, Adequate Protection Liens, and Adequate Protection Superpriority Claims referred to in this Interim Order.

28.   <u>Intercreditor Agreement</u>.  Nothing in this Interim Order shall amend or otherwise modify the terms and enforceability of the Intercreditor Agreement.  The rights of the Prepetition Secured Parties in relation to each other shall at all times remain subject to the Intercreditor Agreement.

29.   <u>Cash Management</u>.  The Debtors shall maintain their cash management arrangements in a manner substantially consistent with that described in the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Continue to Use their Cash Management System, including Existing Bank Accounts and Purchase Card Programs, (B) Honor Certain Prepetition Obligations Related thereto, (C) Continue Interdebtor Transactions, and (D) Maintain Existing Check Form and (II) Waiving the Requirements of Section 345(b) on an Interim Basis, and (III) Granting Related Relief* (the "<u>Cash Management Motion</u>").

30.    <u>Headings</u>.    The headings in this Interim Order are for purposes of reference only and shall not limit or otherwise affect the meaning of the Interim Order.

31.    <u>Order Effective</u>.  This Interim Order shall be effective as of the date of the signature by the Court.

32.    <u>No Requirement to Accept Title to Collateral</u>.  The Prepetition Secured Parties shall not be obligated to accept title to any portion of the Prepetition Collateral in payment of the indebtedness owed to them by the Debtors, in lieu of payment in cash or cash equivalents, nor shall the Prepetition Secured Parties be obligated to accept payment in cash or cash equivalents that is encumbered by any interest of any person or entity.

33.    <u>Proofs of Claim</u>.  None of the Prepetition Secured Parties shall be required to file proofs of claim in any of the Chapter 11 Cases for any Secured Obligation or any Adequate Protection Superpriority Claim, and the Debtors' stipulations in paragraph D herein shall be deemed to constitute a timely filed proof of claim.  Notwithstanding any order entered by the Court in relation to the establishment of a bar date, the Agents, on behalf of themselves and Prepetition Secured Parties, as applicable, are hereby authorized and entitled, in each of their sole and absolute discretion, but not required, to file (and amend and/or supplement, as each sees fit) a proof of claim and/or aggregate proofs of claim in the Chapter 11 Cases for any such claims; for avoidance of doubt, any such proof of claim may (but is not required to be) filed as one consolidated proof of claim against all of the applicable Debtors, rather than as separate proofs of claim against each such Debtor.  Any proof of claim filed by an Agent shall be deemed to be in addition to and not in lieu of any other proof of claim that may be filed by any of the respective Prepetition Secured Parties.  Any order entered by the Court in relation to the establishment of a bar date for any claim (including, without limitation, administrative claims) in

44

any of the Chapter 11 Cases shall not apply to the Prepetition Secured Parties with respect to the Secured Obligations.

34. <u>Controlling Effect of Interim Order</u>. To the extent any provision of this Interim Order conflicts or is inconsistent with any provision of the Motion or any prepetition agreement, the provisions of this Interim Order shall control to the extent of such conflict.

35. <u>Final Hearing</u>. The Final Hearing with respect to the relief requested in the Motion shall be heard on or before _____, 2016 at _____ (prevailing Eastern Time). Any objections shall be filed with the Bankruptcy Court on or before 4:00 p.m. (prevailing Eastern Time) on _____, 2016 and served on the following parties: (i) the Debtors, 1301 McKinney Street, Suite 1800, Houston, Texas 77010, Attn: Katherine I. Hargis; (ii) proposed counsel for the Debtors, Sidley Austin LLP, 555 W. Fifth Street, Suite 4000, Los Angeles, CA 90013, Attn.: Jeffrey E. Bjork and Christina M. Craige; (iii) proposed counsel for the Debtors, Young Conaway Stargatt & Taylor LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801, Attn: Robert S. Brady, Edwin J. Harron and Ryan M. Bartley; (iv) counsel to any statutory committee appointed in the Chapter 11 Cases; (v) Davis Polk & Wardwell LLP, as counsel to the Term Loan Agent, Attn.: Damian S. Schaible and Eli J. Vonnegut; (vi) Latham & Watkins LLP, 330 North Wabash Avenue, Suite 2800, Chicago, IL 60611, Attn: Richard Levy, as counsel to the ABL Admin Agent; (vii) Sullivan & Cromwell LLP, as counsel to the Supporting Noteholders, Attn.: Michael H. Torkin and David J. Jakus; (vii) Cleary Gottlieb Steen & Hamilton LLP, as counsel to the Supporting Noteholders and

Supporting Term Loan Lenders, Attn.: Sean A. O'Neal and Humayun Khalid; and (viii) the

office of the United States Trustee for the District of Delaware.

Dated: October ___, 2016
        Wilmington, Delaware

                                        _____

                                        United States Bankruptcy Judge

<u>**Exhibit 1**</u>

**Initial Approved Budget**

## <u>Exhibit 1 to the Interim Order</u>

**Interim Budget**

**Key Energy Services, Inc.**
Cash Collateral Budget

| ($ in 000s) | 1 WE 10-30 | 2 WE 11-6 | 3 WE 11-13 | 4 WE 11-20 | 5 WE 11-27 | 6 WE 12-4 | 7 WE 12-11 | 8 WE 12-18 | 9 WE 12-25 | 10 WE 1-1 | 11 WE 1-8 | 12 WE 1-15 | 13 WE 1-22 | 13-Week Cash Flow |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Beginning Book Cash** | $29,813 | $34,460 | $37,638 | $33,208 | $31,095 | $23,370 | $24,671 | $21,114 | $80,000 | $75,239 | $77,880 | $73,250 | $76,271 | $ 29,813 |
| | | | | | | | | | | | | | | |
| Collections and Other Receipts | 8,256 | 7,790 | 8,108 | 8,093 | 8,080 | 8,069 | 7,763 | 7,746 | 7,907 | 9,974 | 7,652 | 7,121 | 7,219 | 103,778 |
| New Money Investment and Incremental Liquidity[1] | - | - | - | - | - | - | - | 67,305 | - | - | - | - | - | 67,305 |
| Operating Cash Disbursements | (3,359) | (2,340) | (11,788) | (9,207) | (13,035) | (5,193) | (11,320) | (4,095) | (12,669) | (6,708) | (10,796) | (4,100) | (11,957) | (106,567) |
| Operating Cash Flow | 4,897 | 5,450 | (3,680) | (1,114) | (4,955) | 2,875 | (3,557) | 70,955 | (4,761) | 3,266 | (3,143) | 3,021 | (4,738) | 64,516 |
| Debt Service | - | (1,643) | - | - | (2,769) | - | - | (1,876) | - | (625) | (1,486) | - | - | (8,400) |
| Restructuring Disbursements | (250) | (628) | (750) | (1,000) | - | (1,575) | - | (10,193) | - | - | - | - | - | (14,396) |
| Net Operating Cash Flow (After Restructuring) | $ 4,647 | $ 3,179 | $ (4,430) | $ (2,114) | $ (7,724) | $ 1,300 | $ (3,557) | $58,886 | $ (4,761) | $ 2,641 | $ (4,630) | $ 3,021 | $ (4,738) | $ 41,720 |
| **Ending Book Cash[2]** | $34,460 | $37,638 | $33,208 | $31,095 | $23,370 | $24,671 | $21,114 | $80,000 | $75,239 | $77,880 | $73,250 | $76,271 | $71,533 | $ 71,533 |

1. New Money Investment is net of the term loan pay down at emergence; incremental liquidity of $21.1 million will be required to maintain $80 million of cash at emergence
2. Consists of domestic, unrestricted cash; does not reflect international cash balances or ABL availability