**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| KEY ENERGY SERVICES, INC., et al.[1] | Case No. 16-12306 (___) |
| Debtors. | (Joint Administration Requested) |

**DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL**
**ORDERS (I) AUTHORIZING THE DEBTORS TO CONTINUE THEIR SURETY**
**BOND PROGRAM AND PAY ALL OBLIGATIONS IN RESPECT THEREOF,**
**(II) AUTHORIZING APPLICABLE BANKS AND OTHER FINANCIAL**
**INSTITUTIONS TO HONOR AND PROCESS RELATED CHECKS**
**AND TRANSFERS, AND (III) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors")

submit this motion (this "Motion"), pursuant to sections 105(a), 363, and 364 of title 11 of the

United States Code, 11 U.S.C. §§ 101-1532  (the "Bankruptcy Code"), and Rules 6003 and 6004

of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for entry of an interim

order (the "Interim Order") and final order (the "Final Order") (i) authorizing the Debtors to

continue their surety bond program and satisfy payment of all prepetition obligations related

thereto, (ii) authorizing applicable banks and other financial institutions to honor and process

related checks and transfers, and (iii) granting related relief, including scheduling a hearing to

consider approval of the Motion on a final basis (the "Final Hearing").  The Debtors seek relief

in this Motion to make payments and take actions only as may be consistent with any obligations

of the Debtors under the Plan Support Agreement[2] (including without limitation the conduct of

---

[1]  The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows:  Misr Key Energy Investments, LLC (4528), Key Energy Services, Inc. (8081), Key Energy Services, LLC (5567), and Misr Key Energy Services, LLC (7527).  The mailing address for each Debtor is 1301 McKinney Street, Suite 1800, Houston, Texas 77010.

[2] Capitalized terms not otherwise defined herein shall have the meaning set forth in the First Day Declaration.

business covenants contained in Section 5 thereof) and the Backstop Agreement (including

without limitation Section 6.2 thereof).  The facts and circumstances supporting this Motion are

set forth in the concurrently filed *Declaration of J. Marshall Dodson in Support of the Debtors'*

*Chapter 11 Petitions and First Day Pleadings* (the "First Day Declaration").  In further support

of this Motion, the Debtors respectfully state as follows:

## STATUS OF THE CASE AND JURISDICTION

1.      On the date hereof (the "Petition Date"), each of the Debtors filed a voluntary

petition for relief under chapter 11 of the Bankruptcy Code.  Concurrently with the filing of this

Motion, the Debtors have requested joint administration and procedural consolidation of these

chapter 11 cases (the "Chapter 11 Cases") pursuant to Bankruptcy Rule 1015(b).  The Debtors

have also filed their *Joint Prepackaged Plan of Reorganization of Key Energy Services, Inc. and*

*its Debtor Affiliates pursuant to Chapter 11 of the Bankruptcy Code* (the "Plan") and

corresponding Disclosure Statement, and have requested that the Court (defined below) set a

hearing to approve the Disclosure Statement and confirm the Plan.  The Plan provides, among

other things, for payment in full of General Unsecured Claims.

2.      The Debtors continue to operate their businesses and manage their properties as

debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No party

has requested the appointment of a trustee or examiner in the Chapter 11 Cases, and no statutory

committee has been appointed.

3.      The United States Bankruptcy Court for the District of Delaware (the "Court")

has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended*

*Standing Order of Reference from the United States District Court for the District of Delaware*,

dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. §

2

157(b)(2). The Debtors confirm their consent pursuant to rule 9013-1(f) of the Local Rules of

Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of

Delaware (the "Local Rules") to the entry of a final order or judgment by the Court in connection

with this Motion if it is determined that the Court, absent consent of the parties, cannot enter

final orders or judgments in connection herewith consistent with Article III of the United States

Constitution.

4.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

5.      The legal authority for the relief requested herein is sections 105(a), 363, and 364

of the Bankruptcy Code, Bankruptcy Rules 6003 and 6004, and Local Rule 9013-1(m).

## BACKGROUND OF THE DEBTORS

6.      The events leading up to the Petition Date and additional facts and circumstances

supporting the relief requested herein are set forth in the First Day Declaration, which is

incorporated by reference herein.

## RELIEF REQUESTED

7.      By this Motion, the Debtors request entry of the Interim and Final Orders,

substantially in the forms attached hereto as Exhibit A and Exhibit B, respectively:

(a)      authorizing, but not directing, the Debtors to—

(i)      continue their Surety Bond Program (as defined below) on an
uninterrupted basis in accordance with the practices and
procedures in effect prior to the Petition Date;

(ii)     renew their Surety Bond Program or obtain replacement surety
bonds as needed in the ordinary course of business without further
Court approval; and

(iii)    pay, in their discretion, all undisputed premiums, fees, and other
obligations relating to the Surety Bond Program that were or are
due and payable, and relate to the period before or after the
Petition Date (collectively, the "Surety Bond Obligations");

(b)     authorizing applicable banks and other financial institutions to receive, process, honor, and pay any and all checks drawn on the Debtors' accounts and other transfers to the extent that those checks or transfers relate to any of the foregoing; and

(c)     granting related relief, including scheduling the Final Hearing.

8.      Because the Debtors typically pay premiums for their Surety Bonds in full, up front, the Debtors do not expect any amounts are owed on account of prepetition Surety Bonds. However, in an abundance of caution, the Debtors request authority to pay any such amounts owed on account of the Surety Bond Obligations in the ordinary course of business in order to maintain the Surety Bond Program without interruption.

## DESCRIPTION OF THE DEBTORS' SURETY BOND PROGRAM

9.      In the ordinary course of business, the Debtors are required to provide surety bonds (each, a "Surety Bond") to certain third parties, often governmental units or other public agencies, to secure the Debtors' payment or performance of certain obligations (the "Surety Bond Program").  These obligations include, among others, environmental, road damage, lease, licensing and permitting, and contractor obligations.

10.     Often, statutes or ordinances require the Debtors to post Surety Bonds to secure these obligations.  For example, in order to operate a commercial oil and gas reclamation facility in the state of Texas, the operator must post a bond running to the Railroad Commission of Texas to ensure compliance with environmental regulations.  See Tex. Natural Res. Code § 91.109 and Tex. Admin. Code Vol. 16, § 3.78.  In California, a limited liability company must post a surety bond with the State of California as a condition precedent for the issuance, reissuance, reinstatement, reactivation, renewal, or continued use of a valid limited liability company license in order to safeguard employees or workers damaged by the company's failure to pay wages, interest on wages, or fringe benefits.  See Cal. Bus. and Professions Code § 7071.6.5.  As such,

4

failing to provide, maintain, or timely replace the Surety Bonds will prevent the Debtors from undertaking essential functions related to their services.  A schedule of the Surety Bonds currently maintained by the Debtors is attached hereto as <u>Exhibit C</u>.[3]

11.     The outstanding Surety Bonds were issued by Hartford Fire Insurance Company, International Fidelity Insurance Company, and Lexon Insurance Company (collectively, the "<u>Sureties</u>").  The premiums for the Surety Bonds generally are determined on an annual basis and are paid by the Debtors when the bonds are issued and annually upon renewal.

12.     As of the Petition Date, the Debtors have approximately 43 outstanding Surety Bonds, which renew at various times throughout the year.  Key Energy Services, LLC ("<u>KES</u>") is the principal on each of these bonds, and they guarantee only the performance of KES.  The aggregate sum of the Surety Bonds is approximately $7.6 million.  For Surety Bonds currently outstanding, the Debtors have paid premiums totaling approximately $170,000.  As of the Petition Date, the Debtors believe they are current on all Surety Bond Obligations owed to Sureties.

13.     KES has provided Lexon Insurance Company[4] with a letter of credit ("<u>Letter of Credit</u>") issued by Bank of America, N.A. as collateral for certain of the Surety Bonds.  The amount of available credit under the Letter of Credit is $244,000 (as of July 26, 2016).  Absent an extension, the Letter of Credit expires on February 10, 2017.[5]

---

[3] To the extent that the Debtors have inadvertently omitted any Surety Bond from <u>Exhibit C</u>, the Debtors request that any relief granted in the Interim and Final Orders apply to all Surety Bonds, regardless of whether any such Surety Bond is specifically identified on <u>Exhibit C</u>.

[4] In addition to Lexon Insurance Company, additional beneficiaries of the Letter of Credit are Lexon-affiliates Bond Safeguard Insurance Company, Boston Indemnity Group, and Ironshore Specialty Insurance.

[5] KES intends to renew the Letter of Credit post-emergence from these Chapter 11 Cases.

14.     While the Surety Bonds shift the risk of the Debtors' non-payment or nonperformance from the obligee to the Sureties, a surety bond is not an insurance policy. Rather, if a Surety incurs a loss on a Surety Bond as a result of the Debtors' underlying liability, the Surety is entitled to recover the full amount of the loss from the Debtors.  To maintain the Surety Bond Program, the Debtors have executed indemnity agreements in favor of two of the Sureties (collectively, the "Indemnity Agreements"), pursuant to which each of the Debtors agrees to indemnify the Surety in the event the Surety is required to pay or perform under any of the Surety Bonds it has issued.  In addition, among other terms, the Indemnity Agreements generally require that the Debtors, at the request of the Surety, pay to the Surety the amount of any loss reserves or post cash or other acceptable collateral to protect the Surety against actual or anticipated losses.

15.     To continue their business operations during this reorganization process, the Debtors must be able to provide financial assurances to state governments, regulatory agencies, and other third parties.  This, in turn, requires the Debtors to maintain the existing Surety Bond Program, including paying bond premiums as they come due, providing collateral in the form of deposits, letters of credit, or other means, renewing or potentially acquiring additional bonding capacity as needed in the ordinary course of business, and executing other agreements, as needed, in connection with the Surety Bond Program.  Accordingly, the Debtors request authority to maintain their existing Surety Bond Program, pay any outstanding prepetition obligations related thereto, and enter into new surety bonds in the ordinary course of business.

## BASIS FOR RELIEF REQUESTED

### A.   The Surety Bond Program Is Maintained in the Ordinary Course of the Debtors' Businesses.

16.     Section 363(c)(1) of the Bankruptcy Code provides that a chapter 11 debtor in possession "may enter into transactions . . . [or] may use property of the estate in the ordinary course of business without notice or a hearing."  11 U.S.C. § 363(c)(1).  The Bankruptcy Code does not define "ordinary course of business."  In re Roth Am., Inc., 975 F.2d 949, 952 (3d Cir. 1992).  In determining whether a transaction is in the ordinary course of business, the Third Circuit has adopted the two-part "horizontal" dimension test (i.e., whether, from an industry-wide perspective, the transaction is of the sort commonly undertaken by companies in that industry) and "vertical" dimension test (i.e., whether the transaction subjects such a creditor to different economic risks from those he accepted when he decided to extend credit).  Id.; see also In re Nellson Nutraceutical, Inc., 369 B.R. 787, 797 (Bankr. D. Del. 2007).  "In other words, the vertical analysis looks at the 'debtor's pre-petition business practices and conduct.'"  In re Blitz U.S.A., Inc., 475 B.R. 209, 214 (Bankr. D. Del. 2012) (quoting Nellson, 369 B.R. at 797).

17.     The Debtors believe that they are authorized, without further order of the Court, to honor their obligations and perform in the ordinary course of their prepetition business on a postpetition basis pursuant to section 363(c)(1) of the Bankruptcy Code.  Such obligations include, among other things, maintaining existing surety bonds, providing collateral, renewing bonds as they expire, and paying applicable postpetition premiums to the extent they arise.  Further, maintaining surety bonds is common in the oilfield services industry because in many instances surety bonds are statutorily required for activities related to oil or gas production, reclamation, and transportation.  Accordingly, the Debtors submit that they may maintain and continue the Surety Bond Program on a postpetition basis.

**B.**   **The Debtors Should Be Authorized to Continue the Surety Bond Program in Accordance with Prepetition Practice Pursuant to Sections 105(a), 363(b), and 364(c) of the Bankruptcy Code.**

18.    While the Debtors believe that the maintenance of the Surety Bond Program is in the ordinary course, to the extent that the relief requested in this Motion implicates sections 363(b) and/or 364(c) of the Bankruptcy Code, the Debtors submit that they believe it is appropriate to continue the Surety Bond Program on a postpetition basis.

19.    More specifically, the use of estate property should be authorized under section 363(b) if a sound business purpose exists for the transaction.  See, e.g., In re Ionosphere Clubs, Inc., 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989).  "In evaluating whether a sound business purpose justifies the use, sale, or lease of property under Section 363(b), courts consider a variety of factors, which essentially represent a 'business judgment test.'"  In re Montgomery Ward Holding Corp., 242 B.R. 147, 153 (D. Del. 1999).  Once the debtor articulates a reasonable basis for its business decisions, "courts will generally not entertain objections to the debtor's conduct."  Comm. of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.), 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986).  There is a presumption that "in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company."  In re Integrated Res., Inc., 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting Smith v. Van Gorkom, 488 A.2d 858, 872 (Del. 1985)).

20.    Thus, if a debtor's actions satisfy the business judgment rule, then the transaction in question should be approved under section 363(b) of the Bankruptcy Code.  Indeed, when applying the "business judgment" standard, courts show great deference to a debtor's business decisions.  See In re Integrated Res., 147 B.R. at 656 ("Courts are loath to interfere with corporate decisions absent a showing of bad faith, self-interest, or gross negligence."); In re First

<u>Wellington Canyon Assocs.</u>, No. 89-593, 1989 WL 106838, at *3 (N.D. Ill. Sept. 8, 1989) (stating that "the debtor's business judgment . . . must be accorded deference unless shown that the bankrupt's decision was taken in bad faith or in gross abuse of the bankrupt's retained discretion").  In addition, section 105(a) of the Bankruptcy Code codifies the Court's inherent equitable powers to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

21.    Further, section 364(c) of the Bankruptcy Code provides that, if a debtor is unable to obtain unsecured credit allowable under section 503(b)(1) as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt—

> (1) with priority over any or all administrative expenses of the kind specified in sections 503(b) or 507(b);
>
> (2) secured by a lien on property of the estate that is not otherwise subject to a lien; or
>
> (3) secured by a junior lien on property of the estate that is subject to a lien.

11 U.S.C. § 364(c).

22.    Continuing the Surety Bond Program, including making any prepetition payments related thereto, is necessary to maintain the Debtors' current business operations.  As noted above, certain Surety Bonds are required by statute, and in other instances, Surety Bonds may be required by contract or regulation.  The Debtors' failure to provide, maintain, or timely replace the Surety Bonds, may, therefore, jeopardize the Debtors' ability to conduct their operations and confirm the Plan.

23.    Continuing the Surety Bond Program is also necessary to maintaining the Debtors' existing relationships with the Sureties.  Based on the Debtors' current circumstances, it is not likely that the Debtors will be able to renew, or obtain replacement of, existing bonds on terms more favorable than those offered by the Sureties.  The process of establishing a new

Surety Bond Program, moreover, would be burdensome to the Debtors, and it is doubtful that the Debtors could replace all of the Surety Bonds in time to avoid defaults or other consequences of the applicable obligations.  To the extent the Debtors must satisfy the requirements of section 363(b) of the Bankruptcy Code in order to maintain their Surety Bond Program, the Debtors respectfully submit that they have done so.

24.    The Debtors believe that the Sureties may require that the Debtors furnish cash or other collateral as a condition to the renewal of existing Surety Bonds or the issuance of new ones.  To the extent that the Surety Bond Program and the provision of any collateral thereunder are deemed an extension of secured credit, the Debtors request authority to continue the Surety Bond Program pursuant to section 364(c) of the Bankruptcy Code, including with respect to posting collateral as determined in the Debtors' reasonable business judgment.  To satisfy the requirements of section 364(c) of the Bankruptcy Code, a debtor need only demonstrate "by a good faith effort that credit was not available" to the debtor on an unsecured or administrative expense basis.  Bray v. Shenandoah Fed. Savs. & Loan Ass'n (In re Snowshoe Co.), 789 F.2d 1085, 1088 (4th Cir. 1986).  Given the Debtors' current financial circumstances, the Debtors do not believe that they can obtain financial accommodations comparable to those offered by the Sureties on an unsecured basis or administrative expense basis.  To the extent the Surety Bond Program and the provision of any collateral thereunder are deemed an extension of secured credit, the Debtors respectfully submit that continuance of the Surety Bond Program should be authorized pursuant to section 364(c) of the Bankruptcy Code.

25.    Accordingly, the Debtors respectfully request that the Court authorize their participation in the Surety Bond Program, including making additional premium payments and posting any necessary collateral, under sections 105(a), 363(b), and 364(c) of the Bankruptcy

Code to the extent such participation is deemed outside the ordinary course of the Debtors'
businesses.

26.     Courts in this district have routinely granted the same or similar relief as
requested in this Motion to chapter 11 debtors.  See, e.g., In re Halcón Res. Corp., Case No. 16-
11724 (BLS) (Bankr. D. Del. Aug. 19, 2016) [D.I. 136] (final order); In re Pacific Sunwear of
Ca., Inc., Case No. 16-10882 (LSS) (Bankr. D. Del. Aug. 2, 2016) [D.I. 656]; In re Magnum
Hunter Resources Corp., Case No. 15-12533 (KG) (Bankr. D. Del. Jan. 11, 2016); In re
Molycorp, Inc., Case No. 15-11357 (CSS) (Bankr. D. Del. Oct. 26, 2015) [D.I. 725].

**C.     Authorization for Banks to Honor and Pay Checks Issued and Electronic Funds
Transfers Requested to Pay Surety Bond Obligations is Warranted.**

27.     The Debtors further request that this Court authorize and direct all applicable
banks and other financial institutions to receive, process, honor, and pay any and all checks
drawn or electronic funds transfers requested to pay Surety Bond Obligations, whether such
checks were presented prior to or after the Petition Date; provided, however, that such checks or
electronic funds transfers are identified by the Debtors as relating directly to the authorized
payment of the Surety Bond Obligations.  The Debtors also seek authority to issue new
postpetition checks, or effect new electronic funds transfers, on account of such claims to replace
any prepetition checks or electronic funds transfer requests that may be dishonored or rejected as
a result of the commencement of the Chapter 11 Cases.

## THE REQUIREMENTS OF BANKRUPTCY RULE 6003 ARE SATISFIED

28.     Bankruptcy Rule 6003 provides that to the extent relief is necessary to avoid
immediate and irreparable harm, a bankruptcy court may grant certain forms of relief during the
twenty-one (21) days immediately following the filing date.  Fed. R. Bankr. P. 6003.

29.     The Debtors need their Surety Bond Program to remain in place uninterrupted. Failure to make the payments required by the Surety Bond Program could have disastrous effects on the Debtors' operations and their ability to confirm the Plan and, consequently, on the Debtors' efforts to maximize recoveries for their stakeholders as well.  Indeed, termination of the Surety Bond Program due to any such non-payment likely would deprive the Debtors of the ability to operate their businesses under the laws of the states in which the Debtors conduct business.  Occurrence of any one or more of these events could stop the flow of revenue, which potentially could result in irreparable harm to the Debtors' current and future operations.  Thus, to the extent that the Debtors are required to make any payments related to pre-petition obligations with respect to the Surety Bond Program, the Debtors submit that they have satisfied the requirements of Bankruptcy Rule 6003 to support immediate payment of such obligations.

## WAIVER OF BANKRUPTCY RULE 6004(a) AND 6004(h) REQUIREMENTS

30.     In addition, by this Motion, the Debtors seek a waiver of any stay of the effectiveness of the order approving this Motion.  Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  As set forth above, the Debtors require immediate relief to continue ordinary business operations for the benefit of all parties in interest.  The Debtors submit that ample cause exists to justify a waiver of the fourteen-day stay imposed by Bankruptcy Rule 6004(h), to the extent that it applies.

31.     Similarly, for the reasons stated above, the Debtors respectfully request a waiver of the notice requirements of Bankruptcy Rule 6004(a) to the extent they are deemed applicable.

## RESERVATION OF RIGHTS

32.     Nothing in this Motion: (i) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors or their estates; (ii) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates to contest the validity, priority, or amount of any claim against the Debtors or their estates; (iii) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates with respect to any and all claims or causes of action against any third party; or (iv) shall be construed as a promise to pay a claim or continue any applicable program post-petition, which decision shall be in the discretion of the Debtors.  Any payment made pursuant to an order of the Court granting the relief requested herein is not intended to be nor should it be construed as an admission as to the validity of any claim or a waiver of the Debtors' rights to subsequently dispute such claim.

## NOTICE

33.     Notice of this Motion will be provided to: (i) the Sureties; (ii) the Office of the United States Trustee for the District of Delaware; (iii) the holders of the thirty (30) largest unsecured claims against the Debtors on a consolidated basis; (iv) the Banks; (v) Latham & Watkins LLP, as counsel to the ABL Agent; (vi) Davis Polk & Wardwell LLP, as counsel to Cortland Capital Market Services LLC, as the Term Loan Agent; (vii) the Indenture Trustee; (viii) Sullivan & Cromwell LLP, as counsel to the Supporting Noteholders; (ix) Cleary Gottlieb Steen & Hamilton LLP, as counsel to the Supporting Noteholders and the Supporting Term Lenders; and (x) all parties who, as of the filing of this Motion, have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002.  Notice of this Motion and any order entered hereon will be served in accordance with Local Rule 9013-1(m).  In light of

the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

## NO PRIOR REQUEST

34.     The Debtors have not previously sought the relief requested herein from this or any other court.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

WHEREFORE, the Debtors respectfully request entry of an Interim Order, substantially in the form attached hereto as <u>Exhibit A</u>, and a Final Order, in substantially the form attached hereto as <u>Exhibit B</u>, granting the relief requested herein and granting such other relief as is just and proper.

Dated: October 24, 2016      SIDLEY AUSTIN LLP
Wilmington, Delaware      James F. Conlan
Larry J. Nyhan
Andrew F. O'Neill
One South Dearborn Street
Chicago, Illinois 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

Jeffrey E. Bjork
Christina M. Craige
555 West Fifth Street, Suite 4000
Los Angeles, California 90013
Telephone: (213) 896-6000
Facsimile: (213) 896-6600

-and-

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_/s/ Edwin J. Harron_
Robert S. Brady (No. 2847)
Edwin J. Harron (No. 3396)
Ryan M. Bartley (No. 4985)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

PROPOSED ATTORNEYS FOR THE DEBTORS
AND DEBTORS IN POSSESSION

## Exhibit A

**Proposed Interim Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| KEY ENERGY SERVICES, INC., et al.[1] | Case No. 16-12306 (___) |
| Debtors. | (Jointly Administered) |
| | **Ref. Docket No. ___** |

## INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO CONTINUE THEIR SURETY BOND PROGRAM AND PAY ALL OBLIGATIONS IN RESPECT THEREOF, (II) AUTHORIZING APPLICABLE BANKS AND OTHER FINANCIAL INSTITUTIONS TO HONOR AND PROCESS RELATED CHECKS AND TRANSFERS, AND (III) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of the debtors and debtors in possession in the above-captioned Chapter 11 Cases (collectively, the "Debtors") for entry of an interim order (the "Interim Order") and a final order (i) authorizing the Debtors to continue their surety bond program and satisfy payment of all prepetition obligations related thereto, (ii) authorizing applicable banks and other financial institutions to honor and process related checks and transfers, and (iii) granting related relief; and upon consideration of the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012; and this matter being a core proceeding within the meaning of 28 U.S.C. § 157(b)(2); and the Court being able to issue a final order consistent with Article III of the United States Constitution; and venue of this proceeding and the Motion in this district

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows:  Misr Key Energy Investments, LLC (4528), Key Energy Services, Inc. (8081), Key Energy Services, LLC (5567), and Misr Key Energy Services, LLC (7527).  The mailing address for each Debtor is 1301 McKinney Street, Suite 1800, Houston, Texas 77010.

[2] All capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion.

being proper pursuant to 28 U.S.C. §§ 1408 and 1409; and appropriate notice of and opportunity

for a hearing on the Motion having been given; and the relief requested in the Motion being in

the best interests of the Debtors' estates, their creditors and other parties in interest; and the

Court having determined that the legal and factual bases set forth in the Motion establish just

cause for the relief granted herein; and after due deliberation and sufficient cause appearing

therefor, it is HEREBY ORDERED THAT:

1.      The relief requested in the Motion is GRANTED on an interim basis.

2.      The final hearing with respect to the relief requested in the Motion shall be held

on _____, 2016 at _____ (prevailing Eastern Time) (the "Final Hearing").  Any

objections or responses to entry of the proposed Final Order shall be filed on or before 4:00 p.m.

(prevailing Eastern Time) on _____ 2016 and served on the following parties: (i)

the Debtors, 1301 McKinney Street, Suite 1800, Houston, Texas 77010, Attn: Katherine I.

Hargis; (ii) proposed counsel for the Debtors, Sidley Austin LLP, 555 W. 5th Street, Suite 4000,

Los Angeles, California 90013, Attn: Jeffrey E. Bjork and Christina M. Craige; (iii) proposed

counsel for the Debtors, Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North

King Street, Wilmington, Delaware 19801, Attn: Robert S. Brady and Edwin J. Harron; (iv)

counsel for the Supporting Noteholders, Sullivan & Cromwell LLP, 125 Broad Street, New

York, New York 10004, Attn: Michael H. Torkin, David J. Jakus and Lee C. Parnes; (v) counsel

for the Supporting Noteholders and Supporting Term Lenders, Cleary Gottlieb Steen & Hamilton

LLP, One Liberty Plaza, New York, New York 10006, Attn: Sean A. O'Neal; (vi) counsel to the

ABL Agent, Latham & Watkins LLP, 330 North Wabash Avenue, Suite 2800, Chicago, Illinois

60611, Attn: Richard Levy; (vii) counsel to Cortland Capital Market Services LLC, as the Term

Loan Agent, Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York

10017, Attn: Damian S. Schaible, Eli J. Vonnegut and Angela M. Libby; (viii) counsel to any statutory committee appointed in the Chapter 11 Cases; (ix) the office of the United States Trustee for the District of Delaware; and (x) to the extent not listed herein, those parties requesting notice pursuant to Bankruptcy Rule 2002.  Notice of this Interim Order will be served in accordance with Local Rule 9013-1(m).

3.      The Debtors are authorized, but not directed, to maintain the Surety Bond Program without interruption, including paying any prepetition or postpetition premiums and other obligations (including, without limitation, those obligations with respect to which letters of credit have been issued), providing collateral, renewing or obtaining new surety bonds, and executing other agreements in connection with the Surety Bond Program, in each case in the ordinary course of business.

4.      In accordance with this Interim Order and any other order of this Court, the financial institutions at which the Debtors maintain their accounts (the "Banks") shall be, and hereby are, authorized, when requested by the Debtors (in the Debtors' discretion), to honor and pay all checks or electronic fund transfers drawn on the Debtors' accounts for the payments authorized pursuant to this Interim Order, whether such payments were presented prior to or following the Petition Date, provided that sufficient funds are on deposit in such accounts to honor and make such payments.

5.      The Banks may rely on the representations of the Debtors with respect to whether any check or electronic fund transfers drawn or issued by the Debtors prior to the Petition Date should be honored pursuant to this Interim Order, and any such Bank shall not have any liability to any party for relying on such representations by the Debtors as provided for in this Interim Order.

3

6.      The Debtors are authorized to issue post-petition checks, or to effect post-petition electronic fund transfers, in replacement of any checks or electronic fund transfers in respect of payments authorized by this Interim Order that are dishonored or rejected after the Petition Date.

7.      For the avoidance of doubt, nothing herein shall modify, alter or otherwise affect the rights of each party to the Plan Support Agreement, if the Plan Support Agreement should be terminated in accordance with its terms, to file a motion with this Court seeking to alter or limit any of the relief granted herein, and such rights are expressly reserved.

8.      Nothing in this Interim Order: (i) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors or their estates; (ii) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates to contest the validity, priority, or amount of any claim against the Debtors or their estates; (iii) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates with respect to any and all claims or causes of action against any third party; or (iv) shall be construed as a promise to pay a claim or continue any applicable program post-petition, which decision shall be in the discretion of the Debtors.  Any payment made pursuant to this Interim Order is not intended to be nor should it be construed as an admission as to the validity of any claim or a waiver of the Debtors' rights to subsequently dispute such claim.

9.      Nothing herein renders any claim by any third party based on a prepetition, actual, potential or asserted liability of the Debtors which claim may or does result in a loss to a surety under  the Surety Bond Program into a postpetition claim or expense of administration.

10.     The requirements set forth in Bankruptcy Rule 6003(b) are satisfied.

4

11.     For the avoidance of doubt, nothing herein shall modify, alter or otherwise affect the rights or remedies of the Term Loan Agent, Term Loan Lenders, ABL Agent or ABL Lenders under any cash collateral order entered in the Chapter 11 Cases.

12.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion under the circumstances and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

13.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Interim Order in accordance with the Motion.

14.     Notwithstanding the applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order shall be immediately effective and enforceable upon its entry.

15.     This Court retains exclusive jurisdiction over all matters arising from or related to the implementation, interpretation and enforcement of this Interim Order.


Dated: _____, 2016
          Wilmington, Delaware

_____
UNITED STATES BANKRUPTCY JUDGE

**<u>Exhibit B</u>**

**Proposed Final Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| KEY ENERGY SERVICES, INC., <u>et al.</u>[1] | Case No. 16-12306 (___) |
| Debtors. | (Jointly Administered) |
| | **Ref. Docket Nos. ___** |

**FINAL ORDER (I) AUTHORIZING THE DEBTORS TO CONTINUE THEIR SURETY
BOND PROGRAM AND PAY ALL OBLIGATIONS IN RESPECT THEREOF,
(II) AUTHORIZING APPLICABLE BANKS AND OTHER FINANCIAL
INSTITUTIONS TO HONOR AND PROCESS RELATED CHECKS AND TRANSFERS,
<u>AND (III) GRANTING RELATED RELIEF</u>**

Upon the motion (the "<u>Motion</u>")[2] of the debtors in the above-captioned Chapter 11 Cases

(collectively, the "<u>Debtors</u>") for entry of a final order (the "<u>Final Order</u>") (i) authorizing the

Debtors to continue their Surety Bond Program and satisfy payment of all prepetition obligations

related thereto, (ii) authorizing applicable banks and other financial institutions to honor and

process related checks and transfers; and upon consideration of the First Day Declaration, and

(iii) granting related relief; and this Court having jurisdiction over this matter pursuant to 28

U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States*

*District Court for the District of Delaware*, dated February 29, 2012; and this matter being a core

proceeding within the meaning of 28 U.S.C. § 157(b)(2); and the Court being able to issue a final

order consistent with Article III of the United States Constitution; and venue of this proceeding

and the Motion in this district being proper pursuant to 28 U.S.C. §§ 1408 and 1409; and

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows:  Misr Key Energy Investments, LLC (4528), Key Energy Services, Inc. (8081), Key Energy Services, LLC (5567), and Misr Key Energy Services, LLC (7527).  The mailing address for each Debtor is 1301 McKinney Street, Suite 1800, Houston, Texas 77010.

[2] All capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion.

appropriate notice of and opportunity for a hearing on the Motion having been given; and the

relief requested in the Motion being in the best interests of the Debtors' estates, their creditors

and other parties in interest; and the Court having determined that the legal and factual bases set

forth in the Motion establish just cause for the relief granted herein; and after due deliberation

and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The relief requested in the Motion is GRANTED on a final basis.

2.      The Debtors are authorized, but not directed, to maintain the Surety Bond

Program without interruption, including paying any prepetition or postpetition premiums and

other obligations (including, without limitation, those obligations with respect to which letters of

credit have been issued), providing collateral, renewing or obtaining new surety bonds, and

executing other agreements in connection with the Surety Bond Program, in each case in the

ordinary course of business.

3.      In accordance with this Final Order and any other order of this Court, the

financial institutions at which the Debtors maintain their accounts (the "Banks") shall be, and

hereby are, authorized, when requested by the Debtors (in the Debtors' discretion), to honor and

pay all checks or electronic fund transfers drawn on the Debtors' accounts for the payments

authorized pursuant to this Final Order, whether such payments were presented prior to or

following the Petition Date, provided that sufficient funds are on deposit in such accounts to

honor and make such payments.

4.      The Banks may rely on the representations of the Debtors with respect to whether

any check or electronic fund transfers drawn or issued by the Debtors prior to the Petition Date

should be honored pursuant to this Final Order, and any such Bank shall not have any liability to

any party for relying on such representations by the Debtors as provided for in this Interim Order.

5.      The Debtors are authorized to issue post-petition checks, or to effect post-petition electronic fund transfers, in replacement of any checks or electronic fund transfers in respect of payments authorized by this Final Order that are dishonored or rejected after the Petition Date.

6.      For the avoidance of doubt, nothing herein shall modify, alter or otherwise affect the rights of each party to the Plan Support Agreement, if the Plan Support Agreement should be terminated in accordance with its terms, to file a motion with this Court seeking to alter or limit any of the relief granted herein, and such rights are expressly reserved.

7.      Nothing in this Final Order: (i) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors or their estates; (ii) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates to contest the validity, priority, or amount of any claim against the Debtors or their estates; (iii) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates with respect to any and all claims or causes of action against any third party; or (iv) shall be construed as a promise to pay a claim or continue any applicable program post-petition, which decision shall be in the discretion of the Debtors.  Any payment made pursuant to this Order is not intended to be nor should it be construed as an admission as to the validity of any claim or a waiver of the Debtors' rights to subsequently dispute such claim.

8.      Nothing herein renders any claim by any third party based on a prepetition, actual, potential or asserted liability of the Debtors which claim may or does result in a loss to a surety under  the Surety Bond Program into a postpetition claim or expense of administration.

9.      For the avoidance of doubt, nothing herein shall modify, alter or otherwise affect the rights or remedies of the Term Loan Agent, Term Loan Lenders, ABL Agent or ABL Lenders under any cash collateral order entered in the Chapter 11 Cases.

10.      Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion under the circumstances and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

11.      Notwithstanding the applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Final Order shall be immediately effective and enforceable upon its entry.

12.      The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Final Order in accordance with the Motion.

13.      This Court retains exclusive jurisdiction over all matters arising from or related to the implementation, interpretation and enforcement of this Final Order.


Dated: _____, 2016
        Wilmington, Delaware

_____
UNITED STATES BANKRUPTCY JUDGE

**Exhibit C**

**Surety Bonds**

**Surety Bonds**

| Bond Number | Surety | Principal | Obligee | Type of Bond | Bond Amount | Premium | Effective Date | Expiration Date |
|---|---|---|---|---|---|---|---|---|
| 1056746 | Lexon Insurance Company | Key Energy Services, LLC | State of New Mexico, State Land Office | Excess Weight and Other Highway and Street Permits | $500.00 | $200.00 | 7/28/2015 | 7/28/2017 |
| 1056747 | Lexon Insurance Company | Key Energy Services, LLC | State of New Mexico, State Land Office | Excess Weight and Other Highway and Street Permits | $10,000.00 | $200.00 | 7/28/2015 | 7/28/2017 |
| 1056748 | Lexon Insurance Company | Key Energy Services, LLC | State of Texas, Rail Road Commission of Texas | Reclamation - Oil/Gas | $3,628,231.00 | $72,565.00 | 7/29/2015 | 7/29/2017 |
| 1056749 | Lexon Insurance Company | Key Energy Services, LLC | State of Texas, Rail Road Commission of Texas | Reclamation - Oil/Gas | $50,000.00 | $1,000.00 | 7/1/2015 | 7/1/2017 |
| 1134836 | Lexon Insurance Company | Key Energy Services, LLC | State of New Mexico, Oil Conservation Division | Reclamation - Oil/Gas | $50,000.00 | $1,000.00 | 8/11/2015 | 8/11/2017 |
| 1134837 | Lexon Insurance Company | Key Energy Services, LLC | State of Louisiana, Office of Conservation, Department of Natural Resources | Reclamation - Oil/Gas | $250,000.00 | $5,000.00 | 8/11/2015 | 8/11/2017 |
| 1134838 | Lexon Insurance Company | Key Energy Services, LLC | State of Louisiana, Office of Conservation, Department of Natural Resources | Reclamation - Oil/Gas | $250,000.00 | $5,000.00 | 8/11/2015 | 8/11/2017 |
| 1134839 | Lexon Insurance Company | Key Energy Services, LLC | City of Carlsbad, NM | Reclamation - Oil/Gas | $100,000.00 | $2,000.00 | 8/11/2015 | 8/11/2017 |
| 1134841 | Lexon Insurance Company | Key Energy Services, LLC | City of Snyder, Attn: Vick Chambers | Reclamation - Oil/Gas | $10,000.00 | $200.00 | 8/11/2015 | 8/11/2017 |
| 1134842 | Lexon Insurance Company | Key Energy Services, LLC | State of New Mexico, Oil Conservation Division | License & Permit | $16,875.00 | $338.00 | 8/11/2015 | 8/11/2017 |
| 1134843 | Lexon Insurance Company | Key Energy Services, LLC | State of New Mexico, Oil Conservation Division | Reclamation - Oil/Gas | $17,418.00 | $348.00 | 8/11/2015 | 8/11/2017 |

| Bond Number | Surety | Principal | Obligee | Type of Bond | Bond Amount | Premium | Effective Date | Expiration Date |
|---|---|---|---|---|---|---|---|---|
| 1134844 | Lexon Insurance Company | Key Energy Services, LLC | Creative Lodging Solutions | All Other Miscellaneous Contracts - NOC - Private | $167,000.00 | $3,340.00 | 8/10/2015 | 8/10/2017 |
| 1134846 | Lexon Insurance Company | Key Energy Services, LLC | Circuit Court of Perry County, AR and Andrew J. Brand, Jr. | Appeal Bond - Defendants | $826,563.52 | $33,063.00 | 10/28/2015 | 10/28/2016 |
| 1134848 | Lexon Insurance Company | Key Energy Services, LLC | Louisiana Office of Conservation | Reclamation - Oil/Gas | $20,100.00 | $402.00 | 11/16/2015 | 11/16/2016 |
| 1134849 | Lexon Insurance Company | Key Energy Services, LLC and its subsidiaries and affiliates | Red River Parish Police Jury | Excess Weight and Other Highway and Street Permits | $1,000,000.00 | $20,000.00 | 11/23/2015 | 11/23/2016 |
| 1134851 | Lexon Insurance Company | Key Energy Services, LLC | State of North Dakota, Industrial Commission of North Dakota | Reclamation - Oil/Gas | $50,000.00 | $1,000.00 | 12/23/2015 | 12/23/2016 |
| 1134855 | Lexon Insurance Company | Key Energy Services, LLC | State of North Dakota, Industrial Commission of North Dakota | Reclamation - Oil/Gas | $50,000.00 | $1,000.00 | 12/23/2015 | 12/23/2016 |
| 1134856 | Lexon Insurance Company | Key Energy Services, LLC | State of North Dakota, Industrial Commission of North Dakota | Reclamation - Oil/Gas | $50,000.00 | $1,000.00 | 12/23/2015 | 12/23/2016 |
| 1134857 | Lexon Insurance Company | Key Energy Services, LLC | State of North Dakota, Industrial Commission of North Dakota | Reclamation - Oil/Gas | $50,000.00 | $1,000.00 | 12/23/2015 | 12/23/2016 |
| 1134858 | Lexon Insurance Company | Key Energy Services, LLC | State of North Dakota, Industrial Commission of North Dakota | Reclamation - Oil/Gas | $50,000.00 | $1,000.00 | 12/23/2015 | 12/23/2016 |
| 1134859 | Lexon Insurance Company | Key Energy Services, LLC | Louisiana Office of Conservation, Department of Natural Resources | Closure/Post Closure Bonds | $281,237.16 | $5,625.00 | 2/9/2016 | 2/9/2017 |
| 1134860 | Lexon Insurance Company | Key Energy Services, LLC | Louisiana Office of Conservation, Department of Natural Resources | Closure/Post Closure Bonds | $71,868.05 | $1,437.00 | 2/9/2016 | 2/9/2017 |

| Bond Number | Surety | Principal | Obligee | Type of Bond | Bond Amount | Premium | Effective Date | Expiration Date |
|---|---|---|---|---|---|---|---|---|
| 1134861 | Lexon Insurance Company | Key Energy Services, LLC | State of Arkansas, Oil and Gas Commission | Reclamation - Oil/Gas | $100,000.00 | $2,000.00 | 2/9/2016 | 2/9/2017 |
| 1134862 | Lexon Insurance Company | Key Energy Services, LLC | New Mexico State Land Office | Reclamation - Oil/Gas | $2,000.00 | $200.00 | 2/9/2016 | 2/9/2017 |
| 1134863 | Lexon Insurance Company | Key Energy Services, LLC | New Mexico State Land Office | Reclamation - Oil/Gas | $2,500.00 | $200.00 | 2/9/2016 | 2/9/2017 |
| 1134869 | Lexon Insurance Company | Key Energy Services, LLC | State of New Mexico, Oil Conservation | Reclamation - Oil/Gas | $8,855.00 | $200.00 | 7/29/2016 | 7/29/2017 |
| 61BSBBN1022 | Hartford Fire Insurance Company | Key Energy Services, LLC | County of Medina | License & Permit | $5,000.00 | $100.00 | 5/10/2009 | 5/10/2017 |
| 61BSBBN1024 | Hartford Fire Insurance Company | Key Energy Services, LLC | Texas Department of Transportation | Excess Weight and Other Highway and Street Permits | $10,000.00 | $100.00 | 8/31/2009 | 8/31/2017 |
| 61BSBBN1031 | Hartford Fire Insurance Company | Key Energy Services, LLC | State of Louisiana Department of Transportation | Excess Weight and Other Highway and Street Permits | $40,000.00 | $400.00 | 2/11/2009 | 2/11/2017 |
| 61BSBBN1032 | Hartford Fire Insurance Company | Key Energy Services, LLC | Commonwealth of Pennsylvania, Department of Transportation | License & Permit | $10,000.00 | $100.00 | 5/6/2009 | 5/6/2017 |
| 61BSBBN1033 | Hartford Fire Insurance Company | Key Energy Services, LLC | State of California, Registrar of Contractors | All Contractors License - Compliance (Roofer, Electrician, Plumber) | $15,000.00 | $225.00 | 5/27/2009 | 5/27/2017 |
| 61BSBBN1034 | Hartford Fire Insurance Company | Key Energy Services, LLC | State of California, Registrar of Contractors | All Contractors License – Perf-Payt-State-Standard | $12,500.00 | $188.00 | 5/27/2009 | 5/27/2017 |
| 61BSBCK8022 | Hartford Fire Insurance Company | Key Energy Services, LLC | Ohio Department of Natural Resources, Division of Oil and Gas | Reclamation - Oil/Gas | $15,000.00 | $450.00 | 11/12/2008 | 11/12/2016 |
| 61BSBDC4938 | Hartford Fire Insurance Company | Key Energy Services, LLC | Texas Dept of Transportation | License & Permit | $15,000.00 | $150.00 | 3/22/2009 | 3/22/2017 |

| Bond Number | Surety | Principal | Obligee | Type of Bond | Bond Amount | Premium | Effective Date | Expiration Date |
|---|---|---|---|---|---|---|---|---|
| 61BSBDG3726 | Hartford Fire Insurance Company | Key Energy Services, LLC | Arkansas State Highway and Transportation Department | License & Permit | $15,000.00 | $150.00 | 12/19/2008 | 12/19/2016 |
| 61BSBEE4869 | Hartford Fire Insurance Company | Key Energy Services, LLC | Wyoming Department of Transportation, Motor Vehicle Services | Motor Vehicle-All Others | $25,000.00 | $250.00 | 5/31/2009 | 6/1/2017 |
| 61BSBFG0805 | Hartford Fire Insurance Company | Key Energy Services, LLC | Commonwealth of Pennsylvania, Department of Transportation | Motor Vehicle-All Others | $10,000.00 | $100.00 | 12/10/2009 | 12/10/2016 |
| 61BSBFK1398 | Hartford Fire Insurance Company | Key Energy Services, LLC | Brazoria County Road and Bridge Dept. | License & Permit | $100,000.00 | $2,600.00 | 4/21/2009 | 4/21/2017 |
| 61BSBFW9848 | Hartford Fire Insurance Company | Key Energy Services, LLC | Texas Dept of Transportation | License & Permit | $15,000.00 | $150.00 | 6/30/2011 | 6/30/2017 |
| 61BSBGM5499 | Hartford Fire Insurance Company | Key Energy Services, LLC | State of California, Registrar of Contractors | All Contractors License-Perf-Payt-State - Standard | $15,000.00 | $225.00 | 4/24/2013 | 4/23/2017 |
| 61BSBGM5500 | Hartford Fire Insurance Company | Key Energy Services, LLC | State of California, Registrar of Contractors | All Contractors License-Perf-Payt-State - Standard | $12,500.00 | $188.00 | 4/24/2013 | 4/23/2017 |
| 61BSBGM5566 | Hartford Fire Insurance Company | Key Energy Services, LLC | State of California, Registrar of Contractors | All Contractors License - Compliance (Roofer, Electrician, Plumber) | $100,000.00 | $2,000.00 | 4/24/2013 | 4/24/2017 |
| HCIFSU 0695780 | International Fidelity Insurance Company | Key Energy Services, LLC | United States Customs and Border Protection | Customs-Continuous-All Other | $50,000.00 | $1,500.00 | 3/25/2016 | 3/25/2017 |